## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

Court No. 21-00449

SIEMENS GAMESA RENEWABLE ENERGY,
Plaintiff,

v.

THE UNITED STATES,
Defendant,

and

WIND TOWER TRADE COALITION,
Defendant-Intervenor.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                              SARAH E. KRAMER
                                         Trial Attorney
Shelby M. Anderson                       Commercial Litigation Branch
Senior Attorney                          Civil Division
Office of the Chief Counsel              Department of Justice
For Trade Enforcement & Compliance       P.O. Box 480
                                         Ben Franklin Station
                                         Washington, D.C. 20044
                                         Tel: (202) 353-0537
                                         Facsimile: (202) 305-2062
                                         Email: Sarah.E.Kramer@usdoj.gov


April 14, 2022                           Attorneys for Defendant United States

## TABLE OF CONTENTS

STATEMENT PRUSUANT TO RULE 56.2 .......................................................................2

   I.     Administrative Determination Under Review ..........................................2

   II.    Issues Presented For Review ...................................................................2

STATEMENT OF FACTS ...........................................................................................2

SUMMARY OF ARGUMENT ....................................................................................6

ARGUMENT ...............................................................................................................7

   I.     Standard Of Review ...............................................................................7

   II.    Commerce's Determination Not To Individually Examine SGRE Was In
Accordance With Law .............................................................................8

       a.  Commerce Complied With 19 U.S.C. § 1677f-1(c) When It Selected
Vestas For Individual Examination ..........................................8

       b.  Commerce Was Not Required To Select A Replacement Mandatory
Respondent...................................................................................10

       c.  Commerce Is Guided By The Statute, Not Environmental Concerns .................15

       d.  Commerce Reasonably Found That There Were A Large Number Of
Exporters Or Producers Involved In The Investigation .......................................17

   III.   Commerce Reasonably Exercised Its Discretion Not To Individually
Examine SGRE .....................................................................................20

       a.  Commerce's Determination Not To Individually Examine SGRE Was
Reasonable ...................................................................................20

       b.  Commerce Did Not Abuse Its Discretion ...........................................................22

       c.  Commerce's Final Determination Comported With Agency Practice .................26

       d.  Commerce Reasonably Declined To Extend The Preliminary And Final
Determination Deadlines In The Investigation ....................................................29

   IV.   SGRE's Arguments Regarding The All-Others Rate Were Not Exhausted
Below And Lack Merit ...............................................................................31

CONCLUSION................................................................................................................34

## **TABLE OF AUTHORITIES**

### **Cases**

*Acciai Speciali Terni S.p.A. v. United States*,
  350 F. Supp. 2d 1254 (Ct. Int'l Trade 2004)..............................................15

*Am. Tubular Prods., LLC v. United States*,
  Court No. 13-00029, 2014 WL 4977626 (Ct. Int'l Trade Sept. 26, 2014)...............................32

*Amanda Foods (Vietnam) Ltd. v. United States*,
  807 F. Supp. 2d 1332 (Ct. Int'l Trade 2011)..............................................18

*Boomerang Tube LLC v. United States*,
  856 F.3d 908 (Fed. Cir. 2017)..............................................*passim*

*Chevron, U.S.A. v. Nat. Res. Def. Council*,
  467 U.S. 837 (1984)..............................................7, 8, 11

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966)..............................................7

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007)..............................................*passim*

*DuPont Teijin Films China Ltd. v. United States*,
  7 F. Supp. 3d 1338 (Ct. Intl. Trade 2014)..............................................18

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034 (Fed. Cir. 1996)..............................................7

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
  853 F. Supp. 2d 1352..............................................22

*Hangzhou Spring Washer Co. v. United States*,
  387 F. Supp. 2d 1236 (Ct. Int'l Trade 2005)..............................................7

*Husteel Co. v. United States*,
  98 F. Supp. 3d 1315 (Ct. Int'l Trade 2015)..............................................*passim*

*JBF RAK LLC v. United States*,
  790 F.3d 1358 (Fed. Cir. 2015)..............................................16

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*,
  322 F. Supp. 3d 1308 (Ct. Int'l Trade 2018)..............................................33

*Longkou Haimeng Mach. Co.. v. United States*,
   581 F. Supp. 2d 1344 (Ct. Int'l Trade 2008) ................................................... 22

*Mid-Continent Nail Corp. v. United States*,
   949 F. Supp. 2d 1247 (Ct. Int'l Trade 2013) .................................................. 25

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................... 8

*PAM, S.p.A. v. United States*,
   582 F.3d 1336 (Fed. Cir. 2009) ........................................................................... 7

*PT Pindo Deli Pulp v. United States*,
   825 F. Supp. 2d 1310 (Ct. Int'l Trade 2012) ................................................... 29

*Schaeffler Italia S.R.L. v. United States*,
   781 F. Supp. 2d 1358 (Ct. Int'l Trade 2011) .............................................. 13, 14

*SeAH Steel Corp. v. United States*,
   764 F. Supp. 2d 1322 (Ct. Int'l Trade 2011) ................................................... 16

*Shenzhen Xinboda Industrial Co. v. United States*,
   180 F. Supp. 3d 1305 (Ct. Int'l Trade 2018) ................................................... 18

*Torrington Co. v. United States*,
   68 F. 3d 1347 (Fed. Cir. 1995) ......................................................................... 22

*Torrington v. United States*,
   82 F.3d 1039 (Fed. Cir. 1996) ............................................................................. 7

*Union Steel Mfg. Co. v. United States*,
   837 F. Supp. 2d 1307 (Ct. Int'l Trade 2012) ............................................. 18, 24

*West Deptford Energy, LLC v. Fed. Energy Regul. Comm'n*,
   766 F.3d 10 (Fed. Cir. 2014) ............................................................................... 8

*YC Rubber Co. (N. Am.) LLC v. United States*,
   487 F. Supp. 3d 1367 (Ct. Int'l Trade 2020) ........................................... *passim*

*Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States*,
   637 F. Supp. 2d 1260 (Ct. Int'l Trade 2009) ............................................. 24, 25

## Statutes

1 U.S.C. § 1 ............................................................................................................ 14
19 U.S.C. § 1671a(c)(4)(E) ...................................................................................... 29

19 U.S.C. § 1673b ........................................................................................ *passim*
19 U.S.C. § 1673c(a)(2) .......................................................................................... 16
19 U.S.C. § 1673d ........................................................................................ *passim*
19 U.S.C. § 1675(a)(3)(A) ..................................................................................... 27
19 U.S.C. § 1677f-1 ..................................................................................... *passim*
19 U.S.C. § 1677m ...................................................................................... *passim*
28 U.S.C. § 2637(d) ..................................................................................... *passim*

## Regulations

19 C.F.R. § 351.210(e)(1) ..................................................................................... 30
19 C.F.R. § 351.301(c)(1) ..................................................................................... 21
19 C.F.R. § 351.309(c) ................................................................................... 16, 31

## Federal Register

*Certain Cold-Rolled Steel Flat Products from Japan: Preliminary Affirmative*
    *Less Than Fair Value Determination,* 81 Fed. Reg. 11,747 (Dep't of Commerce
    March 7, 2016) ................................................................................... 18, 24

*Certain Steel Nails from Taiwan,* 82 Fed. Reg. 36,744 (Dep't of Commerce
    Aug. 7, 2017) .................................................................................... 18, 24

*Multilayered Wood Flooring from the People's Republic of China: Preliminary*
    *Results of the Antidumping Duty Administrative Review,* 83 Fed. Reg. 65,630
    (Dep't of Commerce  Dec. 21, 2018) ......................................................... 27

*Cast Iron Soil Pipe Fittings from the People's Republic of China: Preliminary*
    *Affirmative Less Than Fair Value Determination,* 83 Fed. Reg. 7145 (Dep't of
    Commerce Feb. 20, 2018) ......................................................................... 27

*Passenger Vehicle and Light Truck Tires from China: Final Results of Administrative*
    *Review,* 84 Fed. Reg. 17,781 (Dep't of Commerce Apr. 26, 2019) ........................... 28

*Utility Scale Wind Towers from India, Malaysia, and Spain: Notice of Extension of*
    *Initiation Deadline,* 85 Fed. Reg. 65,028 (Dep't of Commerce Oct. 14, 2020) ............... 2

*Utility Scale Wind Towers from India, Malaysia, and Spain: Initiation of Less Than*
    *Fair Value Investigation,* 85 Fed. Reg. 73,023 (Dep't of Commerce Nov. 16, 2020) ......... 3, 17

