NON-CONFIDENTIAL VERSION

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SIEMENS GAMESA RENEWABLE ENERGY,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>WIND TOWER TRADE COALITION,<br><br>        Defendant-Intervenor. | Before:  Hon. Timothy C. Stanceu,<br>      Senior Judge<br><br>Court No. 21-00449<br><br>__NON-CONFIDENTIAL VERSION__<br><br>Business Proprietary Information<br>Removed from Pages 4-5 |

**WIND TOWER TRADE COALITION'S RESPONSE BRIEF**

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Wind Tower Trade Coalition*

Dated: April 14, 2022

Ct. No. 21-00449                                    NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................... 1

II.    RULE 56.2 STATEMENT ...................................................................... 1

    A.    Administrative Decision Under Review.........................................1

    B.    Issues Presented............................................................................1

III.   STATEMENT OF FACTS ...................................................................... 4

IV.   SUMMARY OF ARGUMENT ............................................................... 9

V.    ARGUMENT ......................................................................................... 10

    A.    Commerce's Decision Not to Select SGRE as a Replacement
           Mandatory Respondent Was Lawful ...........................................10

    B.    Commerce Reasonably Determined that It Did Not Have the Time
           or Resources to Examine SGRE at the Late Stage in the
           Investigation When the Request Was Made..................................14

    C.    SGRE's "Public Policy" Arguments Are Irrelevant, Inappropriate
           and Incorrect................................................................................18

    D.    Commerce's Determination Was Not Arbitrary or Capricious...............................18

    E.    Commerce's Determination Not to Extend the Statutory Timelines
           for Investigations Was Not Arbitrary or Capricious .............................23

    F.    Commerce's Assignment of the All Others Dumping Margin Was
           Reasonable and Consistent with Law...........................................24

VI.   CONCLUSION ...................................................................................... 27

Ct. No. 21-00449                                    NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bosun Tools Co. v. United States*,
Nos. 2021-1929, 2021-1930, 2022 U.S. App. LEXIS 624 (Fed. Cir. Jan. 10,
2022) ................................................................................................................26

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .........................................................................................13

*China Steel Corp. v. United States*,
27 CIT 715, 264 F. Supp. 2d 1339 (2003) .......................................................23

*Dorbest Ltd. v. United States*,
604 F.3d 1363 (Fed. Cir. 2010)........................................................................25

*DuPont Tejin Films China Ltd. v. United States*,
38 CIT 1282, 7 F. Supp. 3d 1338 (2014) ...................................................16, 17

*Gerber Food (Yunnan) Co. v. United States*,
33 CIT 186, 601 F. Supp. 2d 1370 (2009) .......................................................25

*Husteel Co. v. United States*,
98 F. Supp. 3d 1315 (Ct. Int'l Trade 2015) .....................................................12

*Mid Continent Nail Corp. v. United States*,
37 CIT 1313, 949 F. Supp. 2d 1247 (2013) ................................................13, 17

*Reiner Brach GmbH & Co. v. United States*,
26 CIT 549, 206 F. Supp. 2d 1323 (2002) .......................................................24

*Schaeffler Italia S.r.l. v. United States*,
35 CIT 725, 781 F. Supp. 2d 1358 (2011) ...................................................12, 13

*Sifab Solar, Inc. v. United States*,
296 F. Supp. 3d 1295 (Ct. Int'l Trade 2018) ...................................................18

*Unemployment Comp. Comm'n of Alaska v. Aragon*,
329 U.S. 143 (1946)..........................................................................................25

*Union Camp Corp. v. United States*,
23 CIT 264, 53 F. Supp. 2d 1310 (1999) .........................................................15

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978)..........................................................................................15

Ct. No. 21-00449                                    NON-CONFIDENTIAL VERSION

*Woodford v. Ngo*,
   548 U.S. 81 (2006) ............................................................................................25

*Yantai Timken Co. v. United States*,
   31 CIT 1741, 521 F. Supp. 2d 1356 (2007), *aff'd*, 300 F. App'x 934 (Fed. Cir.
   2008) ............................................................................................................24

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................................18

19 U.S.C. § 1673b(c) ..................................................................................................23

19 U.S.C. § 1673b(c)(1)(A) ........................................................................................23

19 U.S.C. § 1673d ......................................................................................................25

19 U.S.C. § 1673d(c)(5) .............................................................................................26

19 U.S.C. § 1677f–1(c) ..............................................................................................13

19 U.S.C. § 1677f-1(c)(1) ..........................................................................................11

19 U.S.C. § 1677f-1(c)(2) ...............................................................................11, 12, 13

19 U.S.C. § 1677m(a)(1) ............................................................................................16

Tariff Act of 1930 ......................................................................................1, 3, 10, 23, 26

**Regulations**

19 C.F.R. § 351.204(c)(2) ...........................................................................................11

19 C.F.R. § 351.205(b)(2) .......................................................................................21, 23

19 C.F.R. § 351.213(h)(1) ...........................................................................................20

19 C.F.R. § 351.213(h)(2) ...........................................................................................21

19 C.F.R. § 351.309(c)(2) ...........................................................................................25

**Administrative Materials**

*Certain Lined Paper Products from India*,
   86 Fed. Reg. 54,426 (Dep't Commerce Oct. 1, 2021) ..........................................22

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of
   China*, 85 Fed. Reg. 36,831 (Dep't Commerce June 18, 2020) ............................22

*Glycine from Japan,*
    86 Fed. Reg. 53,946 (Dep't Commerce Sept. 29, 2021)........................................................22

*Glycine From Japan,*
    86 Fed. Reg. 36,105 (Dep't Commerce July 8, 2021) ..........................................................22

*Cast Iron Soil Pipe Fittings from the People's Republic of China,*
    82 Fed. Reg. 37,053 (Dep't Commerce Aug. 8, 2017)..........................................................19

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
    84 Fed. Reg. 18,777 (Dep't Commerce May 2, 2019) ..........................................................20

*Utility Scale Wind Towers From India, Malaysia, and Spain,*
    85 Fed. Reg. 73,023 (Dep't Commerce Nov. 16, 2020)...........................................................4

*Utility Scale Wind Towers from Spain,*
    86 Fed. Reg. 45,707 (Dep't Commerce Aug. 16, 2021)...........................................................1

*Utility Scale Wind Towers from Spain,*
    86 Fed. Reg. 17,354 (Dep't Commerce Apr. 2, 2021)............................................................8

Ct. No. 21-00449                                           NON-CONFIDENTIAL VERSION

## I.      INTRODUCTION

On behalf of the Wind Tower Trade Coalition ("WTTC"), we respectfully submit the following response to the January 14, 2022 opening brief filed by Siemens Gamesa Renewable Energy ("SGRE").  *See* Br. of Pl. Siemens Gamesa Renewable Energy in Supp. of Its Mot. for J. on the Agency R. (Jan. 14, 2022), ECF No. 28-1 ("SGRE Br.").  For the reasons discussed below, Plaintiff's motion should be denied, and the Court should enter judgment for Defendant United States.

