## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **Siemens Gamesa Renewable Energy,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Court No.  21-00449** |
| **v.** ) | |
| ) | |
| **United States,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **Wind Tower Trade Coalition,** ) | |
| ) | |
| **Defendant-Intervenor.** ) | |

### REPLY BRIEF OF PLAINTIFF SIEMENS GAMESA RENEWABLE ENERGY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel Cannistra
Michael Bowen
Simeon Yerokun

Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
(202) 624-2500

Counsel for Siemens Gamesa Renewable Energy

May 12, 2022

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

I.    COMMERCE'S REFUSAL TO CONDUCT AN INDIVIDUAL
      EXAMINATION OF SGRE WAS NOT IN ACCORDANCE WITH LAW ..................1

      A.    Commerce Failed to Meet Its Minimum Statutory Duty......................................2

      B.    SGRE Fully Exhausted its Administrative Remedies with Respect to
            Respondent Selection ..........................................................................................8

II.   COMMERCE DID NOT REASONABLY EXERCISE ITS DISCRETION
      WHEN IT FAILED TO INDIVIDUALLY EXAMINE SGRE ....................................15

III.  THE GOVERNMENT'S READING OF THE STATUTE IS ILLOGICAL AND
      CONTRARY TO PRINCIPLES OF STATUTORY INTERPRETATION ...................18

IV.   SGRE EXHAUSTED ALL ADMINISTRATIVE REMEDIES WITH RESPECT
      TO THE ALL-OTHERS RATE ................................................................................20

V.    CONCLUSION .......................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Albemarle Corp. v. United States,*
   821 F.3d 1345 (CAFC 2016) ...................................................................... 9, 21

*Amanda Foods (Vietnam) Ltd. v. United States,*
   807 F. Supp. 2d 1332 (CIT 2011)................................................................ 2, 7

*Asahi Seiko Co. v. United States,*
   751 F. Supp. 2d 1335 (CIT 2010)............................................................. 10, 15

*Bailey v. United States,*
   516 U.S. 137 (1995) ............................................................................. 19

*Carpenter Tech. Corp. v. United States,*
   662 F. Supp. 2d 1337 (CIT 2009)......................................................... 2, 6, 7, 8

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984) .............................................................................. 1

*DuPont Teijin Films China Ltd. v. United States,*
   7 F. Supp. 3d 1338 (CIT 2014) ................................................................... 2

*Hibbs v. Winn,*
   542 U.S. 88 (2004) .............................................................................. 19

*Husteel Co. v. United States,*
   98 F. Supp. 3d 1315 (CIT 2015) .............................................................. 2, 13

*Mid Continent Nail Corp. v. United States,*
   949 F. Supp. 2d 1247 (CIT 2013).......................................................... 2, 7, 8

*Montclair v. Ramsdell,*
   107 U.S. 147 (1883) ............................................................................ 19

*Shenzhen Xinboda Industrial Co. v. United States,*
   180 F. Supp. 3d 1305 (CIT 2018)................................................................. 2

*Union Steel Mfg. Co. v. United States,*
   837 F. Supp. 2d 1307 (CIT 2012)............................................................ 2, 17

*YC Rubber Co. (N. Am.) LLC v. United States,*
   487 F. Supp. 3d 1367 (CIT 2020).......................................................2, 5, 6, 13

**Federal Statutes**

19 U.S.C. § 1677f–1(c) ...........................................................................2, 10, 14, 18

19 U.S.C. § 1677f–1(c) ...........................................................................................6

19 U.S.C. § 1677f-1(c)(1) ......................................................................................18

19 U.S.C. § 1677f-1(c)(2) ......................................................................................15

19 U.S.C. § 1677m(a) ..........................................................................................2, 9

**Regulations**

19 CFR 351.204(d)(2) ...........................................................................................14

84 Fed. Reg. 17,781 (Dep't of Commerce Apr. 26, 2019).......................................14

86 Fed. Reg. 10,536  (Dep't of Commerce Feb. 22, 2021).....................................14

**Other Authorities**

*Certain Aluminum Foil from the People's Republic of China: Deferral of
    Preliminary Determination of the Less-Than-Fair-Value Investigation*, 82 Fed.
    Reg. 47,481 (October 12, 2017) ......................................................................18

Department Memorandum, "Tolling of Deadlines for Antidumping and
    Countervailing Duty Administrative Reviews,".................................................7

SGRE's Letter, "Antidumping Duty Investigation of Utility Scale Wind Towers
    from Spain: SGRE's Case Brief," May 3, 2021 ...............................................4

SGRE's Letter, "Less-Than-Fair-Value Investigation of Utility Scale Wind Towers
    from Spain: Request for Mandatory Respondent Selection,".................................4

Memorandum, "Less-Than-Fair-Value Investigation of Utility Scale Wind Towers
    from Spain: Respondent Selection,".................................................................9

## INTRODUCTION

Plaintiff SGRE provides its reply to the response briefs of Defendant United States Department of Commerce ("Commerce") and Defendant-Intervenor Wind Tower Trade Coalition ("WTTC"). Defendants argue that: (1) Commerce's failure to individually examine SGRE was in accordance with law; (2) Commerce reasonably exercised its discretion not to individually examine SGRE; and, (3) that SGRE failed to exhaust administrative remedies with respect to its claims. None of these arguments survive an analysis of the record evidence or the supporting law – Plaintiff provides that analysis below.

