NON-CONFIDENTIAL VERSION

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SIEMENS GAMESA RENEWABLE ENERGY,<br><br>                              Plaintiff,<br><br>             v.<br><br>UNITED STATES,<br><br>                              Defendant,<br><br>             and<br><br>WIND TOWER TRADE COALITION,<br><br>                              Defendant-Intervenor. | Before:  Hon. Timothy C. Stanceu,<br>               Senior Judge<br><br>Court No. 21-00449<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary<br>Information Removed from<br>Pages 2, 3, 12 |

<u>**DEFENDANT-INTERVENOR WIND TOWER TRADE COALITION'S COMMENTS
ON REMAND REDETERMINATION**</u>

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.
John Allen Riggins, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Wind Tower Trade
Coalition*

Dated: July 17, 2023

Ct. No. 21-00449                                          NON-CONFIDENTIAL VERSION

## <u>TABLE OF CONTENTS</u>

**Page**

II.  INTRODUCTION ...........................................................................................................1

III. BACKGROUND ...........................................................................................................1

IV.  ARGUMENT ................................................................................................................6

    A.  Commerce's Decision to Apply a Single Rate to the Collapsed
        Entity is Supported by Substantial Evidence and In Accordance
        with Law ...........................................................................................................7

    B.  SGRE Failed to Exhaust its Administrative Remedies Regarding
        Windar's Rate and Further Waived This Argument Before the Court......................8

    C.  Commerce's Underlying Decision to Assign Windar an AFA Rate
        Was Lawful .....................................................................................................11

V.   CONCLUSION............................................................................................................13

Ct. No. 21-00449                                    NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boomerang Tube LLC v. United States,*
    856 F.3d 908 (Fed. Cir. 2017)..................................................................9

*Budd Co., Wheel & Brake Div. v. United States,*
    773 F. Supp. 1549 (Ct. Int'l Trade 1991) ...............................................9

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012)..............................................................11

*Ferrostaal Metals GMBH v. United States,*
    518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) .........................................12

*Hyundai Steel Co. v. United States,*
    518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021) ...........................................7

*Mittal Steel Point Lisas Ltd. v. United States,*
    548 F.3d 1375 (Fed. Cir. 2008)................................................................9

*Nippon Steel Corp. v. United States,*
    337 F. 3d 1373 (Fed. Cir. 2003).............................................................11

*Novosteel SA v. United States,*
    284 F. 3d 1261 (Fed. Cir. 2022).............................................................11

*Palladian Partners, Inc. v. United States,*
    783 F.3d 1243 (Fed. Cir. 2015)................................................................9

*Xi'an Metals & Minerals Import & Export Co. v. United States,*
    256 F. Supp. 3d 1346 (Ct. Int'l Trade 2017) ..........................................9

*Zhaoqing New Zhongya Aluminum Co., Ltd. v. United States,*
    36 C.I.T. 1390, 887 F. Supp. 2d 1301 (2012) ........................................7

**Statutes**

19 U.S.C. § 1677e(a).................................................................................11

19 U.S.C. § 1677e(b)(1).............................................................................11

19 U.S.C. § 1677e(b)(2).............................................................................12

19 U.S.C. § 1677f-1(c)(2)............................................................................5

Ct. No. 21-00449                                              NON-CONFIDENTIAL VERSION

19 U.S.C. § 1677f-1(c)(2)(B)..............................................................................5

28 U.S.C. § 2637(d) .........................................................................................8

**Regulations**

19 C.F.R. § 351.401(f) ......................................................................................7

**Administrative Materials**

*Antidumping Duties; Countervailing Duties,*
    62 Fed. Reg. 27,296 (Dep't Commerce May 19, 1997) ...........................7

*Utility Scale Wind Towers from Spain,*
    86 Fed. Reg. 17,354 (Dep't Commerce Apr. 2, 2021)......................4, 10

