IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY STANCEU, JUDGE

|  |  |
|---|---|
| SIEMENS GAMESA RENEWABLE ENERGY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> WIND TOWER TRADE COALITION, <br><br> Defendant-Intervenor. | Court No. 21-00449 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S AND DEFENDANT-INTERVENOR'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION**

|  |  |
|---|---|
|  | BRIAN M. BOYNTON <br> Principal Deputy Assistant Attorney General <br><br> PATRICIA M. McCARTHY <br> Director <br><br> REGINALD T. BLADES, Jr. <br> Assistant Director |
| OF COUNSEL: | SARAH E. KRAMER <br> Trial Attorney <br> Department of Justice <br> Civil Division <br> Commercial Litigation Branch <br> P.O. Box 480 <br> Ben Franklin Station <br> Washington, D.C. 20044 <br> Tel.: (202) 353-0537 <br> Fax: (202) 305-2062 <br> Email: sarah.e.kramer@usdoj.gov |
| ALEXANDER FRIED <br> Attorney <br> Office of the Chief Counsel for Trade <br> Enforcement and Compliance <br> United States Department of Commerce <br><br> . |  |
| July 31, 2023 | Attorneys for Defendant, United States |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT .................................................................................................................................. 2

    I.    Standard Of Review ................................................................................................ 2

    II.    SGRE Does Not Challenge Commerce's Determination To Collapse It With Windar ..................................................................................................................... 4

    III.    Windar's Adverse Facts Available Rate Was Already Final And Has Not Been Timely Challenged ................................................................................................... 7

        A.    Windar Never Submitted Its Own Q&V Response ..................................... 7

        B.    Windar's AFA Rate Is Final And Lawful ..................................................10

    IV.    SGRE's Arguments Have Not Been Exhausted ....................................................12

CONCLUSION .............................................................................................................................13

## TABLE OF AUTHORITIES

## CASES

*Boomerang Tube LLC v. United States*,
    856 F.3d 908 (Fed. Cir. 2017) .................................................................................................3

*Budd Co., Wheel & Brake Div. v. United States*,
    773 F. Supp. 1549 (Ct. Int'l Trade 1991) ..................................................................................4

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) .................................................................................................................3

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) .................................................................................................................3

*Deacero S.A.P.I. de C.V. v. United States*,
    996 F.3d 1283 (Fed. Cir. 2021) ..............................................................................................11

*Gallant Ocean (Thailand) Co., Ltd. v. United States*,
    602 F.3d 1319 (Fed. Cir. 2010) ..............................................................................................10

*Hyosung Corp. v. United States*,
    35 C.I.T. 343 (2011) .................................................................................................................8

*I.N.S. v. Elias-Zacarias*,
    502 U.S. 478 (1992) .................................................................................................................3

*Jiangsu Zhongji Lamination Materials Co., (HK) v. United States*,
    435 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) ............................................................................4

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................................................2

*McKart v. United States*,
    395 U.S. 185 (1969) .................................................................................................................3

*Mittal Steel Point Lisas Ltd. v. United States*,
    548 F.3d 1375 (Fed. Cir. 2008) ................................................................................................4

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ................................................................................................3

*Nucor Corp. v. United States*,
    594 F.Supp.2d 1320 (Ct. Int'l Trade 2008), *aff'd*, 601 F.3d 1291 (Fed. Cir. 2010) ....................5

*Palladian Partners, Inc. v. United States*,
  783 F.3d 1243 (Fed. Cir. 2015) ...................................................................................3

*Papierfabrik August Koehler S.E. v. United States*,
  7 F. Supp. 3d 1304 (Ct. Int'l Trade 2014) ...................................................................8

*Papierfabrik August Koehler SE v. United States*,
  843 F.3d 1373, (Fed. Cir. 2016) ..................................................................................6

*Prosperity Tieh Enterprise Co., Ltd. v. United States*,
  965 F. 3d 1320 (Fed. Cir. 2020) ................................................................................11

*QVD Food Co., Ltd. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011)..................................................................................11

*Siemens Gamesa Renewable Energy v. United States*,
  621 F. Supp. 3d 1337 (Ct. Int'l Trade 2022) ...............................................................1