*Twist Ties from the People's Republic of China: Final Affirmative Determination*
    *of Sales at Less Than Fair Value,* 86 Fed. Reg. 10,536 (Dep't of Commerce
    Feb. 22, 2021) ............................................................................. 11, 13, 27

*Utility Scale Wind Towers from Spain: Preliminary Affirmative Less Than Fair Value Determination,* 86 Fed. Reg. 17,354 (Dep't of Commerce April 2, 2021)........................ 5

*Polyester Textured Yarn from Thailand: Preliminary Affirmatve Less Than Fair Value Determination,* 86 Fed. Reg. 29,746 (Dep't of Commerce June 3, 2021).......................................................................................................... 28

**Other Authorities**

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316, *reprinted in* 1994 U.S.C.C.A.N 4040, 4251 ....................................................... 12

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

_____
                                          )
SIEMENS GAMESA RENEWABLE                  )
ENERGY,                                   )
                                          )
                    Plaintiff,            )
                                          )
            v.                            )        Court No. 21-00449
                                          )
UNITED STATES,                            )
                                          )
                    Defendant,            )
                                          )
            and                           )
                                          )
WIND TOWER TRADE COALITION,               )
                                          )
                    Defendant-Intervenor. )
_____)


**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States,

respectfully submits this response to the motion for judgment on the agency record filed by

plaintiff, Siemens Gamesa Renewable Energy (SGRE). SGRE contests aspects of the

Department of Commerce's final determination in the antidumping duty investigation of utility

scale wind towers (wind towers) from Spain. As we demonstrate below, SGRE's arguments are

without merit. Accordingly, this Court should deny SGRE's motion for judgment on the agency

record and sustain the final determination in its entirety.

<u>**STATEMENT PURSUANT TO RULE 56.2**</u>

**I.      <u>Administrative Determination Under Review</u>**

The administrative determination under review is *Utility Scale Wind Towers from Spain: Final Less Than Fair Value Determination*, 86 Fed. Reg. 33,656 (Dep't of Commerce June 25, 2021) (Final Determination) (P.R. 152),[1] and accompanying Issues and Decision Memorandum (IDM) (P.R. 149).  The Final Determination covers the period of investigation from July 1, 2019, through June 30, 2020.

**II.     <u>Issues Presented For Review</u>**

1.  Whether Commerce's determination not to individually examine SGRE is in accordance with 19 U.S.C. § 1677f-1(c).

2.  Whether Commerce reasonably exercised its discretion in not individually examining SGRE.

3.  Whether SGRE exhausted its claims regarding Commerce's calculation of the all-others rate and, if so, whether Commerce's determination is in accordance with 19 U.S.C. § 1673d(c)(5).

<u>**STATEMENT OF FACTS**</u>

On September 30, 2020, the Wind Tower Trade Coalition (petitioner) filed an antidumping duty petition concerning imports of wind towers from Spain.  On October 7, 2020, Commerce extended its initiation determination to determine industry support for the petition. *Utility Scale Wind Towers from India, Malaysia, and Spain: Notice of Extension of Initiation Deadline*, 85 Fed. Reg. 65,028 (Dep't of Commerce Oct. 14, 2020) (P.R. 25).  Commerce

_____

[1] Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the underlying investigation.

subsequently initiated a less than fair value investigation of imports of wind towers from Spain on November 9, 2020. *Utility Scale Wind Towers from India, Malaysia, and Spain: Initiation of Less Than Fair Value Investigation*, 85 Fed. Reg. 73,023 (Dep't of Commerce Nov. 16, 2020) (P.R. 44).

In the *Federal Register* notice announcing initiation of the investigation, Commerce invited interested parties to comment on respondent selection in the event that Commerce undertook a respondent selection process. *See id.* at 73,026. Based on comments received from the petitioner and Vestas Eolica S.A.U. (Vestas), Commerce issued quantity and value (Q&V) questionnaires to the three exporters or producers listed in the petition as well as to 16 additional companies identified in import data collected by U.S. Customs and Border Protection (CBP). *See Issuance of Quantity and Value Questionnaires* (Dep't of Commerce Nov. 25, 2020) (P.R. 49). Upon receipt of the Q&V responses, Commerce afforded interested parties a second opportunity to comment on respondent selection. *See Q&V Filling Issues and Comments on Respondent Selection* (Dep't of Commerce Dec. 15, 2020) (P.R. 97). Commerce received additional comments from the petitioner and Vestas. *See Additional Comments on Respondent Selection* (Dec. 18, 2020) (P.R. 100); *Comments on Respondent Selection and Q&V Data* (Dec. 21, 2020) (P.R. 101). At no point did SGRE comment on respondent selection.

On December 23, 2020, Commerce selected Vestas for individual examination as a mandatory respondent. *Mem. from Benito Ballesteros to James Maeder, Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Respondent Selection* (Respondent Selection Memorandum) (Dec. 23, 2020) (P.R. 106). In making this determination, Commerce first found pursuant to 19 U.S.C. § 1677f-1(c)(2) that there were a "large number of exporters or producers" involved in the investigation such that it was necessary to limit its examination to a

3

"reasonable number of exporters or producers." *Id.* at 3. That is, Commerce found that the "number of exporters and producers included in the petition and CBP data" (*i.e.*, three and 16, respectively) was large. *Id.* Commerce thus selected the exporter or producer accounting for the largest volume of the subject merchandise, based on Q&V data, for individual examination. Commerce found that an examination of the largest exporter or producer (Vestas) would allow Commerce to "capture the largest volume of exports Commerce can reasonably examine, in light of resource constraints and in compliance with the statutory requirements." *Id.* at 6.

Over a month later, on January 28, 2021, Vestas notified Commerce it would no longer participate in the investigation. *Letter from Alston & Bird, LLP to Secretary of Commerce Pertaining to Vestas Notification of Non-Participation* (P.R. 124). Subsequently, on February 17, 2021, SGRE asked for the first time that Commerce select it for individual examination. *Letter from Crowell & Moring LLP to Secretary of Commerce Pertaining to SGRE Request for Mandatory Respondent Selection* (P.R. 128). On March 5, 2021, Commerce issued a letter declining to select SGRE for individual examination. *Letter from Robert Galantucci to Siemens Gamesa Renewable Energy, Utility Scale Wind Towers from Spain: Request to Select Replacement Mandatory Respondent* (SGRE Rejection Letter) (P.R. 132). In the letter, Commerce explained that SGRE's request came "late in the proceeding, only six weeks before the scheduled date for issuing the preliminary determination," which left Commerce with insufficient time to solicit and to analyze questionnaires and to prepare a preliminary determination. *Id.* Commerce also explained that SGRE "did not seek to participate as a voluntary respondent; had it done so, it would have provided Commerce with a questionnaire response for SGRE at a far earlier date." *Id.* Finally, Commerce found, based on its current workload and available resources, that it could not select an additional mandatory respondent

4

after the deadline for the initial questionnaire response had passed.  *See id.*

In the Preliminary Determination, Commerce assigned Vestas a weighted-average dumping margin of 73 percent based on total adverse facts available.  *See Utility Scale Wind Towers from Spain: Preliminary Affirmative Less than Fair Value Determination*, 86 Fed. Reg. 17,354 (Dep't of Commerce April 2, 2021) (Preliminary Determination) (P.R. 137), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 134) at 4-10.  Because the weighted average dumping margin assigned to Vestas was based on total adverse facts available, Commerce determined the all-others rate by applying the exception in 19 U.S.C. § 1673d(c)(5)(B).  PDM at 9-10.  In particular, Commerce preliminarily assigned the dumping margin alleged in the petition (of 73 percent) to all-other producers or exporters.  *Id.*  Commerce determined that this was a reasonable method within the meaning of 19 U.S.C. § 1673d(c)(5)(B) because there were no other weighted-average dumping margins on the record of the investigation.  *Id.*

Following the submission of case and rebuttal briefs, Commerce published its Final Determination on June 25, 2021.  *See Final Determination*, 86 Fed. Reg. at 33,656.  In its Final Determination, Commerce continued to find that it was not required to select SGRE as an additional mandatory respondent following Vestas's withdrawal from participation.  IDM at 4-7.  Commerce also made no changes to the margins determined in the Preliminary Determination for Vestas and all other producers and exporters.  *See Final Determination*, 86 Fed. Reg. at 33,657.  SGRE subsequently initiated this litigation.

## SUMMARY OF ARGUMENT

The Court should sustain the Final Determination because SGRE has not established that Commerce acted contrary to law, abused its discretion, or rendered determinations that were unsupported by substantial evidence.