## II.     RULE 56.2 STATEMENT

### A.      Administrative Decision Under Review

The administrative determination challenged in this case is the Department of Commerce's ("Commerce") final affirmative determination in the antidumping duty ("AD") investigation of utility scale wind towers from Spain.  *See Utility Scale Wind Towers from Spain*, 86 Fed. Reg. 33,656 (Dep't Commerce June 25, 2021), P.R. 152 ("Final Determination") and accompanying Issues & Decision Memorandum, P.R. 149 ("I&D Memo").[1]  *See also Utility Scale Wind Towers from Spain*, 86 Fed. Reg. 45,707 (Dep't Commerce Aug. 16, 2021) (antidumping duty order), P.R. 160.

### B.      Issues Presented

#### 1.      Whether Commerce's determination not to investigate SGRE as a voluntary respondent was contrary to law?

No.  Commerce's respondent selection process was conducted in accordance with section 777A of the Tariff Act of 1930 ("the Act"), Commerce individually investigated the selected

---

[1]      Throughout this brief, references to confidential and public record documents listed in the administrative record indices filed on September 14, 2021 are designated by "C.R.," or "P.R.," followed by the appropriate record number.

respondent to the fullest extent possible and lawfully determined a dumping margin for that respondent and all other companies, and no provision of the law required the agency to later accept SGRE as a mandatory respondent.

### 2.   Whether Commerce's determination not to investigate SGRE as a voluntary respondent was unreasonable?

No.  In addition to being otherwise consistent with law, Commerce's determination that it was impracticable to investigate SGRE as a replacement mandatory respondent, at the time such status was requested, was wholly reasonable.  SGRE submitted no comments on respondent selection to Commerce during the relevant timeframe and did not request voluntary respondent status.  It waited nearly three weeks after Vestas's notice of non-participation to request mandatory respondent treatment, where there were only 40 days remaining until the scheduled date of the preliminary determination.  Commerce reasonably determined that it was impractical to begin a new investigation of a new mandatory respondent, and that it lacked sufficient resources to do so, at such a late stage in the proceeding.

### 3.   Whether SGRE's public policy arguments are persuasive?

No.   SGRE's proffered "public policy" arguments are irrelevant, inappropriate, and incorrect.  SGRE's arguments do not address the standard of review utilized by the Court in its review of Commerce decisions in antidumping and countervailing duty cases and thus should be disregarded.

### 4.   Whether Commerce's determination not to investigate SGRE as a voluntary respondent was arbitrary and capricious?

No.  In arguing that Commerce's decision not to accept SGRE as a mandatory respondent was arbitrary and capricious, SGRE cites a series of unpersuasive cases that do not present circumstances similar to the case at hand.  Commerce also articulated a sufficient explanation for

its decision here.  Thus, SGRE has failed to demonstrate that Commerce treated similar situations differently with inadequate explanation.

**5.       Whether Commerce's determination to adhere to the statutory deadlines for the preliminary and final determinations was arbitrary and capricious?**

No.  Commerce acted reasonably and well within its statutory and regulatory authority in determining to adhere to its deadlines.  The statute is clear that Commerce is not required to extend its deadlines, as the U.S. Court of International Trade ("CIT") has confirmed, and the agency acted consistently with the statute here.  SGRE's reference to a mere two cases where Commerce extended its determination deadlines, and to the agency's tolling of deadlines as a result of the COVID-19 pandemic, does not demonstrate that Commerce acted arbitrarily or capriciously. Rather, Commerce acted within its broad discretion to enforce its own time limits in investigations.

**6.       Whether Commerce's assignment of the Petition's dumping margin to all other producers and exporters was not representative and not in accordance with law?**

No.  First, SGRE failed to exhaust administrative remedies, and its appeal of this issue should be barred.  Despite the application of the same all-others rate in the preliminary determination, SGRE did not argue in its case brief to the agency that the calculation of that rate was inconsistent with the statute.  Second, even if considered, SGRE's argument is incorrect. SGRE's statement that Commerce applied facts available with an adverse inference ("AFA") to all other Spanish wind tower producers and exporters is not true.  Commerce applied the petition rate – the only dumping margin information on the record – to all other producers/exporters using the "any reasonable method" option under to section 735(c)(5)(B) of the Act.  The selection of this rate was consistent with the statute, reasonable and representative, and it should be affirmed.

**BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED**

## III.   STATEMENT OF FACTS

On November 9, 2020, Commerce initiated an AD investigation into wind towers from Spain. *Utility Scale Wind Towers From India, Malaysia, and Spain*, 85 Fed. Reg. 73,023 (Dep't Commerce Nov. 16, 2020) (initiation of less-than-fair-value investigations), P.R. 44.

Commerce submitted onto the record confidential U.S. Customs and Border Protection ("CBP") data reflecting imports of wind towers from Spain during the period of investigation ("POI") (*i.e.*, July 1, 2019 through June 30, 2020). Memorandum from Benito Ballesteros, Int'l Trade Compliance Analyst, Off. V, Enf't & Compliance, to The File, re: *Antidumping Duty Petition on Utility Scale Wind Towers from Spain: Release of U.S. Customs and Border Protection Data* (Nov. 2, 2020), P.R. 37, C.R. 22-23. The data showed [

].  *Id.* at Attachment 1.

Vestas Towers America, Inc. and its affiliated companies in Spain (collectively, "Vestas") submitted a request for an extension of the deadline to submit comments on the CBP data and respondent selection, which Commerce granted. Memorandum from Benito Ballesteros, Int'l Trade Compliance Analyst, Enf't & Compliance, Off. V, to The File, re: *Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Extension of Time for Comments on CBP Data and Respondent Selection* (Nov. 19, 2020), P.R. 46. The WTTC and Vestas Eolica S.A.U. ("Vestas Eolica"), Vestas Manufacturing A/S ("Vestas Manufacturing") and their affiliates (also collectively "Vestas") each submitted comments on the CBP data and Commerce's respondent selection. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers From Spain: Comments on CBP Data and Respondent Selection* (Nov. 23, 2020), P.R. 47, C.R. 25; Letter from Alston & Bird LLP to Sec'y Commerce, re: *Antidumping Duty Investigation of Utility Scale*

**BUSINESS PROPRIETARY INFORMATION**
                      **HAS BEEN DELETED**

*Wind Towers from Spain: Comments on CBP Data and Respondent Selection* (Nov. 23, 2020),

P.R. 48, C.R. 26.  SGRE did not submit comments to Commerce on respondent selection.

Commerce decided to issue quantity and value ("Q&V") questionnaires to Spanish wind

tower producers and importers, "to ensure the accuracy of the export volume data that {it would}

rely upon for respondent selection . . . ."  Memorandum from Benito Ballesteros, Int'l Trade

Compliance Analyst, Off. V, AD/CVD Operations, through Robert Galantucci, Program Manager,

Off. V, AD/CVD Operations, to The File, re: *Antidumping Duty Investigation of Utility Scale Wind*

*Towers from Spain: Issuance of Quantity and Value Questionnaires* (Nov. 25, 2020), P.R. 49 at 1.