## I.    COMMERCE'S REFUSAL TO CONDUCT AN INDIVIDUAL EXAMINATION OF SGRE WAS NOT IN ACCORDANCE WITH LAW

The Government claims that the statute is silent as to what happens when a single mandatory respondent withdraws from participation in an ongoing investigation. In the Government's view, in this silence, Commerce must act only reasonably in a case-by-case evaluation of its ability to select "additional mandatory respondents." *See* Government's Brief, Defendant's Response to Plaintiff's Motion for Judgment Upon the Agency Record, dated April 14, 2022 (Gov. Brief) at 8. Under those circumstances, SGRE agrees: Commerce necessarily has discretion to evaluate its time and resources when determining whether to investigate *additional* respondents, *i.e.*, respondents in addition to those having already been *investigated*. This discretion, however, is necessarily limited where Commerce has failed to meaningfully conduct *any* investigation. Under the circumstances presented in this case, Commerce must still "give effect to the unambiguous intent of Congress." *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-843, (1984). The unambiguous intent expressed by

Congress in 19 U.S.C. § 1677f–1(c) is for Commerce to conduct an individual examination prior to the imposition of an order. Here, the sole remaining known exporter involved in the investigation, SGRE, cooperated fully with Commerce's investigation and ample time remained at Commerce's disposal to give effect to the unambiguous intent of Congress.

A.    *COMMERCE FAILED TO MEET ITS MINIMUM STATUTORY DUTY*

An analysis of the statute and this Court's precedent demonstrates that Commerce failed to meet its minimum statutory duty by refusing to individually examine SGRE. To be sure, all of the cases cited by Defendants concern situations where Commerce met its minimum statutory duty to conduct at least one meaningful individual examination.[1] Each of these cases concerned Commerce's refusal to conduct *additional* individual examinations. In such situations, Commerce maintains a degree of discretion, in light of the time at its disposal and available resources. In these scenarios, Commerce's practice essentially boils down to a reasonable determination as to whether the additional examination would be "unduly burdensome," based in part on the statutory discretion afforded the Department in evaluating voluntary respondents under 19 U.S.C. § 1677m(a). Plaintiff submits that any ruling on this case not be construed as an infringement on Commerce's discretion in that context. However, this is the first investigation to Plaintiff's

---

[1] *See, e.g., Husteel Co. v. United States*, 98 F. Supp. 3d 1315 (CIT 2015) (Commerce conducted individual examinations of two exporters); *YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367 (CIT 2020) (Commerce conducted individual examinations of one exporter); *Mid Continent Nail Corp. v. United States*, 949 F. Supp. 2d 1247 (CIT 2013) (Commerce conducted individual examinations of two exporters); *DuPont Teijin Films China Ltd. v. United States*, 7 F. Supp. 3d 1338 (CIT 2014) (Commerce individually examined one exporter); *Union Steel Mfg. Co. v. United States*, 837 F. Supp. 2d 1307 (CIT 2012) (Commerce individually examined three exporters); *Amanda Foods (Vietnam) Ltd. v. United States*, 807 F. Supp. 2d 1332, 1348 (CIT 2011) (Commerce individually examined three exporters); *Shenzhen Xinboda Industrial Co. v. United States*, 180 F. Supp. 3d 1305 (CIT 2018) (Commerce individually examined two exporters); *Union Steel Mfg. Co. v. United States*, 837 F. Supp. 2d 1307, 1331 (CIT 2012) (Commerce individually examined three exporters). *See also Carpenter Tech. Corp. v. United States*, 662 F. Supp. 2d 1337 (CIT 2009) (Commerce conducted individual examinations of two exporters; on remand, all eight), *Schaeffler Italia S.r.l. v. United States*, 781 F. Supp. 2d 1358 (CIT 2011) (Commerce conducted individual examinations of one exporter). In each of these cases, Commerce conducted at least one meaningful individual examination and assigned dumping margins based on actual reported sales data.

knowledge where Commerce failed to conduct a single individual examination under these circumstances, *i.e.*, with only one participating known exporter and more than six months at its disposal.  Because of this, Defendants mischaracterize SGRE's reliance on this Court's precedent.

Specifically, in *Schaeffler*, this Court reviewed a case in which only two known exporters participated in an administrative review, including plaintiff, Schaeffler Italia.  Despite only two known participating exporters, Commerce refused to conduct an individual examination of Schaeffler Italia and assigned the company the margin determined for the only individually examined mandatory respondent instead.  Plaintiff challenged Commerce's refusal to conduct an examination of Schaeffler Italia, as one of only two known participating exporters involved in the review.  This Court held that Commerce's view of its discretion to refuse to do was an impermissible construction of the statute with respect to its authority to limit individual examinations when determining that the number of those involved is "large."  *See Schaeffler* 781 F. Supp. 2d at 1362-63.

However, the *Schaeffler* Court ultimately did not set aside the final results in light of several key considerations, none present in this case.  First, the *Schaeffler* plaintiff curiously did not expressly challenge Commerce's refusal to conduct an individual examination of Schaeffler Italia as a *mandatory* respondent.  Second, the Court held that Schaeffler Italia's withdrawal of its *voluntary* respondent request barred a remedy under that theory of standing, as well.[2]  Essentially, *Schaeffler* held that where only two known exporters are participating, Commerce should conduct individual examinations of both, and any other reading of the statute in this context is an

---

[2] Unlike in this case, in *Schaeffler*, Commerce expressly left the door open to additional voluntary respondents, specifically stating at the outset in its Respondent Selection Memorandum that "{i}f we receive a request to review a voluntary respondent we will examine this matter, taking into consideration available resources and the cooperation of the selected respondent." *See Schaeffler* 781 F. Supp. 2d at 1365.   No such language was included in Commerce's respondent selection memorandum in the present case.

impermissible one.  What ultimately fell the plaintiff in *Schaeffler* was that the plaintiff did not properly advance and preserve its claim for remedy.