*Utility Scale Wind Towers from Spain,*
    86 Fed. Reg. 33,656 (Dep't Commerce June 25, 2021) ...........................5

**Other Authorities**

Uruguay Round Agreements Act, Statement of Administrative Action,
    H.R. Doc. No. 103-316, vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040,
    4198..................................................................................................................12

## I.      **INTRODUCTION**

On behalf of the Wind Tower Trade Coalition ("WTTC"), we respectfully submit the following comments in support of the final results of redetermination pursuant to remand issued by the Department of Commerce ("Commerce") regarding the antidumping duty investigation into utility scale wind towers ("wind towers") from Spain. Final Results of Redetermination Pursuant to Court Remand, *Siemens Gamesa Renewable Energy v. United States*, 621 F. Supp. 3d 1337 (Ct. Int'l Trade 2023) (June 16, 2023), ECF No. 53 ("Final Remand Results"). In its remand determination, Commerce explained its individual investigation of Siemens Gamesa Renewable Energy ("SGRE") and subsequent decision to assign Windar Renovables' ("Windar") uncontested 73.00% rate to Siemens Gamesa Renewable Energy ("SGRE"). *See id.* at 1-2. For the reasons provided herein, the WTTC respectfully requests that the Court sustain Commerce's redetermination as supported by substantial evidence and otherwise in accordance with law.

## II.     **BACKGROUND**

On September 30, 2020, the WTTC submitted the underlying antidumping Petition, identifying three Spanish wind tower producers believed to be selling wind towers in the United States at less-than-fair value—GRI Towers, Haizea Wind Group, and Windar. *See* Petition for the Imposition of Antidumping Duties, *Utility Scale Wind Towers*, Vol. IV (Sept. 30, 2020), C.R. 1-8, P.R. 1-7 at 4.[1] Commerce generally will individually examine the largest producers in the subject country, typically based on the companies with the most entries in U.S. Custom and Border

---

[1]      Documents on the public record of the underlying investigation are identified by "P.R." followed by the number assigned to the relevant document in the administrative record index filed with the Court on September 14, 2021. Documents in the confidential administrative record are identified by "C.R." followed by the corresponding record number. Documents on the public record of the remand proceeding are identified by "P.R.R." followed by the number assigned to the relevant document in the administrative record index filed with the Court on June 30, 2023. Documents on the confidential administrative record are identified by "C.R.R."

BUSINESS PROPRIETARY INFORMATION<br>HAS BEEN DELETED   NON-CONFIDENTIAL VERSION

Protection's ("CBP") import data. However, wind towers are often produced via a tolling arrangement (*i.e.*, where one company owns the tower's inputs and enlists a producer to convert those inputs into a wind tower). *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Comments on Respondent Selection and Q&V Data* (Dec. 18, 2020), C.R. 31, P.R. 101 at 6. As a result, CBP's entry data [

]. *See* Memorandum from Benito Ballesteros, Int'l Trade Compliance Analyst, Off. V, Enf't & Compliance to The File, re: *Antidumping Duty Petition on Utility Scale Wind Towers from Spain: Release of U.S. Customs and Border Protection Data* (Nov. 2, 2020), C.R. 22-23, P.R. 37.  Instead, the CBP data [

]. *Id.* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Supplemental Comments on Draft Results of Redetermination Pursuant to Court Remand* (May 24, 2023), C.R.R. 183, P.R.R. 81 at 11 ("WTTC Supp. Remand Comments"). Vestas emphasized that it did not have manufacturing facilities in Spain, but that it "sources wind towers [                                                      ] Spanish wind tower producers." *See* Letter from Alston & Bird LLP to Sec'y Commerce, re: *Antidumping Duty Investigation of Utility Scale Wind Towers from Spain: Comments on CBP Data and Respondent Selection* (Nov. 23, 2020), C.R. 26, P.R. 48 at 2 (emphasis added). As a result, both Vestas and the WTTC requested that the Commerce issue a Q&V questionnaire to all potential Spanish producers to resolve Commerce's initial difficulty identifying the largest Spanish wind tower producers. *See id.* at 5; Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Comments on CBP Data and Respondent Selection* (Nov. 23, 2020), C.R. 25, P.R. 47 at 3.

**BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED**

Commerce issued questionnaires to all companies identified in the petition, parties' comments, and the CBP data, "{i}n light of the comments from the parties, and to ensure the accuracy of the export volume data that {it would} rely upon for respondent selection." Letter from Benito Ballesteros, Int'l Trade Compliance Analyst, Off. V., AD/CVD Operations through Robert Galantucci, Program Manager, Off. V, AD/CVD Operations to The File, re: *Antidumping Duty Investigation of Utility Scale Wind Towers from Spain: Issuance of Quantity and Value Questionnaires* (Nov. 25, 2020), P.R. 49. SGRE, Windar, Vestas, and other Spanish companies received this questionnaire, which emphasized that failure to provide a response would result in the application of an adverse inference. *Id.* at 2. Commerce's questionnaire also emphasize that each party should report separately and not aggregate data, "even if {they} believe {they} should be treated as a single entity along with other exporters." *Id.* at Attachment 1. Thirteen of 19 companies responded to Commerce's Q&V questionnaire, including several companies that responded despite [                                        ] and companies, such as GRI, that [

                    ]. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from Spain: Comments on Draft Results of Redetermination Pursuant to Court Remand* (May 24, 2023), C.R.R. 182, P.R.R. 80 at 4 n. 16 ("WTTC Initial Remand Comments"); Letter from Steptoe & Johnson, LLP to Sec'y Commerce, re: *Antidumping Investigation of Utility Scale Wind Towers from Spain: GRI's Response to the Department's Quantity and Value Questionnaire* (Dec. 7, 2020), C.R. 28, P.R. 85. Vestas [

                    ] to the United States during the period of investigation. Windar, however, was one of only six companies that did not respond to Commerce's request for information.

Commerce issued an additional questionnaire on December 10, 2020, clarifying its reporting instructions and affording parties an additional opportunity to respond. *See* Letter from Benito Ballesteros, Int'l Trade Compliance Analyst, Off. V., AD/CVD Operations to The File, re: *Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Quantity and Value Questionnaire – Clarification and Extension* (Dec. 7, 2020), P.R. 83. Once again, Windar failed to submit a Q&V questionnaire response. As a result, Commerce preliminarily assigned a rate to Windar and five other noncooperating companies that was based on adverse inferences, pursuant to Section 776 of the Tariff Act of 1930, *as amended* (the "Act"). Preliminary Issues and Decision Memorandum accompanying *Utility Scale Wind Towers from Spain*, 86 Fed. Reg. 17,354 (Dep't Commerce Apr. 2, 2021) (prelim. affirm. deter. of sales at less than fair value) at 4-7 ("Preliminary Determination Memo"). Separately, after mandatory respondent Vestas declined to participate in the agency's review, Commerce preliminarily assessed the 73.00 percent "Petition rate" to both Vestas and non-individually examined companies, including SGRE, pursuant to Section 735(c)(5) of the Act. *See* Preliminary Determination Memo at 9-10.

In its case brief, SGRE challenged Commerce's decision not to select it as an additional mandatory respondent.  SGRE did <u>not</u> contest Commerce's decision to assess Windar an AFA rate for its failure to cooperate. Letter from Crowell & Moring LLP to Sec'y Commerce, re: *Antidumping Duty Investigation of Utility Scale Wind Towers from Spain: SGRE's Case Brief* (May 3, 2021) ("SGRE's Case Brief"), C.R. 40, P.R. 141 at 2-8. Windar was mentioned once in a header and once in a footnote of the brief, but Windar's failure to cooperate was never mentioned. *See generally* SGRE Case Brief. Windar also did not itself contest its receipt of a 73.00 percent dumping margin.