*Slater Steels Corp. v. United States*,
  279 F. Supp. 2d 1370 (Ct. Int'l Trade 2003) .............................................................12

*Taian Ziyang Food Co. v. United States*,
  918 F. Supp. 2d 1345 (Ct. Int'l Trade 2013) ...............................................................4

*Tianjin Mach. Import & Export Corp. v. United States*,
  806 F. Supp. 1008 (Ct. Int'l Trade 1992) ..................................................................11

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952) ......................................................................................................4

*Zhaoqing New Zhongya Aluminum Co., Ltd. v. United States*,
  887 F. Supp. 2d 1301 (Ct. Int'l Trade 2012) ..........................................................2, 5

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) .............................................................................................3

19 U.S.C. § 1677(33) ..........................................................................................................6

19 U.S.C. § 1677(e)(b)(2) ...................................................................................................9

19 U.S.C. § 1677e(d)(3)(A) ..............................................................................................10

28 U.S.C. § 2637(d) ............................................................................................................3

## REGULATIONS

19 C.F.R. § 351.401(f) ............................................................................................................... 6

## OTHER

*Utility Scale Wind Towers from Spain: Final Determination of Sales at Less Than Fair Value*,
   86 Fed. Reg. 33,656 (Dep't of Commerce June 25, 2021) ......................................................... 1

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY STANCEU, JUDGE

|  |  |  |
|---|---|---|
| SIEMENS GAMESA RENEWABLE ENERGY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 21-00449 |
| UNITED STATES, | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| WIND TOWER TRADE COALITION | ) ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S AND DEFENDANT-INTERVENOR'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Siemens Gamesa Renewable Energy (SGRE), and defendant-intervenor, the Wind Tower Trade Coalition (WTTC), concerning the Department of Commerce's (Commerce's) remand redetermination. *See* Final Results of Redetermination Pursuant to Court Remand (Remand Redetermination), June 16, 2023, ECF No. 53. The Remand Redetermination is a part of Commerce's less-than-fair value investigation covering utility scale wind towers from Spain. *See Utility Scale Wind Towers from Spain: Final Determination of Sales at Less Than Fair Value,* 86 Fed. Reg. 33,656 (Dep't of Commerce June 25, 2021), and the accompanying Issues and Decision Memorandum (IDM) (P.R. 149).

The Court's February 16, 2023 opinion and order remanded for reconsideration Commerce's decision not to investigate SGRE. *See Siemens Gamesa Renewable Energy v.*

*United States*, 621 F. Supp. 3d 1337, 1349 (Ct. Int'l Trade 2022) ("{Commerce's} unlawful decision must be remedied by an individual investigation of Siemens Gamesa during the remand proceeding."). On remand, consistent with the Court's decision, Commerce individually investigated SGRE. Commerce's Remand Redetermination is based on three uncontested or unexhausted contentions. First, during the investigation of SGRE, SGRE was collapsed with one of its affiliates, Windar Renovables (Windar). SGRE agreed that it is collapsible with Windar. Letter to Secretary Raimondo (May 1, 2023), P.R.R. 74. Second, Windar failed to cooperate to the best of its ability by ignoring Commerce's quantity and value questionnaires in the original investigation and received a facts available with an adverse inference rate. Windar did not contest its adverse facts available rate before Commerce or before this Court. Finally, Commerce's long-standing practice–which SGRE does not contest–is that when one entity within a collapsible entity receives an adverse facts available rate, the entire entity gets the same rate. *Zhaoqing New Zhongya Aluminum Co., Ltd. v. United States*, 887 F. Supp. 2d 1301, 1310 (Ct. Int'l Trade 2012). Although SGRE raises additional arguments, it misconstrues the actual bases of Commerce's decision. Because SGRE is collapsible with Windar, and because Windar received an adverse facts available rate that was not timely challenged, the "individual examination" of SGRE concluded when SGRE conceded that it was collapsible with Windar. As such, this Court should sustain Commerce's Remand Redetermination.