First, Commerce's decision not to individually examine SGRE is in accordance with law. The statutory provision pertaining to respondent selection, 19 U.S.C. § 1677f-1(c), is silent as to how Commerce must proceed when all respondents initially selected for individual examination withdraw from participation in an investigation.  In this silence, Commerce evaluates on a case-by-case basis whether it can reasonably examine another mandatory respondent.  This interpretation is reasonable and entitled to deference.  SGRE's arguments to the contrary misapprehend the statutory framework and rely on inapposite precedent.

Second, Commerce reasonably exercised its discretion not to individually examine SGRE.  Vestas withdrew after Commerce issued an initial and a supplemental questionnaire, SGRE did not seek to participate in the investigation as a voluntary respondent, and SGRE first requested individual examination more than three months into the investigation.  Under these circumstances, Commerce reasonably found that it could not conduct an individual examination of SGRE at that late stage in the investigation.  This determination is supported by the record and, contrary to SGRE's assertions, comports with the statute and Commerce's practice.

Third, Commerce complied with 19 U.S.C. § 1673d(c)(5) in calculating the all-others rate in the Final Determination.  As an initial matter, although 19 U.S.C. § 1673d(c)(5)(A) provides for the *possibility* of Commerce having multiple established rates at the end of an investigation, it does not (as SGRE asserts) *require* the calculation of an all-others rate using multiple respondents' rates.  Moreover, the all-others rate assigned in the investigation is representative

insofar as it comports with the statute and SGRE cites no evidence to the contrary.  More importantly, Commerce calculated the all-others rate pursuant to 19 U.S.C. § 1673d(c)(5)(B), not (A), which allows Commerce to use any reasonable method, such as relying on the petition rate.

## **ARGUMENT**

### I.   **Standard Of Review**

In reviewing Commerce's antidumping duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'"  *Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (citations omitted), but "less than the weight of the evidence," *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

To determine "whether Commerce's interpretation and application of the {statute} is in accordance with law, this Court must consider 'whether Congress has directly spoken to the precise question at issue,' and, if not, whether the agency's interpretation of the statute is reasonable."  *Hangzhou Spring Washer Co. v. United States*, 387 F. Supp. 2d 1236, 1240 (Ct. Int'l Trade 2005) (quoting *Chevron, U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984)).  When the statute leaves a gap for the agency to fill, "{a}ny reasonable construction of the statute is a permissible construction."  *Torrington v. United States*, 82 F.3d 1039, 1044 (Fed. Cir. 1996).  The Court need not conclude that the agency's construction of the statute is the only permissible one or even the reading that the Court would have reached if the question

initially had arisen in a judicial proceeding.  *See Chevron*, 467 U.S. at 843 n.11.

To determine whether agency action is arbitrary or capricious, the Court normally considers whether "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Additionally, agency action is arbitrary and capricious if "the agency offers insufficient reasons for treating similar situations differently."  *West Deptford Energy, LLC v. Fed. Energy Regul. Comm'n*, 766 F.3d 10, 21 (Fed. Cir. 2014).

II.  **Commerce's Determination Not To Individually Examine SGRE Was In Accordance With Law**

SGRE argues that Commerce's failure to individually examine SGRE was not in accordance with law.  According to SGRE, when the sole mandatory respondent withdrew from participation in the investigation, Commerce was required under 19 U.S.C. § 1677f-1(c)(2) to select a replacement respondent.  Pl. Br. at 12-18.  In particular, SGRE asserts that an individual examination of zero exporters is not a "reasonable number" under 19 U.S.C. § 1677f-1(c)(2).  *Id.* at 13, 15-16.  However, SGRE's arguments misapprehend the statute and the record because the statute is silent on what to do when all mandatory respondents withdraw from an investigation and Commerce's case-by-case evaluation of whether to select additional mandatory respondents is a reasonable interpretation of the statute.

a.  Commerce Complied with 19 U.S.C. § 1677f-1(c) When It Selected Vestas For Individual Examination

Section 1677f-1(c)(1) establishes a general rule that Commerce will determine individual weighted average dumping margins "for each known exporter and producer of the subject

merchandise" in an investigation.  However, when the "large number of exporters or producers

involved in the investigation" makes it impracticable to examine all known producers and

exporters of the subject merchandise, Commerce has broad authority to limit its examination to a

reasonable number of respondents.  19 U.S.C. § 1677f-1(c)(2).  Specifically, Commerce has

discretion to review a "reasonable number" of companies by examining either:  (1) a statistically

valid sample of the exporters or producers; or (2) exporters or producers accounting for the

largest volume of the subject merchandise that can be reasonably examined.  *Id.*  The statute is

silent as to how Commerce must determine which producers or exporters, or how many

producers or exporters, Commerce must select.  Thus, Commerce has discretion to determine

what constitutes a "reasonable number" on a case-by-case basis.

Commerce complied with the statute in the underlying investigation.  In its Respondent

Selection Memorandum, Commerce found that there were a "large number of exporters or

producers" involved in the investigation such that it could not individually examine every known

exporter or producer of the subject merchandise.  Commerce based this determination on the

large number of companies identified in the petition and CBP import data, 3 and 16,

respectively.[2]  Respondent Selection Memorandum at 3-4.  Due to the large number of exporters

or producers involved in the investigation,[3] Commerce appropriately applied the exception in 19

U.S.C. § 1677f-1(c)(2) by limiting its examination to Vestas.  In this regard, after considering the

Q&V data, resource constraints, and the expected complexity of the investigation, Commerce

found that it had the resources to individually examine one mandatory respondent.  Therefore,

---

[2] Plaintiff's assertion that there were only "two participating exporters" is therefore misleading.  *See* Pl. Br. at 15.  Commerce issued Q&V questionnaires to all 19 exporters, *see* PDM at 2, so all 19 were "involved in the investigation," 19 U.S.C. § 1677f–1(c)(2).

[3] This court has held that at least twelve exporters constitutes "a large number."  *See, e.g.*, *Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1329 (Ct. Int'l Trade 2015).

Commerce selected Vestas because it accounted for "a significant majority of imports of subject merchandise" during the period of investigation. *Id.* at 6-7; *see also* Respondent Selection Memorandum, C.R. 32 at Attachment (including percentage of Vestas's representation). Commerce found that an individual examination of Vestas would allow it to capture the largest volume of exports that could reasonably be examined. Respondent Selection Memorandum at 6 (citing 19 U.S.C. § 1677f-1(c)(2)(B)).[4]

      b.  <u>Commerce Was Not Required To Select A Replacement Mandatory Respondent</u>

SGRE argues that Commerce must "individually examine at least one company." *See* Pl. Br. at 13. As set forth above, that is what Commerce did when it selected Vestas for individual examination. SGRE does not challenge Commerce's decision to select Vestas for individual examination, nor did SGRE argue during respondent selection that Commerce should have examined more than one mandatory respondent.[5] Instead, SGRE essentially maintains that the statute unambiguously requires Commerce to continuously revisit respondent selection throughout an investigation when all mandatory respondents cease participation. According to SGRE, regardless of timing or circumstances, Commerce "must conduct an individual

---

[4] Commerce did not select respondents for individual examination based on a sampling methodology, which is the other permissible methodology under the statute. *See* 19 U.S.C. § 1677f-1(c)(2)(A). That determination is not disputed in this litigation.

[5] Nor did SGRE argue in its case brief that Commerce was required to select at least two respondents initially. *See generally* SGRE's Case Brief (May 4, 2021) (C.R. 42). To the extent SGRE raises this argument now, *see* Pl. Br. at 15, SGRE failed to exhaust it before the agency and the Court should not consider it, *see* 28 U.S.C. § 2637(d) ("{T}he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."); *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) ("{A}bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."); *Corus Staal BV v. United States*, 502 F.3d 1370, 1378-79 (Fed. Cir. 2007) (requiring exhaustion of administrative remedies and recognizing that Commerce's regulations make exhaustion "explicitly imposed by the agency as a prerequisite to judicial review").

examination prior to imposing an AD order when there are known, involved exporters ready and willing to participate in such an examination" because "zero" is not a reasonable number of exporters pursuant to 19 U.S.C. § 1677f-1(c)(2).  Pl. Br. at 13, 15-16.