Vestas, SGRE and other companies responded to the Q&V questionnaires, as required.  *See* Letter

from Alston & Bird LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Quantity*

*and Value Questionnaire Response* (Dec. 10, 2020), P.R. 92, C.R. 29 ("Vestas Q&V Response");

Letter from Crowell Moring, LLP to Sec'y Commerce, re: *Less-Than-Fair-Value Investigation of*

*Utility Scale Wind Towers from Spain: Response to Quantity and Value Questionnaire* (Dec. 7,

2020), P.R. 84, C.R. 27 ("SGRE Q&V Response").  Vestas reported exports of [

                                             ], to the United States during the POI.  Vestas Q&V

Response at Attachment I.  SGRE reported exports of [

                                             ], to the United States during the POI.  SGRE Q&V Response at

Attachment I.

Commerce then solicited additional comments on respondent selection.  Memorandum

from Benito Ballesteros, Int'l Trade Compliance Analyst, Enf't & Compliance, Off. V, to The File,

re: *Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Quantity and*

*Value Questionnaires – Rejected Submissions and Refiling; Additional Comments on Respondent*

*Selection* (Dec. 15, 2020), P.R. 97.  The WTTC and Vestas each submitted additional comments

on Commerce's respondent selection.  Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers From Spain: Comments on Respondent Selection and Q&V Data* (Dec. 18, 2020), P.R. 101, C.R. 31; Letter from Alston & Bird LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Additional Comments on Respondent Selection* (Dec. 18, 2020), P.R. 100, C.R. 30.  SGRE again did not submit comments on respondent selection.

On December 23, 2020, Commerce issued its respondent selection memorandum, selecting Vestas as the single mandatory respondent in the investigation.  Memorandum from Benito Ballesteros, Int'l Trade Compliance Analyst, Off. V, AD/CVD Operations, through Shawn Thompson, Dir., Off. V, AD/CVD Operations, to James Maeder, Deputy Assistant Sec'y for AD/CVD Operations, re: *Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Respondent Selection* (Dec. 23, 2020), P.R. 106, C.R. 32 at 1 ("Resp. Selection Memo").  Commerce first determined that there was a large number of subject producers or exporters in the case, and that it would not be practical to individually examine each one for various reasons, including the agency's workload.  *Id.* at 3-4.  As the respondent to be individually investigated, Commerce selected the exporter/producer accounting for the largest value of subject imports according to Q&V questionnaire responses.  *Id.* at 6-7.  Commerce found that "an individual examination of the largest exporter and producer by value of entries of subject merchandise during the POI {would} allow Commerce to capture the largest volume of exports Commerce can reasonably examine, in light of resource constraints and in compliance with the statutory requirements," and it selected Vestas, the exporter/producer with the largest value of entries of subject merchandise during the POI.  *Id.* at 6.

On January 28, 2021, Vestas notified Commerce that it would not continue to participate in the AD investigation, citing time, resources, financial commitments, and the ability to obtain

information from unaffiliated Spanish suppliers.   Letter from Alston & Bird LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Notice of Decision to Not Participate in the Investigation* (Jan. 28, 2021), P.R. 124 at 1-2 ("Vestas Notification").   On February 17, 2021 (40 days before the scheduled date of the preliminary determination), SGRE submitted to Commerce a request that the agency select it as a mandatory respondent for individual examination in the investigation.   Letter from Crowell & Moring LLP to Sec'y Commerce, re: *Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Request for Mandatory Respondent Selection* (Feb. 17, 202{1}), P.R. 128, C.R. 36 ("SGRE Selection Request").   The WTTC responded, asking Commerce to reject SGRE's request for respondent selection.   Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers From Spain: Response to SGRE's Request for Additional Mandatory Respondent Selection* (Feb. 19, 2021), P.R. 129, C.R. 37.

On March 5, 2021, Commerce issued a letter to SGRE denying its request to be selected as a replacement mandatory respondent.   Letter from Robert Galantucci, Program Manager, Off. V, AD/CVD Operations, to Siemens Gamesa Renewable Energy, re: *Utility Scale Wind Towers from Spain: Request to Select Replacement Mandatory Respondent* (Mar. 5, 2021), P.R. 132 ("DOC Replacement Resp. Memo").   In denying the request, Commerce noted that SGRE's request was made late in the proceeding, leaving Commerce with insufficient time to investigate, and particularly that "SGRE did not make its request until several weeks had passed after Vestas withdrew from participation."   *Id.* at 1.   Commerce further noted that SGRE had not sought to participate as a voluntary respondent, in which case Commerce would have already had a questionnaire response from SGRE on the record.   *Id.*   It also referenced the agency's current heavy workload and resource constraints.   *Id.*

On March 29, 2021, Commerce issued its affirmative preliminary determination in the investigation, which was published in the Federal Register on April 2, 2021. *Utility Scale Wind Towers from Spain*, 86 Fed. Reg. 17,354 (Dep't Commerce Apr. 2, 2021) (prelim. affirm. deter. of sales at less than fair value), P.R. 137 ("Prelim. FR Notice") and accompanying Preliminary Decision Memorandum, P.R. 134 ("Prelim. Decision Memo"). Finding that mandatory respondent Vestas failed to cooperate with the investigation to the best of its ability, Commerce applied facts available with AFA and assigned Vestas the dumping margin from the petition and initiation notice, 73 percent. Prelim. FR Notice at 17,355. For all other exporters and producers not individually examined, Commerce used "any reasonable method" under section 735(c)(5)(B) of the statute to determine the dumping margin and applied an all others rate of 73 percent, the only dumping margin in the petition. *Id.*

After the preliminary determination, SGRE and its affiliated supplier, Windar Renovables, submitted a case brief to Commerce, arguing in part that the agency erred by not selecting SGRE as a replacement mandatory respondent. Letter from Crowell & Moring LLP to Sec'y Commerce, re: *Antidumping Duty Investigation of Utility Scale Wind Towers from Spain: SGRE's Case Brief* (May 3, 2021), P.R. 141, C.R. 40 at 2-8. The WTTC submitted a rebuttal brief, defending Commerce's decision not to select an additional mandatory respondent and noting that SGRE had ignored opportunities to fully participate in the investigation. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Rebuttal Brief* (May 10, 2021), P.R. 143, C.R. 41 at 6-11.

Commerce issued its final determination in the investigation on June 14, 2021. *See* I&D Memo. The agency made no changes from the preliminary determination with regard to its determination not to select SGRE as a replacement mandatory respondent. *See id.* at cmt. 1.

Commerce continued to apply a dumping margin of 73 percent to mandatory respondent Vestas and to all other companies, including SGRE.