The issues that tainted the *Schaeffler* plaintiff's complaint do not exist here.  First, SGRE properly challenged Commerce's refusal to conduct an individual examination of SGRE as a mandatory respondent from the outset.  Second, Commerce's refusal was especially egregious in this case in light of its failure to conduct an individual examination of *any* respondent.  In that sense, unlike in *Schaeffler*, SGRE did not necessarily request to be investigated as an *additional* respondent so much as request that Commerce meet its minimum statutory obligation of conducting at least one individual examination.  SGRE characterized its claim in this very manner in its initial mandatory respondent selection request:

> Therefore, as illustrated, if Commerce is willing to select *additional* mandatory respondents, in cases where other entities remained fully participating – still allowing for a proper calculation of a dumping margin representative of the non-selected entities – and further, if Commerce is willing to extend agency determinations due to prolonged respondent selection processes and other unique complexities as evident here, it stands to reason that Commerce should do the same in this investigation, where there are no other mandatory respondents and the prejudicial impact on SGRE stands to be that much greater.

*See* SGRE's Letter, "Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Request for Mandatory Respondent Selection," dated February 17, 2020 at 5 (Emphasis original).

This is an important distinction with *Schaeffler*: in this case, Commerce conducted no individual examinations.  Further, as demonstrated, SGRE alleged and preserved its complaint in this respect from the outset; Commerce simply ignored or refused to consider it.  *See also* SGRE's Letter, "Antidumping Duty Investigation of Utility Scale Wind Towers from Spain: SGRE's Case Brief," May 3, 2021 at 6-7 ("Here, there is only one remaining fully-participating exporter in this

investigation: SGRE.  By any metric, SGRE by itself cannot constitute a 'large number of exporters or producers' within the meaning of the statute, and thus, the Department is both without any factual or statutory basis on which to deny SGRE an individual examination.")

In contrast, where the *Schaeffler* plaintiff got it wrong the *YC Rubber* plaintiff got it right, only to have its challenge ultimately dismissed by the Court due to its failure to timely raise it. Specifically, because the *YC Rubber* plaintiff challenged specifically Commerce's refusal to select a replacement mandatory respondent, the Court did not necessarily find that plaintiffs failed to exhaust administrative remedies in this respect by not requesting voluntary respondent treatment. In fact, the Court did not even directly address the issue, merely suggesting that such a submission may play a role in the reasonableness determination of whether to decline *additional* examinations. On the other hand, the Court found damaging the fact that plaintiffs waited "at least five months" after the withdrawal of the second mandatory respondent, indeed, after the preliminary determination to raise its claim and request replacement, "until was too late as a practical matter, to ask Commerce to add another mandatory respondent."  *See YC Rubber* at n. 8.

Unlike the plaintiff in *Schaeffler*, SGRE's theory of injury and requested remedy was consistent, and preserved, from the start, as detailed in its mandatory respondent request and administrative case brief.  Moreover, unlike the plaintiff in *YC Rubber*, SGRE promptly requested replacement as soon as it became apparent that Commerce would not select SGRE on its own. Further, unlike in both cases, Commerce had more than six months at its disposal to investigate SGRE.  Lastly, unlike in both cases, Commerce failed to conduct a single meaningful individual examination in this investigation.  Ultimately, what plaintiffs did wrong in *Schaeffler* and *YC Rubber*, SGRE did right; what Commerce did right in *Schaeffler* and *YC Rubber*, the Department did wrong here.

5

Plaintiff is unaware of any investigation in which Commerce failed to conduct a meaningful examination of a single respondent, and only one administrative review has presented that scenario before this Court. *See Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States,* 637 F. Supp. 2d 1260 (CIT 2009). Specifically, in *Zhejiang,* where only one known exporter remained in a review, this Court held unlawful Commerce's invocation of the statutory exception in refusing to examine individually the sole remaining exporter. In so doing, this Court held that four exporters and producers did not permit the invocation of the statutory exception under 19 U.S.C. § 1677f–1(c), *i.e.,* that the number 'four' was "large" under any ordinary understanding of that word. Moreover, after the other respondents withdrew, only one exporter could have permissibly been construed as having then been "involved." According to the Court: "One is not a 'large' number." *See Zhejiang*, 637 F. Supp. 2d at 1264.

Further, this Court fully addressed the two primary reasons Commerce initially cited in its decision to not select Zhejiang as a respondent after the other respondents withdrew, *i.e.,* that "it {was} too late in the proceeding and Zhejiang had not filed responses to {Commerce's} questionnaire as a voluntary respondent before the appropriate deadline." Specifically, with respect to the first proffered reason, the Court held that:

> "The statute itself does not impose a time bar to review, and the court need not determine the limits of Commerce's discretion to decline any individual review after the selected mandatory respondents have withdrawn but others have requested a review."
> *Id.* at 1265.