In the final results, Commerce continued to find that Windar and the other noncooperating companies should receive an AFA rate for their failure to cooperate, and, separately that SGRE should receive a rate derived from the individually investigated mandatory respondent. *Utility Scale Wind Towers from Spain*, 86 Fed. Reg. 33,656, 33,657 (Dep't Commerce June 25, 2021) (final deter. of sales at less than fair value). SGRE appealed Commerce's decision not to "conduct an individual examination of SGRE," Brief of Pl. Siemens Gamesa Renewable Energy in Support of Its Mot. for J. on the Agency R. (Jan. 14, 2022), ECF No. 28 ("SGRE's Opening Br.") at 2-3, but again decided not to challenge Commerce's decision to assign Windar an AFA rate for its noncooperation.

After considering the Department's underlying investigation, the Court issued a remand for the agency to "correct the error it made when it decided, contrary to 19 U.S.C. § 1677f-1(c)(2), to examine individually only one respondent and, having also decided to proceed according to largest export volume under 19 U.S.C. § 1677f-1(c)(2)(B), not to examine Siemens Gamesa in particular." Consistent with the Court's remand order, the Department issued an antidumping questionnaire to SGRE, as it would any mandatory respondent. Letter from Dep't Commerce to SGRE, re: *Request for Information, Antidumping Duty Investigation* (Feb. 17, 2023), P.R.R. 1. In its response to Section A of Commerce's questionnaire, SGRE explained that "Windar is an SGRE affiliate holding company based in Spain which wholly-owns several subsidiary producers globally" and that "SGRE and Windar are co-producers of wind towers in Spain." Letter from Crowell & Moring LLP to Sec'y Commerce, re: *Antidumping Duty Investigation of Utility Scale Wind Towers from Spain: Siemens Gamesa Renewable Energy Section A Questionnaire Response* (Mar. 10, 2023) C.R.R. 63, P.R.R. 8 at 8, 14.

5

As a result, Commerce preliminarily found that these two companies were affiliated, presented a significant potential for manipulation of price or production, and should be collapsed (*i.e.*, treated as a single entity for purposes of the antidumping duty analysis). *See generally* Memorandum from Christopher Maciuba, International Trade Compliance Analyst, Office V, AD/CVD Operations through Robert Galantucci, Program Manager, Office V, AD/CVD Operations to Shawn Thompson, Director Office V, AD/CVD Operations, re: *Remand for the Less-Than-Fair-Value Investigation of Utility Scale Wind Towers: Preliminary Affiliation and Collapsing Memorandum for Siemens Gamesa Renewable Energy S.A. and Windar Renovables S.A.* (Apr. 25, 2023), C.R.R. 176, P.R.R. 69 ("DOC Collapsing Memo"). Commerce continues to collapse SGRE and Windar in its remand redetermination, assigning the single entity the uncontested 73.00 percent rate Windar received for its failure to participate in the underlying proceeding. *See* Final Remand Results at 1-2.

## III.   <u>ARGUMENT</u>

Commerce's remand results appropriately respond to the Court's instructions to individually investigate SGRE. During the course of this remand investigation, Commerce determined that SGRE was affiliated with Windar—a company that received an unchallenged rate in the underlying investigation for failing to submit a response to Commerce's quantity and value ("Q&V") questionnaire at the outset of the investigation. Consistent with the statute and according to its practice, Commerce applied this affiliate's rate to SGRE to prevent potential manipulation of Windar's dumping margin. The WTTC respectfully submits that the Court should affirm the remand results in their entirety.