## ARGUMENT

### I.     Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct.

Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence" and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Indeed, when, as in this case, Congress entrusts an agency to administer a statute demanding inherently fact-intensive inquiries, the agency's conclusions may be set aside only if the record evidence is "so compelling that no reasonable factfinder" could reach the same conclusion. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). Thus, a party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

To properly challenge an aspect of a Commerce determination before this Court, parties must have exhausted their administrative remedies. *See* 28 U.S.C. § 2637(d) ("[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."). This principle "is well established in the jurisprudence of administrative law," *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)), and "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citation omitted). In fact, the Federal Circuit has held that "{s}imple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless

3

the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). The exhaustion doctrine extends to remand proceedings, *see generally Mittal Steel Point Lisas Ltd.*, 548 F.3d 1375, and "requires that a party first file comments on the draft results at the administrative level, setting forth the party's objections." *Jiangsu Zhongji Lamination Materials Co., (HK) v. United States*, 435 F. Supp. 3d 1273, 1277 (Ct. Int'l Trade 2020) (citing *Taian Ziyang Food Co. v. United States*, 918 F. Supp. 2d 1345, 1361 (Ct. Int'l Trade 2013)).[1]

## II.  SGRE Does Not Challenge Commerce's Determination To Collapse It With Windar

On remand, Commerce issued a quantity and value (Q&V) questionnaire to SGRE. Questionnaire (Feb. 17, 2023), P.R.R. 1. SGRE filed its Section A response. Section A Resp. (March 13, 2023), P.R.R.8-40. Based on SGRE's Section A responses, which demonstrate that SGRE and Windar are affiliated, Commerce preliminarily collapsed SGRE with Windar and solicited comments. Collapsing Memorandum (Apr. 25, 2023), P.R.R. 69. SGRE stated that it "concurs with the Department's preliminary determination regarding collapsing in the instant investigation." Letter to Secretary Raimondo (May 1, 2023), P.R.R. 74. Based upon SGRE's Section A response, Commerce continued to collapse SGRE and Windar in its final remand redetermination. Commerce's decision to collapse SGRE with Windar is not contested by any party.

---

[1] Although the Federal Circuit has identified several exceptions to the exhaustion requirement, none of these exceptions exist in this case. *See Budd Co., Wheel & Brake Div. v. United States*, 773 F. Supp. 1549, 1555 n.2 (Ct. Int'l Trade 1991) (listing the exceptions to exhaustion as pure legal questions, untimely access to the confidential record, intervening judicial interpretations, and futility).

As explained in the Remand Redetermination, when a company is collapsed with a company that failed to cooperate in the proceeding, the adverse facts available rate applies to the entire collapsed entity. SGRE agreed with Commerce's collapsing decision, Letter to Secretary Raimondo (May 1, 2023), P.R.R. 74, but disagrees with Commerce's application of its long-standing practice that resulted in Commerce applying Windar's adverse facts available rate to the entire collapsed entity. *Zhaoqing New Zhongya Aluminum,* 887 F. Supp. 2d at 1310 ("When calculating a rate for a collapsed entity, Commerce's practice is to apply AFA to the entire entity when one producer within it fails to cooperate."). SGRE and Windar are collapsed and, consequently, SGRE is properly assigned the collapsed entity's adverse facts available rate.

Referring to its Section B-D questionnaire responses (which were rejected, at first, to exclude unsolicited information before Commerce accepted the submission),[2] SGRE argues that Commerce failed to utilize the same questionnaire responses "for other purposes." Pl. SGRE Cmts. on [] Remand Redetermination at 7 (Pl. Br.), July 17, 2023, ECF No. 55, 56. We agree that "Commerce 'must consider the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.'" *Id.* (citing *Nucor Corp. v. United States*, 594 F. Supp. 2d 1320, 1332 (Ct. Int'l Trade 2008), *aff'd*, 601 F.3d 1291 (Fed. Cir. 2010)). Uncontested substantial record evidence demonstrates that SGRE is collapsible with Windar and that Windar received a final, uncontested adverse facts available rate. As such, because Commerce's collapsing analysis is not being challenged by SGRE and Windar failed to timely challenge its adverse facts available rate, SGRE's argument about its Section B-D responses is irrelevant. Windar is not entitled to present untimely and now unsolicited facts through SGRE's Section B-D responses in an attempt to provide the information that it failed to

---

[2] As discussed in more detail below.

present during the investigation nor is SGRE allowed to submit this information on behalf of Windar.  *See Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1378-79, (Fed. Cir. 2016) ("Where 'an interested party . . . fails to provide such information by the deadlines for submission of the information . . . Commerce may use the facts that are 'otherwise available' to it to calculate an antidumping margin. . . . in addition, [if] Commerce finds that 'an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information,' then Commerce 'may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available.'").