There is nothing in 19 U.S.C. § 1677f-1(c)(2) compelling SGRE's interpretation of the statute.  Congress did not speak to the scenario presented in this case, which is how Commerce must proceed when it has limited its examination to mandatory respondents that all stop participating in the investigation.  In the absence of unambiguous statutory guidance, Commerce has developed a practice of evaluating its resources on a case-specific basis to determine whether it is practicable to select an additional company to replace a non-participating mandatory respondent.  *See, e.g.*, *Twist Ties from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 10,536 (Dep't of Commerce Feb. 22, 2021), and accompanying IDM at Comment 2 (even though all mandatory respondents withdrew from participating, declining to replace them because the issue was raised too late in the proceedings).  That is, consistent with the statute, Commerce evaluates on a case-by-case basis whether it can "reasonably examine" another mandatory respondent.  In this investigation, as discussed further below, Commerce found based on several considerations that it could not reasonably examine SGRE at a late stage in the investigation.  In reaching this determination, Commerce did not—as SGRE asserts—find that "zero" is a reasonable number within the meaning 19 U.S.C. § 1677f-1(c)(2).

Commerce's interpretation of the statute is reasonable and entitled to deference.  *See Chevron*, 467 U.S. at 842-43.  In investigations involving a large number of exporters or producers, Commerce has broad discretion to individually examine a "reasonable number of exporters and producers" accounting for "the largest volume of the subject merchandise . . . that

can be reasonably examined." *See* 19 U.S.C. § 1677f-1(c)(2); *see also* Uruguay Round

Agreements Act, Statement of Administrative Action*, H.R. Rep. No. 103-316, *reprinted in* 1994

U.S.C.C.A.N. 4040, 4251 (clarifying that an assessment of what "can be reasonably examined"

must be made by Commerce alone). The statute's repeated use of the word "reasonable"

indicates that Congress intended for Commerce to make case-specific assessments regarding

respondent selection. *See, e.g.*, *Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1329 (Ct. Int'l

Trade 2015) ("{W}hether a certain number of mandatory respondents is 'reasonable' in any

particular case is likely to depend on the facts of that case, such as the subject merchandise at

issue, the respondents chosen, the mandatory respondents' share of the total volume of imports,

and other factors. There is no magic number of respondents that must be chosen for the number

to be 'reasonable.'"). That is precisely what Commerce did in the underlying investigation when

it determined that it could not individually examine SGRE. That Commerce made this

determination after the sole mandatory respondent withdrew from participation does not make it

any less reasonable.

    The reasonableness of Commerce's interpretation is further illustrated by other provisions

of the statute. Under 19 U.S.C. § 1677m(a)(1), Congress established a process for companies to

voluntarily seek individual examination in investigations when Commerce has limited its

examination to selected exporters and producers. To be considered for voluntary respondent

treatment, a company must submit questionnaire responses by the deadlines established for

mandatory respondents and Commerce must assess whether examining a voluntary respondent

would be "unduly burdensome" and "inhibit the timely completion of the investigation . . . ."

*See id*. SGRE's proposed interpretation of 19 U.S.C. § 1677f-1(c)(2) would circumvent this

process by requiring examination of companies like SGRE that did not submit timely

questionnaire responses, regardless of the burden on Commerce.  Commerce's interpretation, in contrast, is consistent with 19 U.S.C. § 1677m(a)(1).

Commerce's interpretation also properly accounts for statutory deadlines in an investigation.  *See generally* 19 U.S.C. §§ 1673b(b)-(c), 1673d(a)(1)-(2).  Had Congress intended for Commerce to operate without regard for statutory deadlines when a mandatory respondent withdraws from participation and another respondent is "ready and willing to participate," *see* Pl. Br. at 13, it would have so specified.  Although SGRE (inaccurately) argues that Commerce could have met extended statutory deadlines in this investigation, it is not always the case that a mandatory respondent withdraws after questionnaires are issued without submitting a questionnaire response.[6]  Indeed, a mandatory respondent might stop participating after submitting multiple questionnaire responses or prior to verification.  If Congress intended for Commerce to "conduct an individual examination prior to imposing an AD order when there are known, involved exporters ready and willing to participate in such an examination," *see* Pl. Br. at 13, then Commerce might need to restart an investigation shortly before the statutory deadline for making a final determination.  In that scenario, Commerce indisputably could not comply with the requirements of the statute.

Because SGRE misapprehends Commerce's obligations under the statute, its reliance upon the Court's decision in *Schaeffler* is misplaced.  *See* Pl. Br. at 16 (citing *Schaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358 (Ct. Int'l Trade 2011)).  In the administrative review challenged in *Schaeffler*, Commerce selected a single respondent from among the three companies subject to the review.  *See id.* at 1361.  In that context, the Court held that a

---

[6] Commerce has, in other instances, refused to replace mandatory respondents at similar stages of the investigation or administrative review.  *See, e.g., Twist Ties from China,* IDM at Comment 2.

"reasonable number of exporters or producers . . . does not encompass a quantity of one" and that a "large number of exporters or producers" cannot "plausibly be construed to mean any number of exporters or producers greater than two." *See id.* at 1362-63.[7]  But SGRE does not argue[8] (nor did it argue before Commerce) that Commerce was required to individually examine more than one exporter or producer in this investigation.  *See* Pl. Br. at 12 (arguing that Commerce was required to individually examine "at least one" exporter or producer).  Instead, SGRE argues that Commerce has an ongoing obligation to select a *second* respondent when the sole mandatory respondent withdraws from participation at any point in the proceeding.  Thus, *Schaeffler* is inapposite.[9]

In a case actually involving the replacement of a non-cooperating mandatory respondent, the Court sustained Commerce's determination not to select another respondent late in the proceeding.  *See YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367 (Ct. Int'l

---

[7] The Court in *Schaeffler* did not address 1 U.S.C. § 1, which provides that "unless the context indicates otherwise – . . . words importing the plural include the singular."  *See YC Rubber*, 487 F. Supp. 3d at n.7 (finding that *Schaeffler* "did not address the Definitions Act or the statutory framework of 19 U.S.C. § 1677f-1(c), including 19 U.S.C. § 1673d(c)(5)").

[8] As discussed below, SGRE devotes a paragraph of its brief to arguing that there were only two participating exporters, which is not a large number within the meaning of 19 U.S.C. § 1677f-1(c)(2).  This argument was not exhausted before Commerce.  *See generally* SGRE's Case Brief; *see also* 28 U.S.C. § 2637(d) ("{T}he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."); *Boomerang Tube*, 856 F.3d at 912 ("{A}bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."); *Corus Staal*, 502 F.3d at 1378-79 (requiring exhaustion of administrative remedies and noting Commerce's regulations make exhaustion "explicitly imposed by the agency as a prerequisite to judicial review").  In any event, SGRE's description is inaccurate.  Nineteen companies were issued Q&V questionnaires, and thirteen companies responded to the Q&V questionnaires, PDM at 2.  Additionally, SGRE was neither a voluntary nor a mandatory respondent.

[9] Additionally, in *Schaeffler*, the Court declined to grant a remand because plaintiff had not participated as a voluntary respondent and had thus failed to exhaust its administrative remedies.  *See Schaeffler,* 35 C.I.T. at 731.

Trade 2020), appeal pending.  In the underlying review in *YC Rubber*, Commerce limited its

individual examination to two companies, and one subsequently withdrew from participation.

During administrative briefing, separate rate respondents argued for the first time that Commerce

should have selected a third respondent—at which time it was too late for Commerce to

undertake such an examination.  The Court in *YC Rubber* sustained Commerce's determination

not to select a replacement respondent, holding that "section 1677f-1(c)(2) is silent as to the

consequences when one or more of the selected respondents withdraws from the proceeding or

otherwise ceases to participate following Commerce's decision to limit its examination" and that

Commerce's interpretation of the "requirements placed upon the agency by section 1677f-

1(c)(2)(B)" was reasonable.  *Id.* at 1377-78.  Though the Court's decision in *YC Rubber* has been

appealed to the United States Court of Appeals for the Federal Circuit, a decision remains

pending.[10]

> c.   Commerce Is Guided By The Statute, Not Environmental Concerns

SGRE also erroneously argues that Commerce's failure to individually examine SGRE is

"especially unjustifiable" based on public policy considerations.  Pl. Br. at 22.  According to

SGRE, Commerce's determination "creates a monopoly in the market for clean energy," which

"runs counter to U.S. emission reduction goals" and other of the United States' policy priorities.

*Id.*

---

[10] SGRE cites excerpts from the Federal Circuit's oral argument in an effort to
demonstrate that the Federal Circuit disagreed with this Court's assessment in *YC Rubber*.  *See*
Pl. Br. at 16-17.  Because oral argument is not a dispositive resolution of the case, these excerpts
are inapposite.  *See, e.g., Acciai Speciali Terni S.p.A. v. United States*, 350 F. Supp. 2d 1254,
1265 n.12 (Ct. Int'l Trade 2004) ("Discussions with the court at oral argument are, of course, just
that, discussions, unless they represent a ruling by the court or a binding concession by a
party.").