## IV.   SUMMARY OF ARGUMENT

The Court should affirm Commerce's determination regarding the issues subject to SGRE's appeal.  In the underlying investigation, SGRE showed no intention to participate as a mandatory respondent until it became clear that Vestas would no longer cooperate, and thus that SGRE would be subject to a relatively high dumping margin.  SGRE filed no comments on which companies Commerce should select as mandatory respondents, even with two opportunities to do so.  SGRE made no complaint when Vestas was selected as the single mandatory respondent. SGRE never requested that it be investigated as a voluntary respondent, nor did it file any information that would have been required for the agency to do so.  Instead, SGRE appeared satisfied to sit this investigation out.  Indeed, even when Vestas notified Commerce that it would no longer participate, SGRE waited nearly three weeks to request that it be selected as a replacement mandatory respondent.  At that point, there were only 40 days remaining until the scheduled date of the preliminary determination.  With such little time available to effectively restart an investigation, and facing significant resource constraints, Commerce reasonably and consistent with the statute decided that it could not select SGRE as a new mandatory respondent.

Commerce's actions also were not arbitrary or capricious.  While SGRE focuses on a handful of cases (including, mostly, administrative reviews) involving significantly different timelines, it is not uncommon for Commerce to decide not to replace a mandatory respondent late in an investigation, and Commerce fully explained its decision here.  Similarly, Commerce lawfully and reasonably determined to adhere to its statutory deadlines for preliminary and final

determinations.  Commerce has broad discretion to enforce time limits in its investigations, and it properly exercised that discretion here in maintaining its determination deadlines.

Commerce's assignment of the 73 percent dumping margin from the petition to "all other" Spanish wind tower producers/exporters was also lawful and supported by substantial evidence. SGRE failed to exhaust administrative remedies on its arguments to the contrary by not even raising those arguments in its administrative case brief, and thus it should be barred from appealing this issue.  Regardless, Commerce lawfully selected the 73 percent rate using the "any reasonable method" option under section 735(c)(5)(B) of the Act, and this selection was reasonable and representative of the dumping behavior of Spanish wind tower producers and exporters.

## V.    **ARGUMENT**

For the reasons discussed below, this Court should affirm the final determination of Commerce's AD investigation into wind towers from Spain.

### A.    **Commerce's Decision Not to Select SGRE as a Replacement Mandatory Respondent Was Lawful**

Commerce acted lawfully in determining not to select SGRE as a replacement mandatory respondent after mandatory respondent Vestas decided not to participate in the investigation. Commerce's respondent selection process was done in accordance with section 777A of the Act, Commerce investigated the selected respondent to the fullest extent possible, and no provision of the law required the agency to later accept SGRE as a mandatory respondent.

SGRE argues that Commerce must conduct an individual examination of at least one subject producer or exporter prior to the imposition of an AD order.  SGRE Br. at 13-18.  SGRE first claims that Commerce erred in deciding to limit its individual investigation to only one mandatory respondent.  *Id.*  SGRE is wrong, as the statute clearly gives Commerce the authority to limit the number of exporters or producers it will select for individual examination, and Commerce properly

exercised that authority here.   While 19 U.S.C. § 1677f-1(c)(1) states the "general rule" that

Commerce will determine individual dumping margins for each known subject exporter and producer,

19 U.S.C. § 1677f-1(c)(2) provides an important and frequently utilized exception to this rule.   It

states:

> If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to —
>
> (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
>
> (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

19 U.S.C. § 1677f-1(c)(2).   *See also* 19 C.F.R. § 351.204(c)(2).

While SGRE states that it does not contest this finding, SGRE argues that Commerce erred in

finding that the initial criteria for limiting individual examination – that there were a large number of

subject exporters or producers – was met.[2]   SGRE Br. at 15-16.   SGRE states that "the record

demonstrates, effectively, only two participating exporters," Vestas and SGRE.   *Id.* at 15.   This

statement is wholly unsupported by the record.   CBP data indicated that there were <u>16</u> companies that

made entries of subject merchandise during the POI.   Resp. Selection Memo at 3.   And Commerce

sent Q&V questionnaires to 19 companies and received 14 Q&V questionnaire responses in return.

*See* Prelim. Decision Memo at 2.[3]   Thus, at the time of respondent selection, it is <u>not</u> the case that

there were, "effectively," only two participating subject producers or exporters.   There were at least

---

[2]      Despite its arguments on this issue, SGRE states that it "does not contest" this finding by Commerce.

[3]      Commerce initially received 13 Q&V responses, but later received, and accepted, 1 additional response.   *See* I&D Memo at 2.

13, and it was reasonable for Commerce to determine that 19 total producers/exporters, or 13 participating producers/exporters, constituted a "large number." Indeed, the Court has upheld Commerce's determinations that fewer numbers of producers/exporters can constitute a "large number" for purposes of 19 U.S.C. § 1677f-1(c)(2). *See Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1327 (Ct. Int'l Trade 2015) (upholding Commerce's finding that 12 producers was a "large number").

SGRE next contends that, even if Commerce were permitted to limit the number of mandatory respondents selected, when the one mandatory respondent dropped out of the investigation, the agency was required by law to select a replacement, because the statute unambiguously requires individual examination of at least one producer/exporter before imposing an AD order. SGRE Br. at 15-18. In purported support of this contention, SGRE cites *Schaeffler Italia S.r.l. v. United States*, 35 CIT 725, 781 F. Supp. 2d 1358 (2011). *Id.* at 16. Yet this case is not relevant to SGRE's proposition. *Schaeffler* discussed Commerce's assessment of what constitutes a "large number" of producers/exporters, allowing the agency to decide not to individually investigate every foreign producer/exporter and rather to limit the number of mandatory respondents selected. Its decision did not turn on how many mandatory respondents Commerce was ultimately required to investigate once that exception was invoked. The Court has explained this limitation on *Schaeffler*'s applicability in the past:

> Contrary to Mid Continent's assertions, *Zhejiang*, *Carpenter*, and *Schaeffler* have nothing to do with the particular respondent selection issue that Mid Continent seeks to press in this case {(i.e., the number of respondents that Commerce was required to individually review)}. Specifically, *Zhejiang*, *Carpenter*, and *Schaeffler* each concerned whether the number of exporters and producers in the case was sufficiently "large" to render it "not practicable" for Commerce to conduct individual reviews of all respondents. In other words, each of those three decisions addresses whether, under the specific facts of the particular case, it was permissible for Commerce to invoke the statutory exception to the general rule requiring the agency to conduct individual reviews of all exporters and producers — an issue that is very different than

> the particular issue that Mid Continent seeks to raise here. *See* 19 U.S.C. § 1677f-1(c)(2). . . . As such, the section of the statute that is the subject of analysis in *Zhejiang*, *Carpenter*, and *Schaeffler* — focusing on the term "large number" — has no relevance to this case.