The Court determined that ample time remained to review Zhejiang, even acting within the statutory deadlines. On the second point, the Court found that Commerce "did not leave open the possibility that it would consider Zhejiang as a voluntary respondent," ultimately holding that Commerce should not have penalized Zhejiang for failing to file its section C and D responses

after indicating to Zhejiang that it would be futile to do so.[3]

Similarly, in *Carpenter*, where eight known exporters were involved in a review, this Court held unlawful Commerce's invocation of the statutory exception to limit individual examinations based on an unreasonable determination that eight exporters could be deemed "large" within the meaning of the statute. *See Carpenter*, 662 F. Supp. 2d 1337 (CIT 2009). On remand, this Court ordered Commerce to examine individually all known participating exporters as mandatory respondents. The Court did not address the issue of voluntary respondent status with respect to these exporters.

Lastly, in *Mid Continent*, Commerce conducted *two* individual examinations, even selecting a "replacement-replacement" one month after the fact. *See Mid Continent*, 949 F. Supp. 2d 1247 (CIT 2013). Mid Continent challenged Commerce's determination that two was a reasonable number, *i.e.*, that Commerce should have examined even *more* respondents ("no fewer than five, and up to eight"). *Id*. at 1254. The Court held that Mid Continent failed to exhaust its administrative remedies with respect to this claim by not raising its arguments regarding respondent selection in its administrative case brief. Nevertheless, in addressing the merits, the Court went on to state that the Court did not necessarily set a "floor" in *Zhejiang*, *Carpenter*, and *Schaeffler* for the reasonable number of examinations after invocation of the statutory exception to limit examinations. However, the *Mid Continent* plaintiff never challenged Commerce's determination that the 159 known exporters in that case was a sufficiently "large" number to

---

[3] *Id*. Notably, Commerce had ample time *within* the statutorily-prescribed period to conduct an examination of SGRE in this investigation as well – it simply chose not to take advantage of that time. Moreover, even assuming *arguendo* that Commerce was up against the deadline, as this Court states in *Zhejiang*, "the statute itself does not impose a time bar to review." This is precisely the basis relied upon when Commerce tolled the deadlines for the preliminary and final determinations in every ongoing antidumping and countervailing duty administrative review due to the COVID-19 pandemic, first by 50 days and later by an additional 60 days. *See* Department Memorandum, "Tolling of Deadlines for Antidumping and Countervailing Duty Administrative Reviews," dated April 24, 2020 and July 21, 2020, respectively.

invoke the exception in the first place.  The Court found that the plaintiff failed to substantially address the precise issue before the Court, *i.e.*, whether Commerce's examination of only the two largest exporters was in fact reasonable on the record facts.

Here, SGRE submits that Commerce's invocation of the statutory exception to limit individual examinations in this investigation was unreasonable based on the record facts. Moreover, SGRE properly raised its arguments regarding respondent selection in its initial respondent selection request and properly preserved these arguments in its administrative case brief.  The issue regarding Commerce's invocation of the statutory exception, *i.e.*, whether one or two is in fact a 'large' enough number to invoke the statutory exception, is properly before this Court – Plaintiff submits that Commerce's use of that exception in this case was not reasonable upon either invocation.  Commerce's unreasonable invocation of the statutory exception and the unreasonable exercise of that exception are both issues before this Court.  The facts and the Court's precedent counsel in favor of SGRE on both.

   B.    *SGRE FULLY EXHAUSTED ITS ADMINISTRATIVE REMEDIES WITH RESPECT TO RESPONDENT SELECTION*

The Defendants' allegation that SGRE failed to exhaust its administrative remedies does not survive a review of the facts.  Regarding the voluntary respondent issue, Commerce made no mention of the fact that it would still be open to examining voluntary respondents throughout the investigation in its respondent selection memorandum, as in *Schaeffler*.  Commerce expressly stated in its respondent selection memorandum that it would not examine any more than one respondent.  *See* Memorandum, "Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Respondent Selection," dated December 23, 2020.  No mention of Commerce's ongoing evaluation of its ability to review voluntary respondents appears.  This clearly made any voluntary respondent request futile.  Had Commerce intended to continue to re-

evaluate its circumstances in this respect throughout the investigation, it would and should have made its indication known, as in *Schaeffler*. Moreover, with more than six months remaining at its disposal, when SGRE requested individual examination, Commerce again refused to revisit this decision.

To be sure, voluntary respondent status is auxiliary to Commerce's mandatory investigation; when Commerce selects mandatory respondents, the voluntary respondent option allows interested exporters the option to submit questionnaire responses, and provided Commerce ultimately has the time and resources to examine such responses, to calculate individual dumping margins for voluntary respondents after or in conjunction with, *i.e.*, in *addition* to, the mandatory respondents. *See* 19 U.S.C. § 1677m(a). This is supplemental to the statutorily-required investigation of respondents that are "representative" of all-other exporters. *See Albemarle Corp. v. United States*, 821 F.3d 1345 (CAFC 2016).

The Defendants argue that to preserve a challenge to Commerce's refusal to conduct a representative individual examination, an exporter must have first requested voluntary respondent treatment. However, when Commerce fails to conduct even a *single* individual examination, Commerce cannot be immune from challenge simply because an affected party did not request voluntary respondent treatment. This rings especially true in cases where the agency had already stated for the record – twice – that it would not consider any additional questionnaire responses, with no qualification. *Compare Schaeffler* and *Zhejiang* with *Asahi Seiko Co. v. United States*, 751 F. Supp. 2d 1335 (CIT 2010).