Ct. No. 21-00449                                    NON-CONFIDENTIAL VERSION

A.    **Commerce's Decision to Apply a Single Rate to the Collapsed Entity is Supported by Substantial Evidence and In Accordance with Law**

On remand, Commerce individually investigated SGRE and appropriately assigned SGRE the rate of its non-cooperating affiliate, Windar. The Court should affirm this decision, which is consistent with law and Commerce's prior practice. Commerce will "treat two or more affiliated producers as a single entity" where those companies, *inter alia*, present a "significant potential for the manipulation of price or production" based on the degree of overlap in their ownership, board and managers, and operational decision-making. *See* 19 C.F.R. § 351.401(f). As the U.S. Court of Appeals for the Federal Circuit explains, "{t}he purpose of collapsing multiple entities into a single entity is to prevent affiliated entities from circumventing antidumping duties by 'channel{ing} production of subject merchandise through the affiliate with the lowest potential dumping margin." *Prosperity Tieh Enterprise Co., Ltd. v. United* States, 965 F. 3d 1320, 1323 (Fed. Cir. 2020) (quoting *Slater Steels Corp. v. United States*, 279 F. Supp. 2d 1370, 1376 (Ct. Int'l Trade 2003)). To this end, Commerce will apply one dumping rate to all affiliated companies in the single entity. *See Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309, 1323 (Ct. Int'l Trade 2021) (citing *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,345 (Dep't Commerce May 19, 1997) (preamble)). This Court has recognized that Commerce's practice includes "apply{ing} AFA to the entire entity when one producer within it fails to cooperate." *Zhaoqing New Zhongya Aluminum Co., Ltd. v. United States*, 36 C.I.T. 1390, 1399, 887 F. Supp. 2d 1301, 1310 (2012) (citing *Bicycles from the People's Republic of China*, 61 Fed. Reg. 19,026 (Dep't Commerce Apr. 30, 1996) and *Light-Walled Rectangular Pipe and Tube from Turkey*, 69 Fed. Reg. 53,675, 53,677 (Dept' Commerce Sept. 2, 2004)). Commerce's practice includes applying an existing AFA to another affiliate in the single entity. *See* Final Remand Results at 6-7 (quoting Issues and Decision Memorandum accompanying *Certain Steel Nails form Malaysia*, 82 Fed. Reg. 34,476 (Dep't

Commerce July 25, 2017) (final results of changed circum. rev.). This agency practice furthers the goal of preventing circumvention, as it ensures a foreign producer cannot use a related company to shield itself from an AFA rate. *Id.*

Commerce's remand decision was consistent with this practice. Despite receiving Q&V questionnaires and despite two opportunities to respond, Windar and five other producers failed to submit a response by the specified deadline. As it has done in countless proceedings, WTTC Supp. Remand Comments at 8-9, the Department applied an AFA rate to these six companies. On remand, while investigating SGRE, it determined that SGRE and Windar should be collapsed and treated as a part of a single entity. *See generally* DOC Collapsing Memo. Therefore, Commerce applied Windar's AFA rate to SGRE, which forecloses Windar's ability to obtain a more favorable dumping rate by shipping towers to the United States through SGRE. As such, Commerce's decision to apply Windar's AFA rate to SGRE as part of a single entity was lawful and should be upheld.

### B.     SGRE Failed to Exhaust its Administrative Remedies Regarding Windar's Rate and Further Waived This Argument Before the Court

Commerce's remand results correctly recognize that SGRE failed to exhaust its administrative remedies regarding Windar's AFA rate. Further, SGRE never challenged Windar's AFA rate in the underlying administrative proceeding or before the Court. SGRE should not be allowed to object to Windar's AFA rate for the first time now, years after the rate was initially applied.

Pursuant to 28 U.S.C. § 2637(d), this Court "shall, where appropriate, require the exhaustion of administrative remedies." This statutory mandate "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before

the pertinent administrative agencies."[2] *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citation omitted). Administrative exhaustion "is well established in the jurisprudence of administrative law." *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (citing *McKart*, 395 U.S. at 193). Indeed, "{s}imple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice*." *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). This obligation "applies equally to overall issues as well as to individual arguments." *Xi'an Metals & Minerals Import & Export Co. v. United States*, 256 F. Supp. 3d 1346, 1356 (Ct. Int'l Trade 2017) (citing *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 2017)).