SGRE also uses affiliation and collapsing interchangeably throughout its brief, even though the two terms are distinct.  This conflation obscures the unique effects of collapsing.  Affiliation is defined in 19 U.S.C. § 1677(33), which establishes that "any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization" shall constitute affiliated parties.  SGRE agrees that it is affiliated with Windar.  Letter to Secretary Raimondo (May 1, 2023), P.R.R. 74.  Affiliation is a prerequisite to a finding by Commerce that collapsing is appropriate.  Commerce "will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure the manufacturing priorities . . . {such that} there is a significant potential for the manipulation of price or production."  19 C.F.R. § 351.401(f).  The critical distinction is that although collapsible parties must be affiliated, affiliated parties need not be collapsible.  This is significant, because "the fact that SGRE stated that it was affiliated with Windar is not the same as a determination by Commerce that the companies constitute a single entity . . ., as {s}uch decisions . . . have different implications in

terms of reporting requirements and rate assignment in AD proceedings." Remand Redetermination at 26. Commerce determined that the two affiliated companies were collapsible into a single entity based upon SGRE and Windar having an affiliated exporter/producer relationship, the significant potential for manipulation of price and production, the level of common ownership, overlapping boards and managers and intertwined operations. Collapsing Analysis (Apr. 25, 2023), P.R.R. 69.

### III. Windar's Adverse Facts Available Rate Was Already Final And Has Not Been Timely Challenged

During the investigation, Windar was assigned an adverse facts available rate of 73 percent, based on its failure to respond to Commerce's Q&V questionnaire. *See* Remand Redetermination at 34. Neither SGRE nor Windar challenged Windar's rate before Commerce during the investigation, and thus failed to exhaust their administrative remedies.

#### A. Windar Never Submitted Its Own Q&V Response

Windar–a company who is not in this litigation–failed to submit a Q&V response to Commerce in the investigation. IDM at 8. Windar's failure to submit a Q&V response, and consequently, Commerce's application of an adverse facts available rate, are not subject to change. SGRE's argument that Windar submitted a Q&V response during this remand misconstrues what happened. First, SGRE submitted a Section A response–one part of a Q&V response=that included information about its affiliates, including Windar. Section A Resp. (March 13, 2023), P.R.R. 8-40. That is different than Windar submitting its own timely response to Commerce. Additionally, as detailed in SGRE's brief, Commerce clarified the reporting requirements, including an instruction for SGRE to stop sourcing data from Windar, before SGRE submitted its Sections B-D responses. Memo to File (Apr. 13, 2023), P.R.R. 57. SGRE

complied with this request and as such, Windar's Q&V response is not on the administrative record.

SGRE attempted to compensate for Windar's missing Q&V submission with new information submitted on behalf of both parties during the remand proceeding. But this is not permitted. *See Papierfabrik August Koehler S.E. v. United States*, 7 F. Supp. 3d 1304, 1313 (Ct. Int'l Trade 2014) (holding that Commerce is not required to accept untimely corrective submissions when a party has failed to cooperate during the proceeding); *see also Hyosung Corp. v. United States*, 35 C.I.T. 343, 349 (2011) ("Commerce's determination not to accept {plaintiff's} untimely and improperly filed Q & V questionnaire response is supported by substantial evidence and otherwise in accordance with law.").