SGRE did not raise this argument in its administrative case brief and, thus, failed to exhaust its administrative remedies with respect to this claim. *See, e.g.*, 28 U.S.C. § 2637(d) (generally requiring exhaustion of administrative remedies); 19 C.F.R. § 351.309(c) (requiring case briefs to present all arguments); *JBF RAK LLC v. United States*, 790 F.3d 1358, 1366 (Fed. Cir. 2015) (noting this Court's "strict view" of the exhaustion requirement) (citation omitted); *Boomerang Tube*, 856 F.3d at 912 ("{A}bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies.") (citation omitted); *Corus Staal*, 502 F.3d at 1378-79 (requiring exhaustion of administrative remedies and noting Commerce's regulations make exhaustion "explicitly imposed by the agency as a prerequisite to judicial review").[11]  In any event, SGRE's arguments lack a foundation in the statute.  When conducting respondent selection, Commerce is guided by 19 U.S.C. § 1677f-1(c)(2).  Nothing in that provision indicates that Commerce must take public policy into account when selecting respondents.  Such an omission is notable because Congress *did* explicitly direct Commerce to consider public policy in other parts of the statute.  *See* 19 U.S.C. § 1673c(a)(2) (requiring that Commerce consider whether suspension agreement is "in the public interest" and enumerating public interest factors).  Because Congress did not include a similar requirement in 19 U.S.C. § 1677f-1(c), Commerce was not required to consider environmental public policy concerns and its analysis in the Final Determination comported with the statute.

---

[11] Furthermore, none of the limited exceptions to the exhaustion doctrine apply to this argument:  (1) exhaustion would not have been a "useless formality"; (2) no "intervening legal authority 'might have materially affected the agency's actions'"; (3) the argument presents a mixed question of fact and law and not a "a pure question of law"; (4) there is no "clearly applicable precedent" binding Commerce; and (5) SGRE had the opportunity to raise this issue before Commerce.  *See, e.g.*, *SeAH Steel Corp. v. United States*, 764 F. Supp. 2d 1322, 1325-26 (Ct. Int'l Trade 2011) (citation omitted).

d.  Commerce Reasonably Found That There Were A Large Number Of Exporters
Or Producers Involved In The Investigation

SGRE also summarily asserts that there were "effectively, only two participating exporters" and that two is not a "large number."  Pl. Br. at 15.  Therefore, SGRE claims that Commerce "put the cart before the horse" in limiting its examination to Vestas without having first concluded that the number of "participating exporters" was large.  *See id.*

However, SGRE failed to exhaust its administrative remedies with respect to this claim. SGRE had two opportunities to raise this argument during the respondent selection process.  *See Utility Scale Wind Towers From India, Malaysia, and Spain: Initiation of Less Than-Fair-Value Investigations*, 85 Fed. Reg. 73,023, 73,026 (Nov. 16, 2020) (P.R. 44); *Memorandum Regarding Quantity and Value Questionnaires – Rejected Submissions and Refiling; Additional Comments on Respondent Selection* (Dec. 15, 2020) (P.R. 97).  SGRE did not comment on respondent selection, nor did it seek to participate as a voluntary respondent pursuant to 19 U.S.C. § 1677m(a)(1).   In its case brief, SGRE argued only that "SGRE by itself cannot constitute a 'large number of exporters or producers' within the meaning of the statute."  SGRE Case Brief at 7 (P.R. 141, C.R. 42).  At no time did SGRE claim that Commerce should have selected two respondents (Vestas and SGRE) at the outset of the investigation.

As an initial matter, the Court should not consider this argument because it was not timely raised in a case brief before Commerce.  *See, e.g.*, 28 U.S.C. § 2637(d) (generally requiring exhaustion of administrative remedies); *Boomerang Tube*, 856 F.3d at 912 ("{A}bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."); *Corus Staal*, 502 F.3d at 1378-79 (requiring exhaustion of administrative remedies and noting Commerce's regulations make exhaustion "explicitly imposed by the agency as a prerequisite to judicial review").

Additionally, SGRE failed to exhaust its administrative remedies by not pursuing voluntary respondent status.  As this Court has "repeatedly" required, "a party aggrieved by not being selected as a mandatory respondent must request to be reviewed as a voluntary respondent under 19 U.S.C. § 1677m(a) before it can challenge the mandatory selection process in court." *DuPont Teijin Films China Ltd. v. United States*, 7 F. Supp. 3d 1338, 1357 (Ct. Intl. Trade 2014) (citations omitted).  The party must "pursue the statutory process for receiving an individually-determined margin," including timely filing responses to Commerce's questionnaires by the deadlines required for the mandatory respondents.  *See Union Steel Mfg. Co. v. United States*, 837 F. Supp. 2d 1307, 1331 (Ct. Int'l Trade 2012); *see also Shenzhen Xinboda Industrial Co. v. United States*, 180 F. Supp. 3d 1305, 1318-19 (Ct. Int'l Trade 2018).  Otherwise, the plaintiff has "failed to exhaust its administrative remedies."  *Amanda Foods (Vietnam) Ltd. v. United States*, 807 F. Supp. 2d 1332, 1348 (Ct. Int'l Trade 2011).

Moreover, no exhaustion exception applies.  There is no indication that it would have been futile for SGRE to raise this argument:  Commerce twice solicited comments on respondent selection.  Additionally, although SGRE argues that it would have been futile to submit a voluntary response, *see* Pl. Br. at 21, Commerce has accepted voluntary respondents in the past and did not foreclose that possibility in this case.  *See, e.g.*, *Certain Cold-Rolled Steel Flat Products from Japan: Preliminary Affirmative Less Than Fair Value Determination*, 81 Fed. Reg. 11,747 (Dep't of Commerce March 7, 2016), and accompanying PDM at 2 (unchanged in final)); *Certain Steel Nails from Taiwan*, 82 Fed. Reg. 36,744 (Dep't of Commerce Aug. 7, 2017), and accompanying PDM at 2-3 (unchanged in final).  SGRE's contention that selection as a voluntary respondent "was unlikely is insufficient as a ground to waive the exhaustion requirement."  *See Union Steel*, 837 F. Supp. 2d at 1331-32.  Moreover, SGRE does not raise a

pure question of law because, as discussed above, the determination that a large number of companies exists and what is a reasonable number of mandatory respondents involves Commerce's discretion exercised under the circumstances of a given case.

If the Court were to find that SGRE's argument raises a pure question of law, such that it falls within an exception to the exhaustion doctrine, Commerce's determination that there were a large number of exporters or producers "involved in the investigation" is reasonable. As an initial matter, there were 19, not two, companies involved in the investigation. PDM at 2. A company need not actively participate to be "involved in the investigation," and SGRE cites no authority supporting its restrictive interpretation. Moreover, Commerce has a well-established practice of treating all possible respondents—regardless of their level of participation—as "involved in the investigation." *See, e.g.*, Respondent Selection Memorandum at 3 (finding that the "number of exporters and producers included in the petition and CBP data constitutes a large number"). Otherwise, Commerce might be restricted to examining only those companies that choose to participate rather than the largest exporters or producers of subject merchandise by volume or a statistically valid sample of exporters or producers. *See* 19 U.S.C. § 1677f-1(c)(2). Not only would this result open a loophole in the statute by incentivizing companies that are dumping to remain silent, but it would conflict with the general rule in 19 U.S.C. § 1677f-1(c)(1) that Commerce determine individual weighted average dumping margins for "each *known* exporter and producer of the subject merchandise." (emphasis added). *See also Husteel,* 98 F. Supp. 3d at 1328 (finding that section 1677f-1(c) "does not limit Commerce's duty to investigate only respondents that specifically ask to be reviewed").[12]

---

[12] Additionally, all 19 companies identified by Commerce were issued Q&V questionnaires and 13 responded, making all 19 "involved" in the investigation.

III.   **Commerce Reasonably Exercised Its Discretion Not To Individually Examine SGRE**

SGRE argues that Commerce abused its discretion in not selecting SGRE for individual examination and therefore acted in an arbitrary and capricious manner.  In particular, SGRE contends that Commerce had "both the time and resources" to examine SGRE and its determination to the contrary was unreasonable.  Pl. Br. at 18-23.  SGRE also maintains that Commerce's Final Determination is arbitrary and capricious insofar as Commerce has selected replacement mandatory respondents in other proceedings but did not do so in this case.  *Id*. at 23-25.  Finally, SGRE asserts that Commerce arbitrarily declined to extend the preliminary or final determination deadlines in the investigation to accommodate individual examination of SGRE. *Id.* at 25-28.  As we demonstrate below, Commerce's decision not to individually examine SGRE was a reasonable exercise of discretion and comported with agency practice.

  a.   Commerce's Determination Not To Individually Examine SGRE Was Reasonable

Commerce is bound by statutory deadlines when issuing preliminary and final determinations in a less than fair value investigation.  Commerce initiated the less than fair value investigation of wind towers from Spain on November 9, 2020.  More than three months later, two months after the issuance of Commerce's Questionnaire, *see Letter from Commerce to Alston & Bird Pertaining to Vestas Eolica, S.A. Questionnaire* (Dec. 23, 2020) (P.R. 104), and 38 days before the unextended deadline for the preliminary determination, SGRE requested that Commerce individually examine SGRE.  Commerce reasonably declined to select SGRE as a mandatory respondent at that late stage in the investigation.