*Mid Continent Nail Corp. v. United States*, 37 CIT 1313, 1333-34, 949 F. Supp. 2d 1247, 1265-67 (2013). SGRE's arguments with regard to the *YC Rubber* case pending at the Court of Appeals for the Federal Circuit ("CAFC"), its citations to oral argument in that case and inferences as to what the CAFC may or may not decide, should also be disregarded, as the CAFC has issued no opinion in that case.

With regard to how many respondents must be selected for individual examination once the exception to reviewing every company is invoked, the statute is silent. *See* 19 U.S.C. § 1677f-1(c)(2). Thus, under *Chevron*, Commerce has the discretion to determine what constitutes a "reasonable number" of companies under the facts of each investigation. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984). Here, Commerce appropriately selected one respondent, Vestas, for individual investigation. In so doing, Commerce acted consistently with the statute – specifically, 19 U.S.C. § 1677f–1(c) – by limiting its examination to that one mandatory respondent.

Commerce then conducted an investigation of that respondent, to the fullest extent that it was capable of doing. The agency timely issued its AD questionnaire to Vestas and was prepared to fully investigate the entity. *See* Letter from Robert Galantucci, Program Dir., AD/CVD Operations, Off. V, to Vestas Eolica S.A. (Dec. 23, 2020), P.R. 104. In addition to its prior issuance and consideration of the Q&V responses and collection and assessment of comments and rebuttal comments on the appropriate product matching characteristics for the investigation, Commerce responded to numerous extension requests by Vestas, it issued Vestas a home market viability questionnaire, and it analyzed and responded to a request by Vestas to reexamine the sufficiency of industry support for the investigation. *See, e.g.*, Memorandum from Benito Ballesteros, Int'l Trade Compliance Analyst,

Enf't & Compliance, Off. V, to The File, re: *Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Extension of Section A Questionnaire Response* (Jan. 22, 2021), P.R. 119; Letter from Alston & Bird LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Request for Reexamination of Industry Support* (Jan. 25, 2021), P.R. 122, C.R. 33.

Thus, contrary to SGRE's implications that the agency somehow shirked its statutory obligations, Commerce did conduct an investigation, consistent with the statute. The sole mandatory respondent ultimately decided to cut that investigation short, a decision over which the agency had no control. As a result, Commerce did determine a dumping margin for Vestas within the meaning of the statute but was forced to do so on the basis of facts available with AFA. *See* I&D Memo at cmt. 1. SGRE cites no authority that required Commerce, at the point of Vestas's decision not to cooperate, to select a new mandatory respondent and begin a largely new investigation. Indeed, there was no such requirement, and Commerce's determination was consistent with law.

**B.** **Commerce Reasonably Determined that It Did Not Have the Time or Resources to Examine SGRE at the Late Stage in the Investigation When the Request Was Made**

SGRE's next challenge to Commerce's determination goes to the reasonableness of the agency's decision not to select SGRE as a replacement mandatory respondent. However, in addition to being otherwise consistent with law, Commerce's decision was reasonable and should be upheld on that basis as well.

Specifically, Commerce's determination that it was impracticable to investigate SGRE as a replacement mandatory respondent, at the time such status was requested, was wholly reasonable. Notably, SGRE did not ask to be selected as a mandatory respondent prior to such selection being made. In fact, SGRE made no comment about Commerce's selection of Vestas as the single

mandatory respondent, even when given two opportunities to submit comments on respondent selection. *See id.* at 7.

Vestas notified the agency and all interested parties that it would no longer participate in the investigation – a decision over which Commerce has no control – well over one month after respondent selection.   SGRE then waited nearly <u>three weeks</u> after Vestas's notice to request mandatory respondent treatment.  *See* Vestas Notification; SGRE Selection Request.  At that point, with only 40 days remaining until the scheduled date of the preliminary determination, Commerce acted not only consistently with the law, but also reasonably, in declining to accept SGRE as a replacement mandatory respondent.   Rushing a newly selected respondent to a preliminary determination in less than six weeks – issuing questionnaires, receiving questionnaire responses, analyzing those responses, issuing requests for supplemental information, etc. – was simply impracticable.  Indeed, as explained in the final determination, "{g}iven Commerce's practice of setting the questionnaire's initial deadline 37 days after its issuance," if Commerce had issued SGRE a questionnaire immediately after its request, "and presuming that Commerce provided no extensions, the questionnaire would have been due on March 29, 2021 – the <u>same date</u> as the unextended statutory deadline for the Preliminary Determination."  I&D Memo at 6 (emphasis added).  The investigating agency is in the best position to assess what is reasonable and possible to investigate within a given time period, and Commerce reasonably found that selecting SGRE as a mandatory respondent "would have required Commerce to conduct a full investigation of a new respondent without adequate time to complete the investigation within the statutory deadlines."  *Id.  See, e.g.*, *Union Camp Corp. v. United States*, 23 CIT 264, 282, 53 F. Supp. 2d 1310, 1327 (1999) (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 544-45 (1978) ("It is a well-established principle of administrative law that an agency is afforded broad discretion to fashion its own administrative

procedure, including the authority to establish and enforce time limits concerning the submission of written information and data")).

Further undermining its claims regarding reasonableness, SGRE failed to request voluntary respondent status.  At least if SGRE had previously requested voluntary respondent status under 19 U.S.C. § 1677m(a)(1), its questionnaire responses would have been on the record in a timely manner.  But, as Commerce explained, "SGRE did not seek to participate as a voluntary respondent; had it done so, it would have provided Commerce with a questionnaire response for SGRE at a far earlier date."  DOC Replacement Resp. Memo at 1.  *See also* I&D Memo at 5.  In fact, as the Court has explained, the statute at 19 U.S.C. § 1677m(a)(1) "provides a potential administrative remedy to a respondent who was not chosen as a mandatory respondent but desires a rate based on its own sales, and the court will not order Commerce to assign a respondent an individual margin unless it has attempted to avail itself of this administrative remedy."  *DuPont Te jin Films China Ltd. v. United States*, 38 CIT 1282, 1302, 7 F. Supp. 3d 1338, 1357 (2014).

In an attempt to defend its decision not to request voluntary respondent status, SGRE states unconvincingly that to do so would have flown in the face of Commerce's own determination that it had the resources to examine only Vestas.  *See* SGRE Br. at 20.  This argument disregards the entire basis of the voluntary respondent provision of the statute.  The voluntary respondent portion of the statute specifically applies "in any investigation . . . in which {Commerce} has . . . limited the number of exporters or producers examined . . . ."  19 U.S.C. § 1677m(a)(1).  Thus, by definition, the statute envisions that producers/exporters will request voluntary respondent status when Commerce has already made a determination that it can examine only the limited number of mandatory respondents that it has already selected.  Parties are, at that point, able to request voluntary respondent status if they still wish to be individually investigated.  Further, as the Court has explained: "The bar for a

futility exception {to the exhaustion requirement} is high, requiring more than unlikeliness . . . . The court consistently has rejected claims that the failure to request voluntary respondent status should be excused because such an act would have been futile." *Dupont Teijin*, 38 CIT at 1302, 7 F. Supp. 3d at 1357-58 (internal quotation and citations omitted).   Thus, if SGRE wished to be selected as a mandatory respondent, even as a replacement, it was required to have requested voluntary respondent status.  It failed to do so.