In *Asahi Seiko*, the Court addressed a situation where Commerce conducted three individual examinations, but refused to conduct a fourth involving the plaintiff. The Government argued that by failing to submit a voluntary response and withdrawing from the review, plaintiff's

complaint with respect to respondent selection should be barred. The court rejected that argument, holding that failing to file a voluntary response did not present a standing or jurisdictional impediment to plaintiff's claim. Nevertheless, the court held that the plaintiff failed to exhaust administrative remedies by not seeking voluntary respondent selection, because the plaintiff's chief complaint concerned not being selected as an *additional* respondent for individual examination, and further, that Commerce had expressly left the door open for voluntary respondents in its respondent selection memorandum, as in *Schaeffler*.[4] Again, here, SGRE chiefly contests Commerce's failure to select SGRE as a mandatory respondent, *i.e.*, as the sole remaining known exporter involved in the investigation. Commerce had a statutory obligation to conduct an individual examination of SGRE under 19 U.S.C. § 1677f–1(c), not 1677m.

Moreover, where "replacements" have occurred in the mandatory respondent context, the companies selected did not necessarily complete voluntary responses – the replacement company was simply the *next* largest exporter. This is particularly illustrative of the determinative factor in the mandatory respondent selection process, *i.e.*, the decision concerns not whether the company had submitted a voluntary response, but rather the representativeness of the company's data vis-a-vis all-other exporters. Any assertion to the contrary is simply disingenuous and contrary to the agency's practice in this respect. *See* WTTC Brief at 18-20. Plaintiff is unaware of a situation in an investigation where a voluntary respondent was *converted* into a mandatory respondent. This practice is demonstrated by a cursory review of every "additional" respondent selection memorandum issued by Commerce over the previous three years.

---

[4] The *Asahi Seiko* Respondent Selection Memorandum stated that "as long as the selected respondents cooperate in this review, we will not be able to calculate individual rates for other voluntary respondents due to limited resources" but, like *Schaeffler*, left the door open – adding that "{i}f we receive such a request to review a voluntary respondent in the near future we will examine this matter, taking into consideration available resources and the cooperation of selected respondents." *Id.* at 1343.

- Memorandum, *Countervailing Duty Administrative Review of Certain Collated Steel Staples from the People's Republic of China*: Selection of Additional Mandatory Respondent, December 13, 2021 (C-570-113) (ACCESS Barcode: 4190644) – "Consistent with our practice," Commerce selected next largest exporter as replacement mandatory respondent 32 days after initial mandatory respondent failed to file initial questionnaire response, with no consideration as to whether the replacement had filed a voluntary response.

- Memorandum, *Countervailing Duty Administrative Review of Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*: Respondent Selection: Selection of Replacement Mandatory Respondent, February 12, 2021 (C-570-091) (ACCESS Barcode: 4088250) – Commerce selected next largest exporter as replacement mandatory respondent 14 days after all other respondents withdrew and seven days after Petitioner's request, with no mention as to whether replacement respondent had submitted a voluntary response.

- Memorandum, *Antidumping Duty Investigation of Polyester Textured Yarn from the Republic of Indonesia*: Selection of Additional Respondent, December 28, 2020 (A-560-838) (ACCESS Barcode: 4068943) – Commerce selected next largest exporter as additional replacement mandatory respondent 17 days after second mandatory respondent withdrew, with no regard as to whether that exporter had submitted a voluntary response. Incredulously, the Government cited this as an example of a purported Commerce practice to *not* replace selected mandatory respondents. *See* Gov. Brief at 28.

- Memorandum, *Less-Than-Fair-Value Investigation of Mattresses from Malaysia:* Selection of Additional Mandatory Respondent, June 15, 2020 (A-557-818) (ACCESS Barcode: 3986223): Commerce selected next largest exporter as additional replacement mandatory respondent 11 days after initial second mandatory respondent failed to respond to initial questionnaire; no consideration provided as to whether that respondent had submitted a voluntary response. Commerce further elaborated on its practice when faced with these circumstances: "When faced with (1) the withdrawal of a mandatory respondent selected because it was one of the companies which accounted for the largest volume of subject merchandise from the exporting country; and (2) sufficient time to examine an additional mandatory respondent, Commerce has selected the company which accounts for the next largest volume of subject merchandise to replace the no-longer responding company. As an example, in the LTFV investigation of *Certain Phosphate Salts from China*, we selected the company accounting for the next largest volume of subject merchandise following the withdrawal of one of the mandatory respondents. Similarly, in the second administrative review of *Nails from China*, Commerce selected the company with the next largest volume of subject merchandise under review after a mandatory respondent withdrew." Again, nowhere in Commerce's explanation of its practice in this respect is

reference to whether or not the next largest exporter submitted a voluntary response.

- Memorandum, *Countervailing Duty Investigation of Mattresses from the People's Republic of China*: Selection of Additional Respondents for Individual Examination, June 4, 2020 (C-570-128) (ACCESS Barcode: 3982570): "Consistent with this practice," Commerce replaced with next largest exporters two respondents that withdrew from the investigation, 28 days after initial respondent selection and four days after the initial questionnaire response deadline, without reference to voluntary respondent status of either entity.

- Memorandum, *Countervailing Duty Investigation of Forged Steel Fluid End Blocks from the People's Republic of China*: Selection of Additional Mandatory Respondent, February 18, 2020 (C-570-116) (ACCESS Barcode: 39444244): "Consistent with this practice," Commerce replaced with next largest exporter one of the two mandatory respondents which withdrew seven days after notice of withdrawal; no reference was made as to this company's voluntary respondent status.