SGRE was aware of Windar's failure to submit a Q&V response and that Commerce had assigned the AFA rate to this company. It was of course also aware of its affiliation with this company. Yet SGRE did not raise the issue of Windar's rate until Commerce's remand proceeding. As discussed above, Windar failed to submit a Q&V response by the extended deadline of December 7, 2020 or the renewed deadline of December 10, 2020. WTTC Initial Remand Comments at 3-4. Windar ignored Commerce's Q&V questionnaire and Commerce's warning that failure to submit a Q&V response could result in the application of adverse inferences. Windar's decision deprived Commerce of necessary information to resolve respondent selection issues that were especially pressing, due to

---

[2]      While the CAFC has identified several exceptions to the exhaustion requirement, none of these exceptions exist in the present case. *See Budd Co., Wheel & Brake Div. v. United States*, 773 F. Supp. 1549, 1555 n.2 (Ct. Int'l Trade 1991) (listing the exceptions to exhaustion as pure legal questions, untimely access to the confidential record, intervening judicial interpretations, and futility); *see also Xi'an Metals & Minerals Import & Export Co. v. United States*, 256 F. Supp. 3d 1346, 1356 (Ct. Int'l Trade 2017) (citations omitted).

the nature of wind tower production and sales. Commerce then applied a preliminary AFA rate to Windar when it failed to provide a Q&V response, consistent with its warning and previous practice. At that point, SGRE was on notice that its affiliate had its own rate and should have known that this rate could apply to SGRE.

Nevertheless, as Commerce's Final Remand acknowledges, "no party challenged Commerce's application of AFA to Windar in the underlying {less-than-fair-value} investigation." Final Remand Results at 26. In its case brief, SGRE acknowledged that the Department received questionnaire responses from 13 companies—a list that did not include Windar. *See* SGRE's Case Brief at 2; *see also* Preliminary Determination Memo. SGRE briefly claimed that its Q&V response covered itself and Windar, but altogether ignored that Commerce had already issued Windar an AFA rate for its failure to cooperate. *See* SGRE Case Brief at 1. SGRE did not contest or even mention Windar's failure to submit a Q&V response or Commerce's decision to assign Windar a 73 percent rate. Instead, SGRE's case brief primarily focused on Commerce's decision not to select an additional mandatory respondent. Other references to Windar in SGRE's case brief included a reference to Windar in a header, but Commerce's Final Remand notes that this "falls short of a developed argument as to whether the application of AFA to Windar was appropriate." Final Remand Results at 26. Even if Windar believes Commerce erred in assigning Windar an AFA rate, now is not the appropriate time to raise this objection. SGRE's silence on Windar's rate demonstrates that SGRE failed to argue Windar's rate in the administrative proceeding and has therefore failed to exhaust its administrative remedy on this issue.

SGRE further waived this issue when it declined to raise Windar's AFA rate to the Court. The U.S. Court of Appeals for the Federal Circuit holds that "{a} party does not preserve or waive an issue based on the arguments it presented to an administrative agency; a party merely exhausts that

issue before the agency so as to give a court to proper basis to review that issue on appeal or via a complaint." *Novosteel SA v. United States*, 284 F. 3d 1261, 1274 (Fed. Cir. 2022). Instead, waiver of an issue occurs once the party fails to include the argument in their brief. *See id.* ("{A} party does not waive an argument based on what appears in its pleading; a party waives an argument based on what appears in its brief.").

The Court should reject SGRE's revisionist claims that it brought Windar's AFA rate before the Court. Windar did not appear before the court and is not mentioned in SGRE's complaint. SGRE did not mention Windar's non-cooperation in its principal brief before the Court. Rather, SGRE focused its entire appeal on Commerce's decision not to "conduct an individual examination of SGRE." WTTC Supp. Remand Comments at 5-6. Put simply, SGRE failed to bring Windar's known AFA rate before the Court, and SGRE has therefore waived this argument.