Consequently, the information on the record includes SGRE's Q&V response but not Windar's. In addition, SGRE's claims that Commerce rejected SGRE's Q&V are misleading. On March 30, 2023, before Commerce collapsed SGRE with Windar, Commerce placed a memorandum to the file regarding Sections B through E of SGRE's questionnaire. Commerce clarified that it was not soliciting information from Windar, a company that Commerce had already investigated and assigned an adverse facts available rate. Memo to File (March 30, 2023), P.R.R. 45. Rather, Commerce was soliciting information from only SGRE. *Id.* As explained in the Remand Redetermination, after further review of the information contained in SGRE's section A response, it became apparent that SGRE was submitting information sourced from a company that was assigned a margin based on AFA.[3] Accordingly, when SGRE

---

[3] Moreover, SGRE's assertion that the SGRE and Windar affiliation was apparent early in the proceeding is irrelevant. A finding of affiliation and a decision to collapse two companies are two entirely different findings with different implications for margin calculations and rate assignment. It was on remand that, for the first time, Commerce determined–*and SGRE agreed*– that SGRE and the Windar entities should be collapsed.

8

attempted to file a response containing information sourced from Windar, Commerce properly rejected that response. Memo to File (Apr. 11, 2023), P.R.R. 52. ("Although portions of the response related to SGRE – the company from which a questionnaire response was requested – the inclusion of extensive data sourced from Windar constituted unsolicited information and resulted in a questionnaire response that was not in the form requested.").

Commerce gave SGRE a second opportunity to submit its Section B-D "without information sourced from Windar Renovables." Memo to File (Apr. 13, 2023), P.R.R. 56. On April 13, 2023, Commerce explained at a meeting with SGRE that "SGRE has been asked to resubmit its Section BCD questionnaire response without information sourced from Windar Renovables (Windar) at this time. Therefore, SGRE must remove information/data *sourced* from Windar entities at this time. Information or data sourced from SGRE – even if such information or data relate, in whole or in part, to Windar – may still be provided." Memo to File (Apr. 13, 2023), P.R.R. 57. That is, Commerce requested SGRE's information and did not request information from Windar, a company whose investigation had been completed and whose rate was final. On April 14, 2023, SGRE filed its Section B-D responses, and Commerce accepted this information. Section B-D Resp. (Apr. 14, 2023), P.R.R. 58-66.

SGRE's Section A response–not its B-D response–resulted in Commerce collapsing SGRE and Windar. Collapsing Analysis (Apr. 25, 2023), P.R.R. 69. The collapsing analysis does not reference SGRE's B-D responses. Indeed, SGRE agreed with Commerce's determination to collapse SGRE with Windar. Letter to Secretary Raimondo (May 1, 2023), P.R.R. 74. It is on that basis–not any of the arguments SGRE raises regarding its ultimately accepted B-D questionnaire responses that SGRE is assigned Windar's final adverse facts available rate, which was not timely challenged at the time it was assigned.

9

B.      **Windar's AFA Rate Is Final And Lawful**

Commerce is authorized under 19 U.S.C. § 1677(e)(b)(2) to select an adverse facts available margin from the petition, the final determination in the investigation, any previous administrative review, or any other information placed on the record. Commerce selected the adverse facts available rate from the petition and satisfied its corroboration requirement for calculating the margin during its preliminary determination. Commerce then assigned this unchallenged rate to Windar. Remand Redetermination at 2.

SGRE alleges that Commerce erred by assigning an adverse facts available rate without considering the new information relating to its costs and sales prices that SGRE submitted during the remand segment. This argument fails for multiple reasons. First, SGRE concedes that it is collapsible with Windar and does not challenge Commerce's practice of assigning the adverse facts available rate of one company in an entity to the entity as a whole. Second, neither SGRE nor Windar challenged Windar's rate before the agency at the appropriate time during the investigation. Lastly, even if Commerce were to reverse its practice and revisit SGRE's adverse facts available rate, the information that SGRE has submitted on the record is not useable as a basis for calculating a dumping margin. As identified by Commerce:

> SGRE's U.S. prices are transfer prices from Windar (i.e., an affiliated party), which are generally not used under section 772 of the Act as the basis for a calculated dumping margin; Windar's costs consist of a single, aggregate figure, not differentiated by product or broken into its component elements.

Remand Redetermination, at 35.