Commerce explained that given the late stage, there was "insufficient time for issuing questionnaires, obtaining and analyzing responses, identifying potential deficiencies and/or

20

inconsistencies, seeking clarification and/or additional information through supplemental questionnaires, analyzing supplemental responses and preparing the preliminary determination." SGRE Rejection Letter; *see also* IDM at 5-6. This delay was, in part, of SGRE's own making. SGRE did not seek to participate as a voluntary respondent under the process established by 19 U.S.C. § 1677m(a)(1); had SGRE done so, Commerce would have already had SGRE's questionnaire response. *See* SGRE Rejection Letter; IDM at 5. Moreover, SGRE waited three weeks after Vestas's withdrawal before requesting individual examination. Given that Vestas did not withdraw from participation until well over two months after the investigation began, SGRE's weeks-long delay compressed what was already a rapidly shrinking window before the preliminary determination. SGRE Rejection Letter; IDM at 7.

As Commerce explained in the Final Determination, even if Commerce issued its questionnaire to SGRE on the day immediately following SGRE's request, it would have been due (barring any extensions) on the same day as the unextended statutory deadline for the preliminary determination. *See* IDM at 5-6 (explaining that Commerce normally allots 37 days for parties to respond to the initial questionnaire, under 19 C.F.R. § 351.301(c)(1)). If Commerce were to have fully extended the preliminary determination, then that would leave less than two months for Commerce to analyze SGRE's initial response, to issue supplemental questionnaires, to complete its margin calculations, and to prepare its preliminary determination. *See* IDM at 6 (explaining how individual investigation of a company requires an "enormous expenditure of resources" beyond just the initial questionnaire). In these circumstances, Commerce reasonably found that its workload and available resources did not permit selection of an additional mandatory respondent after the deadline for the initial

questionnaire response had passed.  And as discussed below, this refusal to select an additional

mandatory respondent is consistent with Commerce's practice in other investigations and

administrative reviews.

       b.  <u>Commerce Did Not Abuse Its Discretion</u>

SGRE argues that Commerce's determination was unreasonable because Commerce

found in its Respondent Selection Memorandum that it had resources to individually examine

one mandatory respondent.  According to SGRE, Commerce "could and should have directed

those resources to an individual examination of SGRE" once it became clear that Vestas would

not be participating.  Pl. Br. at 18.  SGRE further asserts that an examination of SGRE would

likely necessitate fewer resources than Commerce initially allocated for Vestas because SGRE

had fewer shipments during the period of investigation.  *Id.*  These arguments lack merit.

As an initial matter, any "assessment of Commerce's operational capabilities or

deadline rendering must be made by the agency itself" and not by SGRE.  *Longkou Haimeng

Mach. Co. v. United States,* 581 F. Supp. 2d 1344, 1353 (Ct. Int'l Trade 2008); *see Torrington

Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995) ("[A]gencies with statutory

enforcement responsibilities enjoy broad discretion in allocating investigative and enforcement

resources.").  In deciding how to allocate its limited resources, Commerce enjoys broad

discretion.  The Court will only set aside an exercise of discretion that is "clearly unreasonable,

arbitrary, or fanciful," based on erroneous conclusions of law or fact, or "follows from a record

that contains no evidence on which {Commerce} could rationally base its decision."  *See

Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 853 F. Supp. 2d 1352, 1363 (Ct. Int'l

Trade 2012) (quotations marks and citation omitted).  For the reasons articulated above,

Commerce's decision not to individually examine SGRE was reasonable, adequately

supported, and consistent with the statute; as such, it was not an abuse of discretion.

Moreover, Commerce explained in the Final Determination why it could not have simply redirected resources allocated to Vestas to an individual examination of SGRE. *See* IDM at 6. In this regard, Commerce explained that nearly two months had passed since selecting Vestas as a mandatory respondent, meaning that Commerce would need to operate on a significantly more compressed timeline given SGRE's failure to file a timely voluntary response. *See id.* Doing so would, in turn, require that Commerce commit additional resources to the investigation than it had originally allocated. SGRE unpersuasively attempts to diminish the impact of this two-month delay on Commerce's investigation, arguing that individual examination of SGRE would have been less resource-intensive because it had "fewer shipments." *See* Pl. Br. at 18. This argument erroneously assumes that the number of shipments is the only possible complexity in an investigation; in fact, Commerce assessed that an individual examination of SGRE would be complicated at the very least by SGRE's sourcing of subject wind towers from an unaffiliated supplier that failed to respond to Commerce's Q&V questionnaire. *See* IDM at 6 n.31 (explaining that this would be a "complicating factor, requiring additional time and resources to address").

SGRE also argues that it is unreasonable to expect that SGRE would have "ignored Commerce's declaration" when selecting Vestas that it only had the resources to examine individually one mandatory respondent. *See* Pl. Br. at 20. According to SGRE, with this finding, Commerce indicated that it "would not consider" any voluntary responses. *See id.* This is inaccurate. Commerce did not speak to the treatment of prospective voluntary respondents at all in the Respondent Selection Memorandum. Moreover, 19 U.S.C. § 1677m(a)(1), governing voluntary responses, provides that Commerce's determinations

regarding undue burden are based on the facts "as of the date of the determination."  In other

words, if a prospective voluntary respondent submits a questionnaire response by the specified

deadline, Commerce will evaluate the circumstances *at that time* in determining whether it

would be unduly burdensome to individually examine that company.  *See* IDM at 5.  Though

SGRE asserts that such a submission would have been "futile," Pl. Br. at 21, Commerce

explained in its Final Determination that it has selected voluntary respondents in the past and

the perception of futility does not excuse a company from complying with the requirements of

19 U.S.C. §1677m.  *See* IDM at 5 (citing *Certain Cold-Rolled Steel Flat Products from Japan:*

*Preliminary Affirmative Less Than Fair Value Determination*, 81 Fed. Reg. 11,747 (Dep't of

Commerce March 7, 2016), and accompanying PDM at 2 (unchanged in final)); *Certain Steel*

*Nails from Taiwan*, 82 Fed. Reg. 36,744 (Dep't of Commerce Aug. 7, 2017), and

accompanying PDM at 2-3 (unchanged in final)).  Moreover, as discussed above, SGRE's

contention that selection as a voluntary respondent was unlikely did not obviate the need for

SGRE to exhaust its administrative remedies before challenging respondent selection in Court.

*See Union Steel*, 837 F. Supp. 2d at 1331-32  (holding that the company was required to pursue

voluntary respondent treatment in order to exhaust administrative remedies even if it was

doubtful that such treatment would have been afforded to it and listing cases).

      Finally, citing *Zhejiang*, SGRE asserts that "Commerce may not rely upon its workload

in deciding that individual examinations are impracticable."  *See* Pl. Br. at 21 (citing *Zhejiang*

*Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States*, 637 F. Supp. 2d

1260 (Ct. Int'l Trade 2009)).  The Court in *Zhejiang* addressed an argument that four was not a

"large number" of exporters or producers involved in the review such that Commerce could not

limit its examination to certain exporters or producers.  Under these circumstances, the Court

held that Commerce may not rely upon its workload in determining whether the number of exporters or producers is large.  *See Zhejiang*, 637 F. Supp. 2d at 1263-64.  In contrast, in this case, Commerce reasonably found that there were a large number of exporters or producers involved in the investigation, *i.e.*, 19.  Having made that determination, Commerce correctly considered its resource constraints in determining whether it could reasonably examine SGRE.  *See Mid-Continent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1275 (Ct. Int'l Trade 2013) (distinguishing *Zhejiang* and *Shaeffler* and finding that there is "nothing unlawful about Commerce's consideration of resource constraints" in a proceeding involving a large number of companies); *Husteel*, 98 F. Supp. 3d at 1329 (holding that a reasonable number "is likely to depend on the facts of that case, such as the subject merchandise at issue, the respondents chosen, the mandatory respondents' share of the total volume of imports, and other factors" and that "{t}here is no magic number of respondents").