Finally, in addition to not having sufficient time (which on its own would have justified Commerce's decision not to select SGRE as a replacement respondent), Commerce reasonably concluded that it also did not have sufficient resources to select SGRE.   SGRE's argument that Commerce should have simply redirected the resources had available to investigate Vestas toward an investigation of SGRE is misguided.  *See* SGRE Br. at 18.  Commerce squarely addressed this in the final determination:

> SGRE's suggestion that selecting SGRE would have been an equivalent use of resources to examining Vestas is clearly incorrect; this assertion entirely ignores the fact that nearly two months of time was lost due to SGRE's failure to file a response as a voluntary respondent on the date when voluntary responses were due.

I&D Memo at 6.

SGRE's notion that only "13 business days had passed between the time Vestas withdrew and SGRE submitted its request to Commerce" misses the point.  SGRE Br. at 20.  Commerce issued its questionnaire to Vestas on December 23, 2020.  SGRE's contention that it would have taken the same amount of resources for Commerce to investigate SGRE – with the earliest date the questionnaire could have possibly been issued being February 18, 2022 (*i.e.*, nearly two months after the Vestas questionnaire was issued) – is baseless.  The delay resulting from SGRE's failure to participate as a voluntary respondent was significantly greater than 13 business days.  The Court has upheld Commerce's reference to agency resource constraints in other contexts, *see, e.g., Mid*

*Continent Nail Corp.*, 37 CIT at 1345, 949 F. Supp. 2d at 1274-75, and its findings with regard to its resource constraints were reasonable here as well.

**C.      SGRE's "Public Policy" Arguments Are Irrelevant, Inappropriate and Incorrect**

SGRE next argues that "the Department's determination is contrary to public policy." SGRE Br. at 21.  Plaintiff's arguments in this regard are irrelevant, inappropriate, and incorrect.

SGRE claims that Vestas attributed its withdrawal from the investigation to "petitioner's longstanding pattern of vexatious administrative litigation" and other unsupported and baseless claims.  *Id.* at 22.  SGRE then continues, in its brief to the Court, to discuss President Biden's "high priority on clean energy and the environment."  *See id.* at 22-23.  It is unclear what SGRE wishes the Court to do with such information.  Does SGRE imply that the Court should consider the current Administration's policy priorities when determining whether the agency's determination in the underlying investigation was supported by substantial evidence and otherwise consistent with law?  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).  As this Court has stated when similarly irrelevant arguments were made in another case: "This argument invites the court to consider matters of public policy that are beyond the scope of the judicial review of this action."  *Si.fab Solar, Inc. v. United States*, 296 F. Supp. 3d 1295, 1319 (Ct. Int'l Trade 2018).

**D.      Commerce's Determination Was Not Arbitrary or Capricious**

SGRE argues that Commerce's determination not to replace Vestas with SGRE as a mandatory respondent was arbitrary and capricious.  SGRE Br. at 23-26.  Commerce's determination was neither arbitrary nor capricious, and SGRE's arguments should be rejected.

As purported evidence that Commerce offered insufficient reasons for treating similar situations differently, SGRE first cites the AD duty investigation of *Cast Iron Soil Pipe Fittings from China*, where Commerce selected an additional mandatory respondent after a previously

selected respondent stated that it would no longer participate.  *See id.* at 23-24.  SGRE fails to note that the timelines at issue were significantly different in that case.  There, the initially selected mandatory respondent notified Commerce of its intention not to participate further in the investigation <u>three days</u> after respondent selection.  Memorandum from Denisa Ursu, Int'l Trade Compliance Analyst, Off. VIII, AD/CVD Operations, through Irene Darzenta Tzafolias, Dir., Off. VIII, AD/CVD Operations, to James Maeder, Senior Dir. performing the duties of Deputy Assistant Sec'y for AD/CVD Operations, re: *Antidumping Duty Investigation of Cast Iron Soil Pipe Fittings from the People's Republic of China: Selection of Additional Mandatory Respondent* (Sept. 19, 2017) (PUBLIC VERSION) at 2 (ACCESS Barcode 3620952) ("*Cast Iron Pipe* Resp. Selection Memo").  When the respondent was selected, there were still **<u>92 days</u>** remaining until the scheduled date of the preliminary determination.  *Id.*; *Cast Iron Soil Pipe Fittings from the People's Republic of China*, 82 Fed. Reg. 37,053 (Dep't Commerce Aug. 8, 2017) (initiation of less-than-fair value investigation).   Commerce specifically based its decision to select a replacement respondent in that case on the fact that "this proceeding is in its early stages" and that "there is sufficient time to complete the necessary analyses of an additional respondent's responses and still comply with the statutory deadlines."  *Cast Iron Pipe* Resp. Selection Memo at 2-3.  In the underlying case, Vestas did not notify Commerce of its decision not to participate until <u>36 days</u> after respondent selection and, even if Commerce had selected SGRE on the day immediately following its request, only **<u>39 days</u>** would have been remaining until the date of the preliminary determination.  Resp. Selection Memo; Vestas Notification; SGRE Request.  These are not analogous circumstances.

SGRE further cites a number of cases that purportedly support its argument.  SGRE Br. at 25 n.48.  Yet SGRE fails to note that each of the cases involved an administrative review, not an

original investigation, and thus that Commerce was subject to much different timelines (*i.e.*, preliminary results due 245 days after the last day of the anniversary month of the order for which the review was requested, rather than a preliminary determination due 140 days after initiation of the investigation). 19 C.F.R. § 351.213(h)(1); *id.* § 351.205(b)(1). In fact, none of the cases support SGRE's claim of arbitrariness:

- SGRE cites the 2018-2019 administrative review of the AD duty order on *Certain Frozen Warmwater Shrimp from Vietnam*. *See* SGRE Br. at 25. In that case, Commerce selected replacement mandatory respondents when the initial two mandatory respondents declined to respond to the agency's questionnaire. Memorandum from Irene Gorelik, Senior Int'l Trade Analyst, Off. VIII, AD/CVD Operations, to Irene Darzenta Tzafolias, Dir., Off. VIII, AD/CVD Operations, re: *Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Selection of Respondents for Individual Examination* (July 29, 2019) at 3 (ACCESS Barcode 3869872) ("Shrimp 2nd Resp. Selection Memo"). In *Certain Frozen Warmwater Shrimp*, when the replacement respondents were selected, Commerce had **156 days** remaining until the scheduled date of the preliminary determination. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 18,777 (Dep't Commerce May 2, 2019); Shrimp 2nd Resp. Selection Memo. Again, in the underlying case, even if Commerce had selected SGRE on the day immediately following its request, only **39 days** would have been remaining until the date of the preliminary determination. Resp. Selection Memo; Vestas Notification; SGRE Request.