- Memorandum, *Countervailing Duty Investigation of Forged Steel Fittings from India*: Selection of Additional Respondent for Individual Examination, January 15, 2020 (C-533-892) (ACCESS Barcode: 3932001): Commerce replaced one of two withdrawn mandatory respondents with the next largest exporter; no reference to voluntary respondent status of this exporter.  In this case, "{c}onsistent with this practice," Commerce selected "the only reported POI producer/exporter of subject merchandise that remains available for selection as an additional mandatory respondent in this investigation."

In each of these cases, the additional respondent did not need to "request" selection; Commerce simply did so according to its own stated practice.  With respect to each of these selections, Commerce referred back to its previous statements in the initial respondent selection outlining its resources to individually examine X number of respondents, and relied on that as a basis to replace the withdrawn mandatory respondent.  Moreover, contrary to Defendants' assertions, Commerce views this practice as equally applicable to both investigations and administrative reviews – indeed, in investigations it is even more critical to ensure the imposition

of an order has sufficient evidentiary basis.[5]  Additionally, there is no reference to the voluntary respondent status of any of the selected respondents; according to Commerce's practice, that is irrelevant to this inquiry and practice.  In fact, a review of the entire universe of voluntary respondent memoranda issued (15 in total) over this same period reveals that Commerce refused to select a single one.  This borders on a recent practice of Commerce completely ignoring voluntary respondents.  Therefore, according to Commerce's own practice and its own construction of the statute when faced with these circumstances, Commerce acted unreasonably and unlawfully.

This Court has expressly distinguished the precise issues at play in voluntary respondent selections versus mandatory respondent selections.  *See Husteel,* 98 F. Supp. 3d 1315 (CIT 2015) (treating as separately the issue of mandatory versus voluntary respondent selection, and remanding for Commerce to reconsider whether mandatory respondent selection was sufficiently representative of all-other exporters).  Additionally, the one administrative decision expressly detailed by Defendants in support of Commerce's refusal to select a replacement mandatory respondent did so as well, and mirrored that of the situation in *YC Rubber*:

> Although the mandatory respondents notified Commerce on the record that they would not be participating in this investigation, neither Kyoei nor any other interested party requested that Commerce select another mandatory respondent… Further … had Kyoei requested voluntary treatment, we note that Commerce would have reviewed Kyoei's request pursuant to 19 CFR 351.204(d)(2).  Moreover, Kyoei did not raise the issue of selecting additional mandatory respondents until its case brief, which is too late in the proceeding to revisit the issue and provide initial questionnaires.

*See* Gov Brief at 28 citing *Twist Ties from the People's Republic of China*, 86 Fed. Reg. 10,536 (Dep't. of Commerce Feb. 22, 2021), accompanying Issues and Decision Memorandum at

---

[5] Defendant-Intervenors also attempt to distinguish all of the previously cited examples of Commerce's practice in this respect as having different time periods remaining for review.  This claim should be rejected; the full statutory time period remaining after Vestas' withdrawal, *i.e.*, January 28, 2021, until the ultimate statutory deadline for the final determination, i.e., August 13, 2021, was **_197_** days.  Even if Commerce refused to utilize fully the statutory extensions, more than enough time remained to conduct a fulsome review of SGRE. This fact is simply indisputable.

Comment 2.  *See also Passenger Vehicle and Light Truck Tires from China: Final Results of Administrative Review*, 84 Fed. Reg. 17,781 (Dep't. of Commerce Apr. 26, 2019), and accompanying IDM at Comment 3 (issue concerned whether Commerce should have examined a third mandatory respondent).  Importantly, Commerce noted that if Kyoei had requested voluntary respondent treatment, it might have proceeded with an individual examination under that regulation.  Again, however, SGRE primarily contests Commerce's refusal to examine SGRE as a mandatory respondent, and where Kyoei went wrong with respect to that claim is not promptly requesting "replacement" status.

Moreover, the Defendants' repeated attempts to diminish SGRE's participation in this respect should be disregarded.  Given the statute's narrow exception allowing for Commerce to limit its investigation to a "reasonable number of producers or exporters involved in the investigation," SGRE had no reason to believe it would not be selected.  19 U.S.C. § 1677f–1(c).  At no point prior to issuance of its respondent selection memorandum did Commerce indicate that it would select only one respondent for individual examination in this investigation.  Nevertheless, prior to that point, SGRE commented on respondent selection in the only way available: by submitting certified quantity and value (Q&V) data demonstrating it was the only other known exporter of subject merchandise.  Voluntary respondent treatment requests are generally made by companies from which data indicates they do not represent a substantial portion of the imports such that they would not be selected as mandatory respondents.  Nonetheless, every indication made by Commerce during this investigation and its general practice in this respect expressed that Commerce would not review SGRE, either as a mandatory or as a voluntary respondent.

Lastly, reading into the statute a requirement for all parties to go through the motions of a voluntary response under these circumstances would erect a tremendous hurdle to companies

14

harmed by Commerce's refusal to adhere to its basic statutory obligations. The burden of responding to Commerce's highly complex questionnaires, for a first-time respondent, should come with it a degree of certainty as to whether Commerce would review such responses – especially given the unique challenges presented by the remote work environment. Absent this certainty, the Court should not impose such a barrier without a signal from Congress. Indeed, the facts of this case demonstrate that the submission of any voluntary response was certain to be futile. Regardless, no such signal appears in the statute. Such a requirement would summarily bar access to the courts for importers and exporters of all sizes, harmed by Commerce's refusal to meet its statutory duty. For these reasons, this Court has already rejected this argument in *Asahi Seiko*.