### C.      Commerce's Underlying Decision to Assign Windar an AFA Rate Was Lawful

Commerce's remand redetermination supports its decision to apply AFA to Windar, even if the Court reopens this issue after SGRE failed to exhaust its administrative remedies or raise an objection on appeal. Commerce may rely on facts available to fill a gap in the record where the necessary information is not available or where a party fails to provide requested information. *See* 19 U.S.C. § 1677e(a). Commerce may make an adverse inference where the information is missing because a party failed to cooperate by not acting to the best of its ability. 19 U.S.C. § 1677e(b)(1). This "best of its ability" standard requires that a party "put forth its maximum efforts to investigate and obtain the requested information." *Nippon Steel Corp. v. United States*, 337 F. 3d 1373, 1382-83 (Fed. Cir. 2003). This is an "essential tool" to ensure responding parties comply with Commerce's requests for information to the best of their ability. *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (citing *Rhone Poulenc, Inc. v. United States*, 899

F.2d 1185, 1191 (Fed. Cir. 1990)); Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 868 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4198 ("SAA"). Further, the statute allows Commerce to rely on information derived from the petition when apply an adverse inference. 19 U.S.C. § 1677e(b)(2).

Commerce's well-established practice is to apply adverse inferences to parties that fail to submit a Q&V response. Final Remand Results at 27 nn.113-114 (listing numerous cases where Commerce applied AFA to companies that did not timely file a Q&V response). Moreover, the CIT has upheld Commerce's decision to apply AFA under these circumstances and recognized that the failure to submit usable Q&V responses allows companies to "avoid certain immediate costs and inconvenience by ignoring {the Department's} requests for information while having no reason to fear any specific future negative consequences from their unwillingness to cooperate." *Ferrostaal Metals GMBH v. United States*, 518 F. Supp. 3d 1357, 1375 (Ct. Int'l Trade 2021) (quoting SAA, H.R. Doc. Rep. No. 103-316, vol. 1, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 404, 4198).

Windar's failure to provide the requested information created a gap in the record, which Commerce filled using an adverse inference. At the outset of the underlying investigation, parties requested clarity Commerce's respondent selection process, given that [

]. Commerce issued Q&V questionnaires to numerous companies in an attempt to resolve this issue, including separate questionnaires to SGRE and Windar. These questionnaires instructed that "{q}uantity and value data pertaining to other, possibly affiliated companies, that you believe should be treated together with your company as a single entity should be separately reported by those companies." *See* Letter from Crowell & Moring LLP, to Sec'y Commerce, re: *Less-Than-Fair-Value Investigation of*

Ct. No. 21-00449                                             NON-CONFIDENTIAL VERSION

*Utility Scale Wind Towers from Spain: Response to Quantity and Value Questionnaire* (Dec. 7, 2020), C.R. 27, P.R. 84 at Attachment I. Windar, however, rather than claiming it was not a producer or that it was a producer but not an exporter, Windar simply ignored Commerce's questionnaire altogether. In doing so, Windar, depriving Commerce of relevant information at an early stage of the proceeding. Commerce applied the petition rate to Windar as AFA, consistent with its longstanding practice and consistent with its application of the same rate to the other five non-cooperating companies. As such, should this Court reach the merits of SGRE's waived argument, it should uphold Commerce's decision.

## IV.   **CONCLUSION**

For the reasons detailed above, WTTC respectfully submits that this Court should affirm the Remand Redetermination.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.
John Allen Riggins, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Wind Tower Trade Coalition*

Dated: July 17, 2023

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Wind Tower Trade Coalition's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 4,092 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Wind Tower Trade Coalition
(Representative Of)

July 17, 2023
(Date)