SGRE fails to overcome these weaknesses in its arguments, despite citing to *Gallant Ocean (Thailand) Co., Ltd. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010), for the premise that "Commerce may not simply rely on the petition where more

10

reliable information is available." Pl. Br. at 16. This articulation misrepresents the present statutory scheme. In 2015, the statute was amended to include 19 U.S.C. § 1677e(d)(3)(A), which states that for purposes of subsection (c) (i.e., Corroboration of Secondary Information) or for any other purpose, Commerce is not required "to estimate what the . . . dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated." *See also Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1301 (Fed. Cir. 2021) ("Commerce was not required to select Deacero's AFA rate to reflect Deacero's alleged commercial reality and, therefore, did not err in failing to do so."). This provision underscores that the onus of ensuring an accurate and complete record lies with the respondent and not with Commerce. *See also QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("[T]he burden of creating an adequate record lies with interested parties and not with Commerce.") (citing *Tianjin Mach. Import & Export Corp. v. United States*, 806 F. Supp. 1008 (Ct. Int'l Trade 1992)).

  Windar failed to timely submit responses to the Q&V questionnaire during the investigation, and SGRE similarly did not provide responses at that time for Windar. SGRE cannot rehabilitate Windar's failure to respond to Commerce's questionnaire long after the deadline has passed. Permitting both companies to fill the gaps in the record would insulate Windar from the repercussions of its non-cooperation. As the Federal Circuit has explained, "{t}he purpose of collapsing multiple entities into a single entity is to prevent affiliated entities from circumventing antidumping duties by 'channel{ing} production of subject merchandise through the affiliate with the lowest potential dumping margin." *Prosperity Tieh Enterprise Co., Ltd. v. United States*, 965 F. 3d 1320, 1323

11

(Fed. Cir. 2020) (quoting *Slater Steels Corp. v. United States*, 279 F. Supp. 2d 1370, 1376 (Ct. Int'l Trade 2003)).  The adverse facts available rate assigned to SGRE in the Remand Redetermination is supported by substantial evidence and in accordance with law.

### IV.    SGRE's Arguments Have Not Been Exhausted

In addition to not exhausting its arguments regarding (1) the collapsing analysis and the assignment of Windar's rate to SGRE/Windar; (2) Windar's rate, at the time of the original investigation; and (3) the corroboration requirements at the time of the original investigation, SGRE also challenges the timing of Commerce's collapsing decision.  SGRE did not raise this issue in its comments to Commerce's draft remand redetermination and, as such, has failed to exhaust this argument.  *See generally* Cmts. on Draft Redetermination (May 24, 2023), P.R.R. 80.  SGRE alleges that "Commerce's unlawful act was in its selection of mandatory respondents and a procedural error at the inception of the investigation." Pl. Br. at 20.  SGRE further contends that "[i]t is well-established that any analysis of affiliation or collapsing occurs *after* respondent selection." *Id.* (emphasis added).  However, SGRE jumps from these two valid premises to the conclusion that, "[a]ny subsequent finding regarding the degree of affiliation (e.g., a finding of control), does not remedy Commerce's unlawful act because subsequent agency actions are voided by prior unlawful agency actions." *Id.*

Commerce did not collapse SGRE with Windar at the respondent selection phase. Commerce selected SGRE on remand, sent SGRE a standard antidumping questionnaire, and analyzed SGRE's responses.  Questionnaire (Feb. 17, 2023), P.R.R.1.  As SGRE claims, "any analysis of affiliation or collapsing occurs after respondent selection," and that is the sequence of events that happened in this case.  Only after SGRE was selected as a respondent did Commerce conduct its collapsing analysis and determine to collapse SGRE and Windar.  SGRE agreed with

12

Commerce that collapsing was appropriate and did not challenge Commerce's collapsing decision.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Remand Redetermination.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/Reginald T. Blades, Jr.<br>REGINALD T. BLADES, Jr.<br>Assistant Director |
| OF COUNSEL: | /s/Sarah E. Kramer<br>SARAH E. KRAMER<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division |
| ALEXANDER FRIED<br>Attorney<br>Office of the Chief Counsel for Trade<br>Enforcement and Compliance<br>United States Department of Commerce | United States Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 353-0537<br>Fax: (202) 305-2062<br>Email: sarah.e.kramer@usdoj.gov |
| July 31, 2023 | Attorneys for Defendant, United States |

13

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the motion was prepared, the public version of the motion contains a total of 3,539 words.

/s/Sarah E. Kramer

July 31, 2023