The argument that Commerce unreasonably considered its resources in not selecting SGRE for individual examination is also in tension with the statutory provision governing voluntary respondents.  As described above, 19 U.S.C. § 1677m(a)(1) specifies that Commerce will individually examine exporters and producers (1) that submit questionnaire responses by the deadlines established for the initially selected mandatory respondents, and (2) provided that it would not be "unduly burdensome" and "inhibit timely completion of the investigation or review" to individually examine voluntary respondents.  In considering whether examination would be "unduly burdensome," Congress authorized Commerce to consider factors such as the complexity of the investigation and current workload "as of the date of the determination."  *See* 19 U.S.C. § 1677m(a)(2)*.*  It is illogical to conclude that Congress intended for Commerce to consider its resources in deciding whether to select a voluntary respondent that submitted

timely questionnaire responses and *not* to do so when evaluating whether to examine a

company that requests examination a mere 38 days before the deadline for issuing a

preliminary determination.  For these reasons, Commerce's analysis in the Final Determination

was reasonable and consistent with its statutory obligations.

  c. <u>Commerce's Final Determination Comported With Agency Practice</u>

   SGRE also asserts that Commerce's Final Determination was arbitrary and capricious

because Commerce "routinely selects additional mandatory respondents in similar situations"

and arbitrarily refused to do so in this case.  *See* Pl. Br. at 23, 25.  However, when a previously-

selected mandatory respondent ceases participation in an investigation, Commerce determines on

a case-by-case basis whether it can reasonably examine another respondent in place of the non-

participating mandatory respondent.  This assessment is necessarily case-specific and will

depend on factors such as Commerce's available resources and the time remaining in the

investigation.  Because these considerations change from one proceeding to another, it is

inapposite that Commerce elected to examine an additional respondent in one case and not

another.  *See YC Rubber*, 487 F. Supp. 3d at 1379 (rejecting argument that Commerce acted

contrary to its practice in not selecting a replacement mandatory respondent, even though it had

done so in a prior administrative review).

   Nonetheless, SGRE is incorrect that Commerce "routinely selects" replacement

mandatory respondents in similar situations.  For this proposition, SGRE relies upon the less than

fair value investigation of cast iron soil pipe fittings from China and an administrative review of

the antidumping duty order in multilayered wood flooring from China.  *See* Pl. Br. at 23-24.

Those proceedings are readily distinguishable.[13]

---

[13] SGRE cites to respondent selection memoranda in support of its argument.  Because

In *Cast Iron Soil Pipe Fittings from China*, Commerce initiated its investigation on August 8, 2017, and selected the replacement respondent on September 19, 2017. *See Cast Iron Soil Pipe Fittings from the People's Republic of China: Preliminary Affirmative Less Than Fair Value Determination*, 83 Fed. Reg. 7,145 (Dep't of Commerce Feb. 20, 2018), and accompanying PDM at 1-2. This six-week gap is significantly shorter than the more than three months that passed between initiation of the underlying investigation and SGRE's request for treatment as a mandatory respondent. Moreover, the mandatory respondent in that prior proceeding withdrew a mere three days after its selection, rather than after questionnaire responses were due as the selected mandatory respondent did in this case. Similarly, Commerce's determination in *Multilayered Wood Flooring from China* is also distinguishable because it pertains to an administrative review rather than an investigation. *See Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review*, 83 Fed. Reg. 65,630 (Dep't of Commerce Dec. 21, 2018), and accompanying PDM at 2-3. Resource considerations are different in administrative reviews because the statutory deadlines are less compressed and Commerce often has institutional knowledge of the product and industry. Commerce's decision to select a mandatory respondent in *Multilayered Wood Flooring from China* with 38 days remaining until the unextended preliminary results must be viewed in that context; indeed, in an administrative review, Commerce can extend the issuance of its preliminary results by 120 days, which greatly exceeds the 50-day potential extension period in an investigation. *See* 19 U.S.C. § 1675(a)(3)(A).

---

these respondent selection memoranda are not on the record, we have not discussed their contents in responding to SGRE's argument.

SGRE also ignores proceedings when Commerce *did not* select a replacement mandatory respondent.  In *Twist Ties from China*, which Commerce cited in its Final Determination, Commerce did not select a replacement mandatory respondent when both mandatory respondents withdrew from participation a month into the investigation.  *See Twist Ties from the People's Republic of China*, 86 Fed. Reg. 10,536, accompanying IDM at Comment 2.  When parties argued that Commerce should have selected another respondent, Commerce cited the time constraints and complexities of the investigation, the parties' failure to timely seek voluntary respondent treatment, and the "high coverage of imports with the initially selected mandatory respondents" in continuing to find that it "lacked the resources to select and analyze additional mandatory respondents in the allotted time."  *See id.*  Commerce reached similar conclusions in an administrative review of *Passenger Vehicle and Light Truck Tires from China* and the less than fair value investigation of polyester textured yarn from Thailand.  *See Passenger Vehicle and Light Truck Tires from China: Final Results of Administrative Review*, 84 Fed. Reg. 17,781 (Dep't of Commerce Apr. 26, 2019), and accompanying IDM at Comment 3 (not selecting replacement respondent when Commerce received no voluntary responses and no companies requested individual examination until administrative briefing); *Polyester Textured Yarn from Thailand: Preliminary Affirmative Less Than Fair Value Determination*, 86 Fed. Reg. 29,742 (Dep't of Commerce June 3, 2021), and accompanying PDM at 2 (unchanged in final) (declining to select a new mandatory respondent after a mandatory respondent failed to respond to Commerce's antidumping questionnaire).  Thus, it is consistent with Commerce's practice, based on the particular circumstances of an investigation or administrative review, not to choose replacement mandatory respondents, even when all mandatory respondents have withdrawn from participation.

     d.   Commerce Reasonably Declined To Extend The Preliminary And Final
        Determination Deadlines In The Investigation

SGRE also incorrectly argues that Commerce's "refusal" to extend the preliminary and

final determinations despite claimed time constraints was arbitrary and capricious.  According to

SGRE, the investigation was extraordinarily complicated such that extension of the preliminary

determination was warranted pursuant to 19 U.S.C. § 1673b(c)(1).  *See* Pl. Br. at 27.[14]  SGRE

further contends that Commerce arbitrarily denied its request to extend the final determination,

even though Commerce routinely grants such requests in similar circumstances.  *See* Pl. Br. at

26-28.

These arguments rely on the premise that Commerce should have extended the

preliminary and final determinations to allow individual examination of SGRE.  However,

Commerce reasonably found that it could not complete an individual examination of SGRE

within the statutorily-prescribed time period.  In making this determination, Commerce did not

distinguish between extended and unextended preliminary and final determinations.  It is also

clear from the Final Determination that even fully extended deadlines would not have left

sufficient time for Commerce to complete its examination, considering that SGRE's initial

questionnaire response would have been due (at the earliest) on the same day as the unextended

preliminary determination.  *See* IDM at 6.  Because Commerce could not have individually

examined SGRE within the timeframe of the investigation, Commerce had no reason to

unnecessarily extend the preliminary and final determinations.

--------

[14] Additionally, SGRE contends that Commerce's finding of extraordinary complexities
warranting postponement of initiation to evaluate industry support further indicates the
complexity of the investigation.  Pl. Br. at 27.  However, industry support is determined prior to
initiation of an investigation and cannot be revisited, *see* 19 U.S.C. § 1671a(c)(4)(E); *PT Pindo
Deli Pulp v .United States*, 825 F. Supp. 2d 1310, 1323 n.20 (Ct. Int'l Trade 2012), and is
therefore irrelevant to the issues in this case.

Commerce may extend the preliminary determination in a less than fair value investigation based on either a timely request for an extension from the petitioner or if Commerce concludes that the parties concerned are cooperating and the case is "extraordinarily complicated." *See* 19 U.S.C. § 1673b(c)(1).   However, the single mandatory respondent in this investigation, Vestas, was not cooperating, and SGRE had not submitted a questionnaire response as a voluntary respondent.   Moreover, Commerce's decision to extend the preliminary determination is discretionary; even if the circumstances enumerated in the statute exist, Commerce is not required to extend the preliminary determination deadline.   *See* 19 U.S.C. § 1673b(c)(1) (providing that Commerce "*may* postpone" the preliminary determination (emphasis added)).   As discussed above, it would have been pointless to extend the preliminary determination deadline under the circumstances of this case, so Commerce reasonably did not extend the preliminary determination deadline.