- SGRE next cites *Tapered Roller Bearings and Parts Thereof from China* – again, an administrative review. SGRE Br. at 25 n.48. In that review, Commerce selected a replacement mandatory respondent when an initially selected respondent did not participate, because it found that there was "sufficient time remaining" to examine another respondent. Memorandum from Alex Wood, Int'l Trade Compliance Analyst, Off. II, Off. of AD/CVD Operations, through Shawn Thompson, Program Manager, Off. II, Off. of AD/CVD Operations, to Melissa G. Skinner, Dir., Off. II, Off. of AD/CVD Operations, re: *2017-2018 Administrative Review of the Antidumping Duty Order on Tapered Roller Bearings and Parts Thereof from the People's Republic of China: Selection of Additional Respondent for Individual Review* (Nov. 19, 2018) at 2-3 (ACCESS Barcode 3775840). At the time the replacement respondent was selected, Commerce had **144 days** remaining until the date of the scheduled preliminary determination, *id.* – not 39.

- SGRE also cites an administrative review of the *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from China* AD duty order. SGRE Br. at 25 n.48. In that case, Commerce selected a replacement mandatory respondent when all of the review requests were withdrawn as to the initially selected respondent. Memorandum from Krisha Hill, Int'l Trade Compliance Analyst, Off. IV, AD/CVD Operations, Enf't & Compliance, to Robert Bolling, Acting Dir., Off. IV, AD/CVD Operations, Enf't &

Compliance, re: *2016-2017 Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Selection of Additional Mandatory Respondent* (Apr. 19, 2018) at 1 (ACCESS Barcode 3696673). In that review, Commerce had **190 days** remaining until the date of the scheduled preliminary determination when it selected the additional respondent. *See id.*

- Finally, SGRE cites a *Passenger Vehicle and Light Truck Tires from China* administrative review, in which Commerce selected two rounds of replacement mandatory respondents. Memorandum from Toni Page, Int'l Trade Compliance Analyst, Enf't & Compliance, Off. VII, through Thomas Gilgunn, Program Manager, AD/CVD Operations, Off. VII, to Edward Yang, Dir., AD/CVD Operations, Off. VII, re: *Administrative Review of the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires from the People's Republic of China: Selection of Additional Respondent* (May 31, 2017) (PUBLIC VERSION) at 1-2 (ACCESS Barcode 3576950). At the time that the last replacement mandatory respondent was selected, Commerce had **47 days** remaining until the then-scheduled date of the preliminary determination. *Id.*; Memorandum from Toni Page, Int'l Trade Compliance Analyst, Off. VII, AD/CVD Operations, through Edward Yang, Dir., Off. VII, AD/CVD Operations, to Gary Taverman, Assoc. Deputy Assistant Sec'y for AD/CVD Operations, re: *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Extension of Deadline for Preliminary Results of Antidumping Duty Administrative Review – 2015-2016* (May 2, 2017) (ACCESS Barcode 3567634). While this is a somewhat shorter timeframe than in the other administrative reviews cited by SGRE, it is still longer than the 39 days in the underlying case. Moreover, Commerce would have known that, in an administrative review, it has the opportunity to extend its preliminary results by 120 days (or another 45 days further from the extension it had already issued). In an investigation, even if Commerce were to fully extend the preliminary determination, it can only extend by a total of 50 days. *See* 19 C.F.R. § 351.213(h)(2); *id.* § 351.205(b)(2).

Thus, of the six cases cited by SGRE, in only <u>one</u> – a *Multilayered Wood Flooring from China* administrative review – did Commerce select an additional mandatory respondent with a time period until the preliminary results similar to the time period until the preliminary determination in the underlying case. *See* SGRE Br. at 24. And, again, the *Multilayered Wood Flooring* case was also an administrative review, not an original investigation, meaning that Commerce was aware that it had 120 days of extension available to it before having to issue its preliminary results, not the mere 50 days as in an original investigation. *See* 19 C.F.R. § 351.213(h)(2); *id.* § 351.205(b)(2).

SGRE also fails to recognize that there are many cases in which a mandatory respondent withdraws from participation or becomes no longer subject to an administrative review and yet is not replaced.  *See, e.g.*, Issues and Decision Memorandum accompanying *Glycine from Japan*, 86 Fed. Reg. 53,946 (Dep't Commerce Sept. 29, 2021) (final results of antidumping duty admin. rev.; 2018-2020) at 2; Preliminary Decision Memorandum accompanying *Certain Lined Paper Products from India*, 86 Fed. Reg. 54,426 (Dep't Commerce Oct. 1, 2021) (prelim. results of antidumping duty admin. rev.; recission of admin. rev., in part; & prelim. deter. of no shipments; 2019-2020) at 3; Preliminary Decision Memorandum accompanying *Glycine From Japan*, 86 Fed. Reg. 36,105 (Dep't Commerce July 8, 2021) (prelim. results of antidumping admin. rev.; 2018-2020) at 2; Preliminary Decision Memorandum accompanying *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China*, 85 Fed. Reg. 36,831 (Dep't Commerce June 18, 2020) (prelim. results of antidumping duty admin. rev.; prelim. deter. of no shipments; and rescission, in part; 2018-2019) at 1-2.

Thus, SGRE has failed to demonstrate that Commerce departed from an established practice without sufficient explanation.  First, as shown by the cases above, Commerce does not have an established practice of selecting an additional mandatory respondent in cases with timelines similar to the underlying case.  Second, SGRE is also wrong that Commerce failed to articulate a sufficient explanation for its decision in this case.  Commerce explained at length in its preliminary and final determinations why it was impracticable to select a replacement mandatory respondent in the case.  Prelim. Decision Memo at 3-4; I&D Memo at 2-3.  In particular, while it may have had the resources to examine one mandatory respondent when the investigation was initiated, it reasonably found that it did not have the resources to do so starting anew months into the investigation, with less than two months remaining before the preliminary determination.

Commerce's determination was well-reasoned, consistent with its prior practice, and fully explained, and it was not arbitrary.

### E.    Commerce's Determination Not to Extend the Statutory Timelines for Investigations Was Not Arbitrary or Capricious

SGRE also claims that Commerce's decision to adhere to the unextended deadlines for the preliminary and final determinations in the underlying case was arbitrary and capricious.  SGRE Br. at 26-28.  This claim is baseless.  Commerce acted reasonably and well within its statutory and regulatory authority in determining to adhere to its deadlines.

Section 733(c) of the Act sets forth two instances where Commerce may extend the preliminary determination in an "extraordinarily complicated" investigation.  19 U.S.C. § 1673b(c).  *See also* 19 C.F.R. § 351.205(b)(2).  First, Commerce may extend the preliminary determination when the Petitioner makes a timely request for an extension.  19 U.S.C. § 1673b(c)(1)(A).  Second, Commerce may extend the preliminary determination where it "concludes that the parties concerned are cooperating and determines that (i) the case is extraordinarily complicated by reason of (I) the number and complexity of the transactions to be investigated or adjustments to be considered, (II) the novelty of the issues presented, or (III) the number of firms whose activities must be investigated, and (ii) additional time is necessary to make the preliminary determination."  *Id.* § 1673b(c)(1)(B).