For the foregoing reasons, SGRE properly availed itself of all administrative remedies available and preserved its theory of recovery before this Court.

## II.   COMMERCE DID NOT REASONABLY EXERCISE ITS DISCRETION WHEN IT FAILED TO INDIVIDUALLY EXAMINE SGRE

19 U.S.C. § 1677f-1(c)(2) states that when Commerce does invoke the authority to limit examination, an examination must nonetheless be conducted for a "reasonable" number of respondents. In exercising its discretion, Commerce is charged with using its reasonable efforts in good faith to effectuate the overarching legislative intent of the statutory authority granted by Congress. Where the statutory imperative has been all but entirely frustrated, Commerce may be forced to weigh this legislative intent against other considerations such as conducting investigations within a reasonable time period and with a degree of certainty. However, when ample time and resources remain, Commerce must use that time and resources to conduct a meaningful individual examination of at least one known exporter, in accordance with the statute and its stated practice.

The Government suggests that, under Plaintiff's interpretation of the statute, if a mandatory respondent withdrew two weeks before the scheduled final determination, Commerce would be required to immediately conduct a hasty examination of a second respondent. "Indeed, a mandatory respondent might stop participating after submitting multiple questionnaire responses or prior to verification." *See* Gov. Brief at 13. Of course, this is likely not a result envisioned by Congress, and Plaintiff does not counsel for this outcome. In the above scenario, no good faith efforts on the part of Commerce could have reasonably achieved the legislative intent of the antidumping duty statute.

However, in the circumstances above outline by the Government, Commerce presumably conducted a meaningful examination in the six months preceding that respondent's withdrawal. In that scenario Commerce clearly undertook its statutory obligation to individually examine at least one mandatory respondent: multiple questionnaire responses had apparently been received, such that the investigation had proceeded to *verification*, and, it can be inferred that, in the above example, the statutory time at Commerce's disposal was near expiration. In such a case, Commerce clearly undertook an attempt to conduct an individual examination within the meaning of the statute. Here, on the other hand, the ultimate final statutory deadline was more than six months away, and no antidumping duty questionnaires, including sales or cost data, had yet been received. Commerce also had sufficient resources: in the absence of a single individual questionnaire response to date, the resources Commerce had at the beginning of the investigation remained the very same resources that existed at the time of the initial mandatory respondent's withdrawal. As shown above, Commerce routinely refers back to its initially outlined resources in selecting replacement respondents.

16

Indeed, Commerce has discretion to evaluate its own time and resources, and Plaintiff does not contest that point.  However, this discretion is not unbounded.  Commerce can abuse that discretion when it arrives at an "unreasonable judgment in weighing relevant factors."  *See WelCom Prods., Inc. v. United States,* 865 F. Supp. 2d 1340 (CIT 2012).  The decision in the instant case was simply not reasonable in light of Commerce's practice and the relevant factors. To be sure, the relevant factors overwhelmingly indicate that Commerce not so much as abused its discretion in denying an individual examination of SGRE, but failed to even make genuine use of it.  Neither Commerce nor the Government in its response sufficiently addressed why six months is not an adequate amount of time to conduct a reasonably accurate individual examination.  The Department requires 37 days in total for the initial AD questionnaire.  This left an additional 160 days to analyze and verify that information to reasonably estimate an accurate dumping margin.[6] Moreover, Commerce failed to articulate a single reason for refusing to use the entire statutorily-prescribed time to conduct an individual examination, *i.e.*, by extending the deadline for the final determination, as in the companion investigations regarding the same merchandise from Malaysia and India.  Commerce's statutory authority to extend these deadlines is precisely for these

---

[6] The one passing mention of evidentiary support cited as an example of Commerce's genuine exercise of discretion was a certain potential "complicating factor" due to SGRE's sourcing of wind towers from an "unaffiliated supplier that failed to respond to Commerce's Q&V questionnaire."  *See* Gov. Brief at 23; *see also* Issues and Decision Memorandum at 6, n. 31.  However, there is no explanation at all for why this would be a "complicating factor." Respondents routinely source merchandise from domestic suppliers for export to the United States.  Commerce investigates and assigns AD rates to *exporters,* and quantity and value questionnaires are solicited for data with respect to *exports*. This supplier made no exports to the United States other than those made through SGRE, as accounted for in SGRE's Q&V response.  Lastly, this company is an *affiliated* supplier, as stated in SGRE's Q&V response.  SGRE is confident this would not have presented Commerce with any complications. If Commerce genuinely had questions regarding this arrangement, it could have asked.  Thus, the Court should give little to no weight to this "evidence" of a single alleged "complicating factor."

circumstances, *i.e.*, to ensure sufficient time to meet its statutory duty to conduct individual examinations. Indeed, Commerce has "deferred" even this statutory deadline when necessary.[7]

For these reasons, Commerce abused its discretion by refusing to conduct an individual examination of SGRE.