Commerce's decision not to extend the final determination was similarly reasonable.   The provision that permits extension of final determinations in less than fair value investigations is permissive—though Commerce "may" postpone its determination in certain scenarios, it is not required to do so.   *See* 19 U.S.C. § 1673d(a)(2); *see also* 19 C.F.R. § 351.210(e)(1) (providing that Commerce "*may* grant the request" to extend the final determination, unless compelling reasons exist to deny the request).   As discussed above, it would have been pointless to extend the final determination deadline under the circumstances of this case.   Contrary to SGRE's assertions, Commerce also does not have a practice of extending the final determination deadline in similar circumstances such as the companion proceedings covering wind towers from India and Malaysia.   There, the mandatory respondents were cooperating; thus, those investigations

did not involve a similar scenario when the sole mandatory respondent withdrew from

participation and a second company requested individual examination late in the proceeding.

IV.   **SGRE's Arguments Regarding the All-Others Rate Were Not Exhausted Below And Lack Merit**

SGRE incorrectly argues that the statutory provision governing the calculation of the all-

others rate in an investigation reinforces that Commerce acted contrary to law in the Final

Determination.  *See* Pl. Br. at 28-31.  According to SGRE, 19 U.S.C. § 1673d(c)(5)(A) requires

that Commerce calculate an all-others rate by weight averaging multiple dumping margins.

SGRE also asserts that an all-others rate based on a "single, untested margin alleged in the

Petition" is not "representative" of SGRE.  *See* Pl. Br. at 30-31 (quoting *Albemarle Corp. v.

United States*, 821 F.3d 1345 (Fed. Cir. 2016)).  SGRE additionally contends that Commerce

impermissibly applied facts available with an adverse inference (AFA) to calculate the all-others

rate.  *See, e.g., id.* at 8.

SGRE did not exhaust its administrative remedies with respect to these arguments, and

the Court should not consider them now for the first time.  *See, e.g.*, 28 U.S.C. § 2637(d)

(generally requiring exhaustion of administrative remedies); 19 C.F.R. § 351.309(c) (requiring

case briefs to present all arguments); *Boomerang Tube*, 856 F.3d at 913 (finding that

unexhausted argument should not have been considered below); *Corus Staal*, 502 F.3d at 1378-

79 (requiring exhaustion of administrative remedies and noting Commerce's regulations make

exhaustion "explicitly imposed by the agency as a prerequisite to judicial review").  Indeed, the

only mention of the all-others rate in SGRE's case brief is a statement that the

"representativeness of investigated exporters is the essential characteristic that justifies an 'all-

others' rate."  *See* SGRE's Case Brief at 6 (P.R. 141) (C.R. 42) (emphasis omitted).  This single

sentence was not sufficient to put Commerce on notice of the arguments that SGRE now

attempts to articulate to the Court.  *See Am. Tubular Prods., LLC v. United States*, Court No. 13-00029, 2014 WL 4977626, at *13 (Ct. Int'l Trade Sept. 26, 2014) (finding that argument in a one-sentence footnote was not properly exhausted).  Again, no exceptions to the exhaustion requirements apply.  Nothing in the record suggests that it would have been futile for SGRE to raise these arguments before Commerce.  Nor do the arguments present a pure question of law because calculating the all-others rate involves an exercise of Commerce's discretion and expertise in light of the statutory language and circumstances of the case, as discussed below.

In any event, SGRE's arguments are unpersuasive.  As an initial matter, SGRE is incorrect that Commerce applied AFA to calculate the all-others rate.  *See, e.g.,* Pl. Br. at 8.  Commerce applied AFA to only Vestas and the 6 exporters who did not respond to its Q&V questionnaires.  PDM at 7.  Commerce then determined the all-others rate separately for the exporters who responded to the Q&V questionnaires.  PDM at 9-10.  Specifically, Commerce explained that

> Vestas Eolica is the sole mandatory respondent in this investigation, and its estimated dumping margin is determined entirely under section 776 of the Act. Pursuant to section 735(c)(5)(B) of the Act, Commerce's practice under these circumstances has been to assign, as the all-others rate, a simple average of the petition rates. However, because the Initiation Checklist contained only one estimated dumping margin, there are no additional dumping margins available to include in the all-others rate. Consequently, and consistent with its practice, Commerce is using the dumping margin alleged in the Petition of 73.00 percent as the all-others rate applicable to entities not individually examined in this investigation.

PDM at 9-10.  The paucity of information on the record due to Vestas's non-cooperation, and SGRE's decision not to seek voluntary respondent status and to timely submit an antidumping questionnaire response, ultimately led to the AFA and all-others rate being the same, but that

does not mean that Commerce applied AFA to SGRE and other exporters who responded to Q&V questionnaires.[15]

Commerce's reasoning is consistent with the statutory instructions for calculating the all-others rate. By statute, the all-others rate will generally be calculated as "the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated," excluding zero or *de minimis* margins and margins based entirely on facts available. 19 U.S.C. § 1673d(c)(5)(A). SGRE asserts that Congress's reference to a "weighted average" of margins established for plural "exporters and producers individually investigated" evinces an intent that Commerce calculate "multiple margins" for individually examined companies in an investigation. *See* Pl. Br. at 29. However, nothing in the statutory framework requires Commerce to calculate the all-others rate using multiple rates. The statute plainly provides for the *possibility* of Commerce having multiple established rates at the end of an investigation but it does not *require* the calculation of an all-others rate using multiple respondents' rates. *See YC Rubber*, 487 F. Supp. 3d at 1376 (finding that "there is no requirement for multiple data points to determine an average"). Moreover, this Court has upheld the use of one rate in calculating the separate rate in administrative reviews. *See, e.g.*, *id.*; *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1347 (Ct. Int'l Trade 2018) (holding Commerce's use of one rate in calculating the separate rate, which is calculated using 19 U.S.C. § 1673d(c)(5) as guidance, did not violate any statutory provisions).

---

[15] SGRE is also incorrect that Commerce did not corroborate the petition rate and that it was therefore unrepresentative. Pl. Br. at 17-18. In short, as Commerce explained in the PDM, "{b}ecause {Commerce} confirmed the accuracy and validity of the information underlying the derivation of the dumping margin alleged in the Petition by examining source documents and affidavits, as well as publicly-available information, we preliminarily determine that the dumping margin specified in the *Initiation Notice*, which was based upon information from the Petition and the supplements thereto, is reliable for the purpose of this investigation." PDM at 8-9.

33

Further, Commerce calculated the all-others rate pursuant to 19 U.S.C. § 1673d(c)(5)(B), not (A).  As Commerce explained, "{p}ursuant to section 735(c)(5)(B) of the Act, if the estimated weighted-average dumping margins established for all exporters and producers individually examined are zero, *de minimis*, or determined entirely under section 776 of the Act, Commerce may use any reasonable method to establish the estimated weighted-average dumping margin for all other producers or exporters."  PDM at 9.  As discussed above, Commerce explained why it was appropriate, in accordance with the statute, to use the petition rate as the all-others rate.  *See* PDM at 9-10.

SGRE is also incorrect that the all-others rate assigned in the Final Determination "violated the statutory and precedential requirement for representativeness."  *See* Pl. Br. at 30. SGRE cites no evidence indicating that the all-others rate, calculated in accordance with 19 U.S.C. § 1673d(c)(5), is unrepresentative.  And though SGRE challenges Commerce's decision to base the all-others rate on a single petition margin, *see* Pl. Br. at 30, SGRE does not cite any other record evidence upon which Commerce should have based the all-others rate.  Therefore, the all-others rate applied in the Final Determination is representative of SGRE because no evidence to the contrary exists.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiff's motion for judgment on the agency record and sustain Commerce's Final Determination in its entirety.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/ Sarah E. Kramer
OF COUNSEL:                                   SARAH E. KRAMER
                                              Trial Attorney
Shelby M. Anderson                            U.S. Department of Justice,
Senior Attorney                               Civil Division
Office of the Chief Counsel                   Commercial Litigation Branch
For Trade Enforcement & Compliance            P.O. Box 480
                                              Ben Franklin Station
                                              Washington, DC 20044
                                              Telephone: (202) 353-0537
                                              Facsimile: (202) 305-2062
                                              Email: sarah.e.kramer@usdoj.gov

April 14, 2022                                Attorneys for Defendant United States

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 11,029 words, including text, footnotes, and headings.

<u>/s/ Sarah E. Kramer</u>

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | | |
|---|---|---|
| SIEMENS GAMESA RENEWABLE ENERGY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 21-00449 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| WIND TOWER TRADE COALITION, | ) ) | |
| Defendant-Intervenor. | ) ) | |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____                    _____

New York, New York                                                          Judge