Even under these two scenarios, Commerce is not required to extend the preliminary determination.  It "may" do so.  *See id.* § 1673b(c)(1).  Indeed, in upholding an agency determination not to postpone the preliminary determination deadline in another AD duty investigation, the CIT has confirmed that "Commerce is not required to extend the preliminary determination's deadline beyond the normal 140 day limitation."  *China Steel Corp. v. United States*, 27 CIT 715, 749, 264 F. Supp. 2d 1339, 1371 (2003).

Neither of the two scenarios outlined in the statute occurred in the underlying case, and Commerce thus reasonably and lawfully adhered to its unextended deadlines for the preliminary and final determinations.  SGRE's citation to Commerce's tolling of deadlines in AD/CVD cases due to the extremely unique circumstances of the COVID-19 pandemic is completely inapposite. *See* SGRE Br. at 27.  The pandemic-induced tolling of deadlines in no way establishes that Commerce is required to otherwise extend deadlines in individual AD/CVD cases.  If there were any such requirement, the statute would not have made so carefully clear that Commerce has the discretion to extend deadlines in certain circumstances, but it is <u>not</u> required to do so.

As is well-established, "Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits." *Yantai Timken Co. v. United States*, 31 CIT 1741, 1754-55, 521 F. Supp. 2d 1356, 1370-71 (2007), *aff'd*, 300 F. App'x 934 (Fed. Cir. 2008).  This includes the discretion to adhere to its own deadlines.  *See Reiner Brach GmbH & Co. v. United States*, 26 CIT 549, 559, 206 F. Supp. 2d 1323, 1334 (2002).  As such, the Court should reject SGRE's argument that Commerce was required to extend its own deadlines.

### F.     Commerce's Assignment of the All Others Dumping Margin Was Reasonable and Consistent with Law

Finally, SGRE argues that Commerce applied facts available with AFA in determining the dumping margin for "all other" parties and thus unlawfully calculated that margin.  *See* SGRE Br. at 28-31.  While SGRE's argument is incorrect, it should also be barred due to a failure to exhaust administrative remedies.

By the time that administrative case briefs were submitted, Commerce had already made its preliminary determination to apply the 73 percent dumping margin to Vestas, to companies that did not respond to the Q&V questionnaires, and to all other exporters and producers.  *See* Prelim.

FR Notice at 17,355.  If SGRE wanted to challenge the consistency of that all others rate with the statute based on the facts of this investigation, it was required to raise that argument in its case brief.  Indeed, Commerce's regulations require that parties present all issues and arguments in the party's case brief.  19 C.F.R. § 351.309(c)(2).  Yet SGRE did not make this argument in its brief.  *See generally* SGRE Case Br.

While SGRE made a passing reference to its claim that Commerce had inequitably calculated a rate for all other producers/exporters based on AFA, *see id.* at 7, it never argued that the agency's calculation of the all others rate was contrary to 19 U.S.C. § 1673d, as it now argues at length in its brief to the Court.  *See Gerber Food (Yunnan) Co. v. United States*, 33 CIT 186, 192-93, 601 F. Supp. 2d 1370, 1376-78 (2009).  Indeed, it never even mentioned this section of the statute in its administrative case brief.  *See generally* SGRE Case Br.  SGRE thus failed to exhaust its administrative remedies on this issue, barring its appeal here.  *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("{A}s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*") (internal quotation omitted); *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010).  A "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the {agency} of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *See Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946).  None of the exceptions to the exhaustion doctrine apply here.  In particular, SGRE's claim does not raise a pure question of law requiring no further agency involvement, particularly given the unique factual circumstances under which Commerce's selection of the all others rate was made, including the availability of dumping information on the record.  *See Gerber Food (Yunnan)*

*Co.*, 33 CIT at 195-96.  The Court should therefore reject SGRE's claim on the basis of a failure to exhaust administrative remedies.

In addition, SGRE's argument is incorrect, and Commerce's calculation of the all others rate was reasonable and consistent with the statute.  SGRE mistakenly states that Commerce decided in the final determination "to assign a rate to all parties based solely on AFA."  SGRE Br. at 29.  In fact, Commerce applied AFA only to Vestas Eolica (for its decision not to cooperate with the investigation) and to five other companies that failed to respond to the agency's Q&V questionnaire.  *See* Final Determination at 33,656-57.  It applied the 73 percent rate from the petition – "the only dumping margin information on the record" – as the AFA rate.  *Id.* at 33,657.

Commerce did <u>not</u> apply AFA to all other producers and exporters.  Rather, "Commerce based the estimated weighted-average dumping margin for all other producers and exporters on the only dumping margin alleged in the Petition, pursuant to section 735(c)(5)(B) of the Act."  *Id. See also* Prelim. Decision Memo at 3-4.  In other words, Commerce used "any reasonable method" to determine the all-others rate.  *See* 19 U.S.C. § 1673d(c)(5).  Specifically, the statute explains that all-others rates should generally be calculated based on the margin(s) calculated for individually examined companies.  *See id.* § 1673d(c)(5)(A).  However, if the individually calculated margins are zero, *de minimis*, and/or calculated entirely on the basis of AFA (as in this case), Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated."[4] *Id.* § 1673d(c)(5)(B).

---

[4]      The statute expressly provides that Commerce may factor an AFA rate into its calculation of the all-others rate, *Bosun Tools Co. v. United States*, Nos. 2021-1929, 2021-1930, 2022 U.S. App. LEXIS 624, at *15 (Fed. Cir. Jan. 10, 2022), and thus the WTTC submits that it would have

Commerce adhered to the statute here, selecting the petition rate of 73 percent as "any reasonable method" to determine the all-others rate.  As noted above, the 73 percent rate was based on the only dumping margin information on the record.  Specifically, in the petition, Petitioner calculated an estimated dumping rate based on real data involving wind towers from Spain using a price-to-constructed-value comparison method.  *See* Prelim. Decision Memo at 4.  As the only information on the record, and as the information was specific to wind towers from Spain, Commerce's selection of the 73 percent rate as the all-others rate was the most representative rate available and was consistent with the statute's requirements.

## VI.    **CONCLUSION**

For the reasons detailed above, WTTC respectfully submits that this Court should affirm in full the final results of Commerce's AD investigation into Spanish wind towers.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Wind Tower Trade Coalition*

Dated: April 14, 2022

---

been lawful had Commerce based its all-others rate directly on the rate that it had calculated for Vestas.  But, while the rate was ultimately the same, that was not the basis for its determination.

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Wind Tower Trade Coalition's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 8,736 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Wind Tower Trade Coalition
(Representative Of)

April 14, 2022
(Date)