### III.   THE GOVERNMENT'S READING OF THE STATUTE IS ILLOGICAL AND CONTRARY TO PRINCIPLES OF STATUTORY INTERPRETATION

The Defendants' reading of 19 U.S.C. § 1677f–1(c) belies logic and is contrary to universal principles of statutory interpretation. First, the Defendants misapprehend the statute when claiming that 19 exporters or producers were "involved" in the investigation, thereby triggering Commerce's authority to limit its examination to a "reasonable" number of respondents. The statute expressly states that Commerce should generally determine an individual weighted-average dumping margin "for each *known* exporter and producer of the subject merchandise in an investigation." 19 U.S.C. § 1677f-1(c)(1) (Emphasis added). Commerce issued Q&V questionnaires to all 19 *suspected* exporters and producers in this case, based on CBP data. Commerce issued Q&V questionnaires to these companies precisely because it could not be determined from the CBP data which of these companies actually exported the subject merchandise. Only two known exporters of the subject merchandise during the period of investigation responded, Vestas and SGRE. Again, as only two known exporters of the subject merchandise responded to Commerce's Q&V questionnaire, only two known exporters of the subject merchandise could be construed as being "involved in the investigation." No other

---

[7] *See Certain Aluminum Foil from the People's Republic of China: Deferral of Preliminary Determination of the Less-Than-Fair-Value Investigation*, 82 Fed. Reg. 47,481 (October 12, 2017) (deferring the statutory deadline for the preliminary determination in order to fully consider new information relevant to investigation).

interpretation of the statute is reasonable.  *See Zhejiang*, 637 F. Supp. 2d at 1264.  As applied in this context, only SGRE remained as a known, involved exporter after Vestas withdrew.

First, the statute expressly assigns a different qualifier to the words "exporter and producer" in the first paragraph as compared to the second, *i.e.*, "known" versus "involved."  As this Court is aware, "known" does not mean "involved."  Defendants would have the Court find that Congress's expression in this provision of "involved" is more akin to that for "know" rather than "participation."  Again, the definitions of these words differ significantly, and Congress's unambiguous intent to assign different meanings to these two qualifiers in these two provisions should be given deference.

A basic principle of statutory interpretation is that courts should "give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883). The modern variant is that statutes should be construed "so as to avoid rendering superfluous" any statutory language: "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004), *See also Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, non-superfluous meaning.")  In this case, Defendants would have the Court ignore the different usage of these words by Congress.  In any case, the Court shouldn't buy it; only two exporters were ever "involved" in this investigation within the meaning of the statute. Further, no reasonable fact-finder could conclude that "two" total exporters involved in the investigation is such a "large" number as to justify the limitation of individual examination.

Indeed, the crux of this case concerns Commerce's decision to not conduct an individual examination at all, once the initially selected mandatory respondent withdrew. This resulted in only one exporter then being "involved" in the investigation, and the only reasonable action in that scenario would have been to conduct an individual examination of that exporter, pursuant to the statute and Commerce's practice. However, Commerce refused to do that. In that light, the Government would also have the Court to believe that "selection" equals "investigation." The Government shamelessly claims that, where SGRE states that Commerce must "individually examine at least one company… that is what Commerce did when it selected Vestas for individual examination." *See* Gov. Brief at 10. Again, for the same reasons identified above, a reasonable interpretation of the statute cannot result in equating the word "selection" with "examination." It is not disputed that Commerce reviewed no data or responses from Vestas to the antidumping duty questionnaire for purposes of duty calculation.

Commerce simply did not conduct a meaningful examination of Vestas or any respondent in this investigation, and the Defendants are now resorting to attempts to obscure the plain meaning of the statute.

IV.   **SGRE EXHAUSTED ALL ADMINISTRATIVE REMEDIES WITH RESPECT TO THE ALL-OTHERS RATE**

The Defendants' repeated attempts to diminish SGRE's participation in this case and allegations that SGRE failed to exhaust administrative remedies should be viewed as a concession that the Government's substantive arguments lack merit. With respect to the all-others rate, SGRE sufficiently "put Commerce on notice of arguments" regarding the all-others rate. *See, e.g.,* Gov. Brief at 31. To be sure, as SGRE was not selected as a mandatory respondent, the whole case arguably concerns SGRE's injury through the assignment of an all-others rate that was calculated

20

pursuant to a single Petition margin without meaningful corroboration, *i.e.*, without a genuine investigation of actual sales data from a known exporter.

In SGRE's initial mandatory respondent selection request, SGRE sufficiently put Commerce on notice regarding the ultimate issues with the all-others rate should Commerce choose not to examine SGRE, reminding Commerce of the narrow nature of the exception to limit individual examinations in the first place. *See* SGRE's Mandatory Respondent Selection Request at 3-4.  These concerns were again echoed in SGRE's administrative case brief.  *See* SGRE's Administrative Case Brief at 6.

The untested Petition margin relied upon in this investigation cannot be said to be representative of all exporters of wind towers from Spain – it was not meaningfully corroborated in any way, despite the fact that SGRE stood by willing and ready to provide its data, with six months at Commerce's disposal to review it.  Therefore, the all-others rate as assigned violates the Court's precedent in *Albemarle*, as advanced by SGRE in its respondent selection request and preserved throughout the underlying administrative proceeding.

## V. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court remand this case with an order to reopen the record and conduct a meaningful individual examination of SGRE in this investigation, in accordance with the antidumping duty statute.

Respectfully submitted,

_____
Daniel Cannistra
Michael Bowen
Simeon Yerokun

Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
(202) 624-2500
*Counsel for Siemens Gamesa*
*Renewable Energy*

Dated: May 12, 2022

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 6,804 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2017 used to prepare this brief.

Respectfully submitted,

_____
Daniel Cannistra
Michael Bowen
Simeon Yerokun

*Counsel for Siemens Gamesa Renewable Energy*